1   JAMES W. HUSTON (BAR NO. 115596)
    jhuston@mofo.com
2   ERIN M. BOSMAN (BAR NO. 204987)
    WILLIAM V. O'CONNOR (BAR NO. 216650)
3   JOANNA E. HERMAN (BAR NO. 227480)
    MORRISON & FOERSTER LLP
4   12531 High Bluff Drive, Suite 100
    San Diego, California  92130-2040
5   Telephone:  858.720 5100
    Facsimile:  858.720.5188
6
    Attorneys for Defendant
7   HONEYWELL INTERNATIONAL INC.

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  DEBORAH GETZ, individually and as a surviving     Case No.    CV 07-06396 CW
    heir of decedent KRISTOFER D. S. THOMAS;
12  RODNEY THOMAS, individually and as a surviving
    heir of decedent, KRISTOFER D. S THOMAS;         **DEFENDANT HONEYWELL
13  MARY DUFFMAN, individually and as a surviving    INTERNATIONAL INC.'S
    heir of decedent, SCOTT E. DUFFMAN; SOPHIA       MOTION TO TRANSFER
14  DUFFMAN, a minor, individually and as a surviving VENUE; MEMORANDUM OF
    heir of decedent SCOTT E. DUFFMAN, by and        POINTS AND AUTHORITIES
15  through her Guardian ad Litem, MARY DUFFMAN;     IN SUPPORT THEREOF**
    CHRISTINE VAUGHN, individually and as a
16  surviving heir of decedent, TRAVIS R. VAUGHN;    Date:   February 14, 2008
    BRAD VAUGHN, individually and as a surviving heir Time:   2:00 p.m.
17  of decedent, TRAVIS R. VAUGHN; JILL GARBS,
    individually and as a surviving heir of decedent  Courtroom: 2
18  RYAN GARBS; DOUG GARBS, individually and as    Judge:     Hon. Claudia Wilken
    a surviving heir of decedent, RYAN GARBS;
19  JORDAN LANHAM; JERRY GOLDSMITH;
    RYANNE NOSS, individually and as spouse of SCOT
20  NOSS; TIMOTHY BRAUCH; CHRIS TRISKO,
    MARK DANIEL HOUGHTON,
21
                        Plaintiffs,
22
            v.
23
    THE BOEING COMPANY, a corporation;
24  HONEYWELL INTERNATIONAL, INC., a
    corporation; GOODRICH CORPORATION, a
25  corporation; BF GOODRICH AEROSPACE;
    CHANDLER EVANS CONTROL SYSTEMS;
26  GENERAL ELECTRIC and DOES 1 through 200,
    inclusive,
27
                        Defendants.
28

                                1

1    ## NOTICE OF MOTION AND MOTION TO TRANSFER VENUE

2    TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that on February 14, 2008, at 2:00 pm, or as soon thereafter as

4    the matter may be heard, in the Courtroom of the Honorable Claudia Wilken, United States

5    District Court, Northern District of California, Oakland Division, Courtroom 2, 4th Floor, 1301

6    Clay Street, 400 South, Oakland, California 94612, Honeywell International Inc. ("Honeywell")

7    will, and hereby does, move the Court for an order transferring this matter to the District of

8    Arizona, Phoenix Division, pursuant to 28 U.S.C. § 1404(a).

9    This motion is based on this Notice of Motion and Motion; the Memorandum of Points

10    and Authorities; the accompanying Declarations and exhibits thereto of William V. O'Connor,

11    Peter B. Baker and Marlin Kruse in Support of Honeywell's Motion to Transfer; the pleadings

12    and other files herein; and such other written and oral argument as may be presented to the Court.

13    Dated: January 10, 2008

JAMES W. HUSTON
ERIN M. BOSMAN
WILLIAM V. O'CONNOR
JOANNA E. HERMAN
MORRISON & FOERSTER LLP

By:  /s/ William V. O'Connor
       William V. O'Connor

Attorneys for Defendant
HONEYWELL INTERNATIONAL
INC.

2

1

# TABLE OF CONTENTS

2

Page

3    I.      INTRODUCTION ................................................................................................... 1

4    II.     RELEVANT FACTUAL BACKGROUND ........................................................... 3

     III.    THE PARTIES ...................................................................................................... 3

5    IV.     THE ACCIDENT ................................................................................................. 5

6    V.      THE LOCATION OF POTENTIALLY RELEVANT EVIDENCE AND
             WITNESSES ........................................................................................................ 6

7    VI.     THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF
             ARIZONA ............................................................................................................ 6

8
     VII.    THE SUBJECT HELICOPTER WAS DESIGNED AND MANUFACTURED
9            PURSUANT TO GOVERNMENT CONTRACTS THAT WERE NOT
             NEGOTIATED OR EXECUTED IN THIS DISTRICT ....................................... 7

10   VIII.   CALIFORNIA LAW IS NOT IMPLICATED IN THIS CASE ........................... 8

11   IX.     PLAINTIFF'S CHOICE OF THIS FORUM IS ENTITLED TO LITTLE
             WEIGHT .............................................................................................................. 9

12
             A.    None of the Plaintiffs Injured in the Accident Are California Residents.............. 10
13
             B.    This Forum Has No Meaningful Connection To Plaintiffs' Claims ................... 11

     X.      THE CONVENIENCE FACTORS STRONGLY FAVOR TRANSFER ....................... 12
14
             A.    The Convenience Of The Parties Favors Transfer ................................. 12
15
             B.    The Convenience Of The Witnesses Favors Transfer ............................. 12

16                 1.    Arizona Serves the Convenience of Witnesses ........................ 13

17           C.    Ease Of Access To Sources Of Proof Favors Transfer ......................... 15

     XI.     THIS FORUM HAS NO MEANINGFUL CONTACT WITH THE PARTIES OR
18           WITH PLAINTIFFS' CLAIMS AGAINST HONEYWELL ........................... 16

19   XII.    DIFFERENCES IN LITIGATION COSTS BETWEEN THE TWO FORUMS
             FAVOR TRANSFER ......................................................................................... 17

20   XIII.   THE DISTRICT OF ARIZONA HAS A LOCALIZED INTEREST IN THIS
             CASE AND ITS RESIDENTS ARE MORE APPROPRIATELY BURDENED
21           BY JURY DUTY ............................................................................................... 18

22   XIV.    CONCLUSION .................................................................................................. 18

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page

3

## CASES

4

*Allegiance Healthcare Corp. v. London Int'l Group, PLC,*
    No. C 97-4619 SC, 1998 WL 328624 (N.D. Cal. June 17, 1998)..........................................8, 10

5

*Biswas v. HR Value Group, LLC,*
    No. C 02-03469 CRB, 2002 WL 31261160 (N.D. Cal. Oct. 4, 2002) ...............................13, 15

6

*Boyle v. United Techs. Corp.,*
    487 U.S. 500 (1988) .......................................................................................................8

7

8

*Brownstein v. American Airlines,*
C-05-3435 JCS, 2006 WL 118405 (N.D. Cal. Jan. 13, 2006).......................................................14

9

*Butler v. Ingalls Shipbuilding, Inc.,*
    89 F.3d 582 (1996) .........................................................................................................8

10

11

*Ellis v. Costco Wholesale Corp.,*
    372 F. Supp. 2d 530 (N.D. Cal. 2005)...........................................................................7

12

*Fabus Corp. v. Asiana Exp. Corp.,*
    No. C-00-3172 PJH, 2001 WL 253185 (N.D. Cal. Mar. 5, 2001) .....................................10, 13

13

14

*Gaston v. Gottesman,*
    No. C-06-7840 MMC, 2007 WL 1114014 (N.D. Cal. Apr. 13, 2007).....................................11

15

*Gerin v. Aegon USA, Inc.,*
    No. C 06-5407 SBA, 2007 WL 1033472 (N.D. Cal. April 4, 2007)........................................15

16

17

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947) .......................................................................................................18

18

*Heil v. Wells Fargo Bank,*
    No. C06-02002 MJJ, 2006 WL 2411416 (N.D. Cal. Aug. 18, 2006) ................................11, 15

19

20

*In re Air Crash Disaster at Boston, Mass.,*
    415 F. Supp. 206 (D. Mass. 1976).................................................................................9

21

*In re Air Crash Disaster Near Chicago, Ill.,*
    480 F. Supp. 1280 (N.D. Ill. 1979)...............................................................................9

22

23

*In re Aircrash Disaster at Stapelton Int'l Airport,*
    720 F. Supp. 1505 (D. Colo. 1989) ..............................................................................9

24

*In re Aircrash Disaster Near Roselawn, Ind.,*
    926 F. Supp. 736 (N.D. Ill. 1996)..................................................................................9

25

26

*Inherent.com v. Martindale-Hubbell,*
    420 F. Supp. 2d 1093 (N.D. Cal. 2006).................................................................*passim*

27

28

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Italian Colors Rest. v. Am. Express Co.*,
   No. C 03-3719 SI, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) .......................................... 17

*Jaco Envtl. Inc. v. Appliance Recycling Ctrs.*,
   No. C 06-06601 JSW, 2007 WL 951274 (N.D. Cal. Mar. 27, 2007)......................................... 10

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) .............................................................................................. 7, 8

*Lupiani v. Wal-Mart Stores, Inc.*,
   No. C-03-2614 SC, 2003 WL 22416414 (N.D. Cal. Oct. 17, 2003)
   *vacated on other grounds,* 2003 WL 22682450 (N.D. Cal. Nov. 6, 2003).................... 10, 12, 16

*MTS Sys. Corp. v Hysitron, Inc.*,
   No. C 06-3156 CW, 2006 WL 2547698 (N.D. Cal. Sept. 1, 2006) ..................................... 10, 11

*Maxon v. Jefferson Pilot Secs. Corp.*,
   No. C 01-02668 CRB, 2002 WL 523575 (N.D. Cal. Apr. 2, 2002).......................................... 11

*Pacific Car & Foundry Co. v. Pence*,
   403 F.2d 949 (9th Cir. 1968) .......................................................................................... 9, 11, 18

*Panetta v. SAP Am., Inc.*,
   No. C0501696 RMW, 2005 WL 1774327 (N.D. Cal. July 26, 2005)................................ *passim*

*Saleh v. Titan Corp.*,
   361 F. Supp. 2d 1152 (S.D. Cal. 2005) ............................................................................... 12, 13

*Stuart v. Mobile ESPN*,
   No. C 06-02094 SI, 2006 WL 2433416 (N.D. Cal. Aug. 21, 2006) .................................... 11, 16

*Sweet-Reddy v. Vons Cos.*,
   No. C06-06667 MJJ, 2007 WL 841792 (N.D. Cal. Mar. 20, 2007)..................................... 10, 15

*Williams v. Bowman*,
   157 F. Supp. 2d 1103 (N.D. Cal. 2001)............................................................................... 10, 13

**STATUTES**

28 U.S.C. § 1332 ....................................................................................................................... 2, 10

28 U.S.C. § 1391 ............................................................................................................................. 7

28 U.S.C. § 1404 ....................................................................................................................*passim*

**MISCELLANEOUS**

*Product Liability Desk Reference: A Fifty-State Compendium*
   (Morton F. Daller ed. 2007) ........................................................................................................ 9

iii

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3        Pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and the witnesses, and

4    in the interests of justice, this action should be transferred from the United States District Court

5    for the Northern District of California to the United States District Court for the District of

6    Arizona.  This case arises from the crash of a United States Army Special Operations Aviation

7    Regiment MH-47E Chinook helicopter, serial number 92-00472 (the "Subject Helicopter"), on

8    February 17, 2007, during a Special Operations Aviation Regiment ("SOAR") mission in

9    Afghanistan (the "Accident").  The MH-47E is the U.S. Army's most advanced special operations

10    transport helicopter, providing tactical and combat support for armed forces in wartime.

11        Plaintiffs are residents of various states and have no connection to the Northern District of

12    California.  Plaintiffs claim that the defendants — The Boeing Company ("Boeing"); Honeywell

13    International Inc., ("Honeywell"), General Electric ("GE"), and Goodrich Pump and Engine

14    Control Systems, Inc. ("Goodrich") (collectively "Defendants") — defectively designed,

15    assembled, manufactured, inspected, tested, marketed, and sold the Subject Helicopter and its

16    component parts, including the engines, Full Authority Digital Engine Control ("FADEC"),

17    Digital Electronic Control Unit ("DECU"), and the software and hardware related thereto.  *See*

18    Complaint ("Compl.") ¶¶ 28, 29, 62-65.[1]

19        None of the plaintiffs injured in the accident claims to be a resident of California.[2]

20    Similarly, the complaint does not allege that any of Plaintiffs' decedents were residents of

21    California.  If any of the injured plaintiffs or the decedents were, in fact, California residents, the

22    complaint would certainly have alleged so in order to bolster Plaintiffs' view that this case should

23    proceed in the Northern District.  Their silence on this point speaks volumes.  What speaks even

24

25        [1] Defendant Chandler Evans Control Systems has not been served.  Chandler Evans no longer maintains a corporate existence and has been acquired by Goodrich.

26

27        [2] Plaintiffs' complaint is silent as to the residence of each plaintiff with the exception of Deborah Getz, Rodney Thomas (the "Getz plaintiffs"), and Jordan Lanham.

28

1

1   louder is the fact that the complaint alleges that the parents of the Getz decedent are residents of

2   California.[3]  That is the only connection this case has with the State of California.  Even that

3   connection, however, does not support keeping this case in the Northern District.  The Getz

4   parents reside in Roseville, CA, which is within the Eastern District of California, not the

5   Northern District.[4]  But even if they resided within the Northern District, their presence would be

6   irrelevant, since it is the residence of the Getz decedent, not the residence of his parents that is

7   relevant to the most convenient forum determination.  *See* 28 U.S.C. 1332(c)(2) (the residence of

8   the decedent at the time of his death is controlling and the residence of legal representatives is

9   disregarded).  Since the residence of the decedents' legal representatives is irrelevant, the term

10  "Plaintiffs" as used herein refers only to the plaintiffs injured in this accident and the decedents

11  represented by the remaining plaintiffs.[5]

12          What is more, this District has no connection to Plaintiffs' claims or the conduct alleged

13  in the Complaint.  The design and manufacturing activities relating to the Subject Helicopter did

14  not occur in this District.  None of the material witnesses for Defendants reside in this District,

15  and none of the Defendants are headquartered in this District.  Moreover, none of the relevant

16  documents from Defendants are located in the District.  Based on the allegations, the Defendants'

17  documents and other evidence concerning the design and manufacture of the Subject Helicopter

18  are located either in Arizona, Pennsylvania, or Connecticut.  In short, this District lacks any

19  meaningful connection whatsoever to this dispute.

20

21          [3] The Getz plaintiffs are California residents who are bringing claims in their
    representative capacity as the surviving heirs of their son Pfc. Kristopher Thomas who died in the
22  crash.

23          [4] *See* General Order No. 6: Plan of the United States District Court  for the Northern
    District of California for the Random Selection of Grand and Petit Jurors, at 1 (Roseville, CA is
24  located in the Eastern District of California); *see also* U.S. Courts locator of the Federal Judiciary,
    http://www.uscourts.gov/courtlinks (last visited January 7, 2008).
25
            [5] Eight of the 14 Plaintiffs are the representatives or heirs of four soldiers who died in the
26  crash (Pfc. Kristopher Thomas, Tech Sgt. Scott Duffman, Spc. Travis Vaughn, and Spc. Ryan
    Garbs).  The remaining Plaintiffs are six soldiers with individual claims for personal injuries
27  suffered in the crash.

28

                                            2

1    In contrast, the District of Arizona, Phoenix Division, has a substantial connection to this

2    dispute.  Honeywell manufactured the Subject Helicopter's engines and its components parts—

3    the failure of which is alleged by Plaintiffs as the cause of the Accident—in Phoenix, Arizona

4    pursuant to precise government specifications.  The relevant documents concerning the design

5    and manufacture of the Subject Helicopter are therefore located in Phoenix.  In addition, based

6    upon the allegations, most, if not all, of the potential Honeywell witnesses and non-party

7    witnesses reside in or are closer to the District of Arizona, or can be made readily available for

8    testimony in Phoenix.  Plaintiffs themselves are located closer to the District of Arizona than to

9    this District.  Plainly, the District of Arizona is a more convenient forum for the parties and the

10    witnesses.

11    In sum, none of the factors in the Section 1404(a) analysis favors retention of this case in

12    this District, and most of the relevant factors favor transfer to the District of Arizona.

13    Accordingly, this case should be transferred to the District of Arizona, Phoenix Division, for the

14    convenience of the parties and witnesses and to serve the interests of justice.

15    ## II.    RELEVANT FACTUAL BACKGROUND

16    The relevant facts supporting Honeywell's transfer motion are taken directly from the

17    allegations in Plaintiffs' Complaint, which on its face demonstrates that this District has no

18    meaningful connection to this dispute.  Additionally, Honeywell relies on the Declaration of

19    Peter B. Baker ("Baker Decl."), the Declaration of Marlin Kruse ("Kruse Decl."), and the

20    Declaration of William V. O'Connor ("O'Connor Decl."), filed in support of this motion, each of

21    which describes certain other facts relevant to the transfer motion, particularly the strong

22    connection between the District of Arizona and the allegations of the Complaint.

23    ## III.    THE PARTIES

24    Plaintiffs Deborah Getz and Rodney Thomas are residents of Roseville, California.

25    (Compl. ¶ 2; O'Connor Decl. at ¶¶ 2-3, Exs. 1-2.)  Their son, Kristopher Thomas, was a member

26    of B Company, 3rd Battalion, 75th Ranger Regiment (the "75th Ranger Regiment") at the time of

27    his death.  (O'Connor Decl. at ¶¶ 2-3, Ex. 1-2.)  The 75th Ranger Regiment is a light infantry

28    regiment headquartered at Fort Benning, Georgia.  (*Id.*)  Plaintiffs Mary Duffman and Sophia

3

Duffman of Albuquerque, New Mexico are the surviving heirs of Scott Duffman, a member of the 24th Special Tactics Squadron based out of North Carolina. (Compl. at ¶¶ 3-5; O'Connor Decl. at ¶¶ 2 & 4, Exs. 1 & 3.) Plaintiffs Christine Vaughn and Brad Vaughn of Iowa are the surviving parents of Travis Vaughn. (Compl. at ¶ 6; O'Connor Decl. at ¶ 6, Ex. 5.) At the time of his death, Travis Vaughn was a member of B Company, 2nd Battalion, 160th Special Operations Aviation Regiment (the "160th"). (O'Connor Decl. at ¶¶ 2 & 5, Exs. 1 & 4.) The 160th is headquartered in Fort Campbell, Kentucky. (Id.) Plaintiffs Jill Garbs and Doug Garbs of Edwardsville, Illinois are the surviving parents of Ryan Garbs, a member of the 75th Ranger Regiment. (Compl. at ¶ 7; O'Connor Decl. at ¶ 2, Ex. 1.) Plaintiff Jordan Lanham, a passenger in the Subject Helicopter, is a resident of Georgia and claims personal injuries as a result of the Accident. (Compl. at ¶ 8.) Plaintiff RyAnne Noss is the spouse of Scot Noss, a member of the 75th Ranger Regiment, who suffered personal injuries in the Accident. (Compl. at ¶ 10.) RyAnne Noss and Scot Noss live in Tampa, Florida where Scot Noss remains in a VA hospital there. (O'Connor Decl at ¶ 8, Ex. 7.) Injured Plaintiffs Jerry Goldsmith, Timothy Brauch, Chris Trisko, and Mark Daniel do not allege their residence in the Complaint and Honeywell is unable to determine where they live at this time. (Compl at ¶¶ 9, 11-13.)

All Plaintiffs are represented by The Brandi Law Firm. (Compl. at p. 1.) Three of the four attorneys of record from The Brandi Law Firm are members of the Arizona bar. (O'Connor Decl. at ¶¶ 9-11, Exs. 8-10.) According to Plaintiffs' counsels' website, The Brandi Law Firm is comprised of "Arizona Aviation Accident Attorneys" serving clients in Phoenix, Arizona. (O'Connor Decl. at ¶ 12, Ex. 11.)

Defendants are foreign corporations with their headquarters and principal places of business located outside of the State of California. Boeing is a Delaware Corporation with its world headquarters in Chicago, Illinois and its MH-47E production facility in Pennsylvania. (Baker Decl. at ¶ 3.) Honeywell is a Delaware Corporation with its principal place of business in Morristown, New Jersey and its T55-GA-714A engine manufacturing facility in Arizona. (Baker Decl. at ¶¶ 2, 5.) Goodrich is incorporated in Delaware and has its principal place of business in

4

1    West Harford, Connecticut and its engine controls manufacturing facility in Connecticut. (Baker

2    Decl. at ¶ 4.)[6]

3        IV.    THE ACCIDENT

4        On the night of February 17, 2007, the Subject Helicopter crashed in the Shahjoi District

5    of the Zabul Province in Afghanistan. (Compl. at ¶ 1.) The helicopter was flying a mission in

6    support of Operation Enduring Freedom when the Accident occurred. (O'Connor Decl. at ¶ 13,

7    Ex. 12.) The helicopter "was part of a multi-aircraft flight carrying a quick-reaction force" in

8    support of a Joint Special Operations Command when the mission was cancelled and the quick

9    reaction force was returning to the Bagram Air Base. (O'Connor Decl. at ¶ 14, Ex. 13.) The

10   Subject Helicopter was operated by the U.S. Army 160th Special Operations Aviation Regiment.

11   (Kruse Decl. at ¶ 4.) The 160th provides aviation support for Special Operations Forces. (*Id.* at ¶

12   5.)

13       Following the Accident, the U.S. Army began an investigation to determine its cause.

14   (Kruse Decl. at ¶ 6.) Investigation related activities have occurred at the following U.S. Army

15   installations: Fort Campbell, Kentucky (home of the 160th), Fort Rucker, Alabama (location of the

16   U.S. Army Combat Readiness Center, the U.S. Army's principal aviation accident investigating

17   authority), Redstone, Alabama, and the Corpus Christi Army Depot, Texas. (*Id.*)

18       The U.S. Army recovered the engines, engine control system components, and other

19   component parts from the Subject Helicopter. These artifacts were transported to the United

20   States from Afghanistan under the control of the 160th. (*Id.* at ¶ 7.) The focus of the U.S. Army's

21   ongoing investigation is a possible engine failure or "flame-out" event. (*Id.* at ¶ 9.) The

22   recovered engines are in the custody of the 160th located in Fort Campbell, Kentucky. (*Id.* at ¶¶

23   7-8.) Honeywell employees located in Phoenix continue to support the U.S. Army's Accident

24   investigation, including the teardown of the engines. (Baker Decl. at ¶ 11; Kruse Decl. at ¶¶ 10-

25   ───────────────

26   [6] Plaintiffs have erroneously sued GE as the manufacturer of the Subject Helicopter's engines. In fact, the Subject Helicopter's engines were manufactured by Honeywell in Phoenix, Arizona. (Honeywell's Answer to Plaintiffs' Complaint at ¶ 23; Baker Decl at ¶ 5.) Accordingly, GE is not a proper defendant in this action.

27

28

Honeywell Motion to Transfer Venue
sd-406215

1    11.) Honeywell engineers, who analyzed the data gathered from the U.S. Army investigation,

2    including the teardown of the engines, are located in Phoenix, Arizona. (Kruse Decl. at ¶ 10.)

3    **V.      THE LOCATION OF POTENTIALLY RELEVANT EVIDENCE AND
              WITNESSES**

4

5    Honeywell's engine manufacturing facilities for the MH-47E Chinook helicopter are

6    located in Phoenix, Arizona and Greer, South Carolina. (Baker Decl. at ¶ 5.) The Subject

7    Helicopter was equipped with two T55-GA-714A engines manufactured by Honeywell at its

8    Phoenix facility. (*Id.* at ¶ 6.) Honeywell's relationship with the U.S. Army's MH-47E Chinook

9    program is centered in Arizona. (*Id.* at ¶ 9.) Honeywell employees located in Phoenix continue

10   to support the U.S. Army's investigation into the cause of the Accident. (*Id.* at ¶ 11.) Honeywell

11   employees, residing in Arizona, will be called as witnesses in support of Honeywell's defense at

12   trial, including Marlin Kruse, the Honeywell point person for the Accident investigation and a

13   member of Honeywell's Product Integrity Department. (*Id.* at ¶ 12.) Relevant documents

14   relating to the investigation and the design, production, manufacture, and testing of the engines

15   are likely to be located in Phoenix. Therefore, the vast majority of the documents concerning

16   Plaintiffs' claims against Honeywell are in Arizona. (*Id*. at ¶ 13.) Similarly, the vast majority of

17   witnesses with relevant knowledge and information concerning the design of the engines and the

18   Accident investigation are in Arizona. (Kruse Decl. at ¶ 10-11.) Conversely, Honeywell is not

19   aware of any key evidence or key witness relevant to this action that is located in this District.

20   (Baker Decl. at. ¶ 20.) It would be unduly burdensome and inconvenient for Honeywell to defend

21   claims in this District which has no ties to the Accident itself or the manufacture and design of the

22   engines and its component parts. (*Id.* at ¶ 8.)

23   **VI.     THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF
              ARIZONA**

24

25   Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the

26   interest of justice, a district court may transfer any civil action to any other district or division

27

28

                                        6

1    where it might have been brought." 28 U.S.C. § 1404(a).[7]  The Ninth Circuit has identified the

2    following factors to assist in the analysis of transfer motions brought under § 1404(a):

3        1.    The location where the relevant agreements were negotiated and executed;

4        2.    The state that is most familiar with the governing law;

5        3.    The plaintiffs' choice of forum;

6        4.    The respective parties' contact with the forum;

7        5.    The contacts relating to the plaintiffs' cause of action in the chosen forum;

8        6.    The differences in the costs of litigation in the two forums;

9        7.    The availability of compulsory processes to compel attendance of unwilling non-

10   party witnesses; and

11       8.    The ease of access to sources of proof.

12   *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).  Additionally, certain

13   "public interest" factors guide the analysis of transfer motions brought under Section 1404(a),

14   such as "the level of congestion of the local docket, the local public interest in the outcome of a

15   case, avoidance of conflict of laws issues, and the unfairness of burdening citizens in an unrelated

16   forum with jury duty."  *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 538-39 (N.D. Cal.

17   2005) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).

18   The application of these factors establishes that this case should be transferred to the District of

19   Arizona.

20   **VII.    THE SUBJECT HELICOPTER WAS DESIGNED AND MANUFACTURED**
21   **PURSUANT TO GOVERNMENT CONTRACTS THAT WERE NOT**
     **NEGOTIATED OR EXECUTED IN THIS DISTRICT**

22       All of the Defendants' activities relating to the Subject Helicopter, including those with

23   respect to the engines, FADEC, DECU, and technical manuals, were performed under close

24       [7] The "threshold question" for transfer is "whether the case could have been brought in the
25   forum to which the transfer is sought."  *Inherent.com v. Martindale-Hubbell*, 420 F. Supp.
     2d 1093, 1098 (N.D. Cal. 2006).  Here, the action clearly "could have been brought" in the
26   District of Arizona pursuant to 28 U.S.C. § 1391(a)(2) because, as disccused below, a substantial
     part of the events giving rise to Plaintiffs' claims occurred in Arizona.  Additonally, none of the
27   co-defendants object to Honeywell's motion and, in fact, Boeing will join in this Motion.

28

                                              7

1  government supervision pursuant to comprehensive and detailed contract specifications provided

2  by the United States Government.  (*See e.g.,* Boeing, Honeywell and Goodrich's Answers to

3  Plaintiffs' Complaint at ¶¶ 15, 32, 25, respectively.)  As such, a critical issue to be decided in this

4  case is the "government contractor defense" because the Subject Helicopter and all of its

5  component parts were designed and manufactured in conformity with specifications provided or

6  approved by the United States Government.  S*ee e.g., Boyle v. United Techs. Corp.*, 487 U.S. 500

7  (1988); *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582 (1996).  Therefore, the relevant

8  agreements — namely, Contract No. DAAJ09-89-C-A010 and other agreements that make up the

9  specification for the Subject Helicopter — are critical to the issues in the case.  These government

10  contracts were not drafted, negotiated or performed in this District.  (Baker Decl. at ¶ 14.)  The

11  government contract for the design and manufacture of the Honeywell T55-GA-714A engines for

12  the MH-47E helicopter is performed by Honeywell in Phoenix, Arizona.  (Baker Decl. at ¶ 15.)

13  Pursuant to that contract, acceptance testing of the engines by the U.S. Army is completed in

14  Phoenix, Arizona.  (Baker Decl. ¶ 16.)  Once the engine testing process is complete, U.S. Army

15  acceptance of the engines under the contract signifies its conformance to the precise government

16  specifications.  (Baker Decl. at ¶ 17.)  Conversely, Honeywell is unaware of any agreement

17  relevant to the Subject Helicopter that was negotiated or executed in this District.  (*Id.* ¶ 14.)

18  Accordingly, this factor favors transfer because critical government contracts and design and

19  manufacturing activities pursuant to those contracts have no relation to this District whatsoever.

20  **VIII.   CALIFORNIA LAW IS NOT IMPLICATED IN THIS CASE**

21      If the forum court is particularly familiar with the governing law, that may favor retention

22  of the case in the forum.  *Jones*, 211 F.3d at 498-99.  Such is not the case here.  Plaintiffs do not

23  allege a violation of any California statute or provision of California law that courts sitting in

24  California are particularly situated to interpret and apply.  *See Allegiance Healthcare Corp. v.*

25  *London Int'l Group, PLC*, No. C 97-4619 SC, 1998 WL 328624, at *4 (N.D. Cal. June 17, 1998)

26  ("The only interest served by trying the case in California is that a California district court will be

27  more at home with the claims under the California Business & Professions and Health & Safety

28  Codes.  The Court does not find, however, that these claims are so complex or unclear that they

8

1    should be tried in California.").  Plaintiffs' claims are all product liability claims.  Given the lack

2    of connection between Plaintiffs' claims and California, it is highly unlikely that California law

3    would govern Plaintiffs' claims even if this case were not transferred to Arizona.  To the contrary,

4    Plaintiffs' claims are likely to be governed by the law of several states, none of which would be

5    California.  For example, liability issues are likely to be determined by the product liability

6    regime of the Defendants' residence — Arizona, Pennsylvania, or Connecticut.[8]  Damages issues

7    are likely to be determined by the law of the decedent or injured Plaintiffs' residence.[9]  Because

8    none of the issues in this case implicate California law, this factor weighs in favor of transfer

9    because this District has no interest retaining the case on account of its familiarity with applicable

10   law.

11                    IX.    **PLAINTIFF'S CHOICE OF THIS FORUM IS ENTITLED TO LITTLE
                               WEIGHT**
12

13           While courts generally defer to a plaintiff's choice of forum, that selection "is not the final

14   word."  *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).  Indeed, the

15   Northern District of California consistently has held that "the degree to which courts defer to the

16   plaintiff's chosen venue is substantially reduced when the plaintiff's choice is not its residence or

17   where the forum lacks a significant connection to the activities alleged in the Complaint."

18   *Inherent.com*, 420 F. Supp. 2d at 1100 (*quoting Carolina Cas. Co. v. Data Broad. Corp.*,

19   _____

20           [8] California's product liability laws are similar to Arizona, Pennsylvania, and Connecticut.
     *See e.g., Product Liability Desk Reference: A Fifty-State Compendium* (Morton F. Daller ed.
21   2007) (Arizona, Pennsylvania and Connecticut rely on section 402A of the Restatement (Second)
     of Torts for theories of liability, which are similar to the rules of law in California).  Thus liability
22   issues are likely to be determined under similar standards regardless of which state's law applies.

23           [9] Other cases involving aviation accidents have recognized that the law of the decedent's
     domicile has a unique interest in compensation and distribution of recovery.  *See, e.g., In re*
24   *Aircrash Disaster Near Roselawn, Ind.,* 926 F. Supp. 736, 744-745 (N.D. Ill. 1996); *In re*
     *Aircrash Disaster at Stapelton Int'l Airport*, 720 F. Supp. 1505, 1530 (D. Colo. 1989); *In  re Air*
25   *Crash Disaster Near Chicago, Ill.*, 480 F. Supp. 1280, 1283 (N.D. Ill. 1979); *In re Air Crash*
     *Disaster at Boston, Mass.*, 415 F. Supp. 206, 210 (D. Mass. 1976).  Therefore, it is not
26   uncommon that laws of different states will provide the measure of damages to different plaintiffs
     arising from the same accident.
27

28

                                                    9

1    158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001)); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106

2    (N.D. Cal. 2001) (*quoting Fabus Corp. v. Asiana Exp. Corp.*, No. C-00-3172 PJH, 2001 WL

3    253185, at *1 (N.D. Cal. Mar. 5, 2001)); *Allegiance Healthcare Corp.*, 1998 WL 328624, at *1.

4    Here, neither Plaintiffs nor their decedents are California residents, and the allegations in the

5    Complaint have no relationship to this District.  As such, Plaintiffs' choice of this District is

6    entitled little to no deference.[10]

7          **A.**      **None of the Plaintiffs Injured in the Accident Are California Residents**

8          None of the plaintiffs injured in the accident claim to reside in California.  *See* Sections I

9    and III, *supra*.  The usual deference given a plaintiff's choice of forum does not apply where the

10    plaintiff is a non-resident of the forum.  *See Inherent.com*, 420 F. Supp. 2d at 1098.  Not

11    surprisingly, the Northern District consistently grants motions to transfer where the plaintiff does

12    not reside in this District.  *See, e.g.*, *Jaco Envtl. Inc. v. Appliance Recycling Ctrs.*, No. C 06-

13    06601 JSW, 2007 WL 951274, at *2 (N.D. Cal. Mar. 27, 2007) (transferring case in part because

14    plaintiffs did not reside in the District); *Sweet-Reddy v. Vons Cos.*, No. C06-06667 MJJ, 2007 WL

15    841792, at *3 (N.D. Cal. Mar. 20, 2007) (same); *MTS Sys. Corp. v Hysitron, Inc.*, No. C 06-3156

16    CW, 2006 WL 2547698, at *3 (N.D. Cal. Sept. 1, 2006) (same); *Williams*, 157 F. Supp. 2d

17    at 1107 (same); *Fabus*, 2001 WL 253185, at *2 (transferring case where "a majority of the

18    plaintiffs" lived outside this District); *Lupiani v. Wal-Mart Stores, Inc.*, No. C-03-2614 SC, 2003

19    WL 22416414, *2 (N.D. Cal. Oct. 17, 2003) vacated on other grounds, No. C-03-2614 SC, 2003

20    WL 22682450 (N.D. Cal. Nov. 6, 2003) (transferring case where "not one of the named Plaintiffs

21    in this action resides in California"); *Allegiance Healthcare Corp.*, 1998 WL 328624 at *3.  In

22    sum, "[d]eference to Plaintiff's choice of forum is . . . significantly diminished when plaintiff

23    initiates an action in a state in which he or she is not a resident."  *Panetta v. SAP Am., Inc.*, No.

24    _____

25        [10] Again, the fact that the Getz plaintiffs reside in California has no bearing on the transfer analysis 28 U.S.C. 1332(c)(2).  In any event, the Getz plaintiffs do not reside in this District.  *See* General Order No. 6: Plan of the United States District Court  for the Northern District of

26    California for the Random Selection of Grand and Petit Jurors, at 1 (Roseville, CA is located in the Eastern District of California); *see also* U.S. Courts locator of the Federal Judiciary,

27    http://www.uscourts.gov/courtlinks (last visited January 7, 2008).

28    

Honeywell Motion to Transfer Venue
sd-406215

1    C0501696 RMW, 2005 WL 1774327, at *5 (N.D. Cal. July 26, 2005) (transferring case where

2    "[t]he Northern District of California is not a convenient forum for either party in this case" as

3    "[p]laintiff is a resident of Atlanta, Georgia").  Here, Plaintiffs are not residents of this District or

4    of this State, and, accordingly, Plaintiffs' choice of this District is entitled to little or no weight.

5        **B.    This Forum Has No Meaningful Connection To Plaintiffs' Claims**

6        It is likewise plain from the face of the Complaint that this District has no connection

7    whatsoever to this dispute, which involves only non-residents of this District.  There is no

8    allegation in the Complaint that the conduct Plaintiffs challenge — the design and manufacture of

9    the Subject Helicopter — occurred in this District.  This District's only connection with this

10   dispute is that Plaintiffs' counsel maintains an office in this District.  That connection, however,

11   should be disregarded because Plaintiffs' lawyers are also admitted in Arizona and claim

12   expertise in aviation accident claims in Arizona.  (O'Connor Decl. at ¶¶ 9-12, Exs. 8-11.)  In

13   accord with Ninth Circuit precedent, the Northern District consistently declines to defer to a

14   plaintiff's choice of forum when the allegations in the Complaint have no connection to this

15   District.  *See*, *e.g.*, *Pacific Car & Foundry*, 403 F.2d at 954 (where the operative facts occurred

16   outside the forum and the forum is unrelated to the parties or the subject matter, plaintiff's forum

17   choice is entitled to minimal consideration); *Gaston v. Gottesman*, No. C-06-7840 MMC, 2007

18   WL 1114014, at *2 (N.D. Cal. Apr. 13, 2007); *Heil v. Wells Fargo Bank*, No. C06-02002 MJJ,

19   2006 WL 2411416, at *2 (N.D. Cal. Aug. 18, 2006); *MTS Sys. Corp.*, 2006 WL 2547698, at *3;

20   *Stuart v. Mobile ESPN*, No. C 06-02094 SI, 2006 WL 2433416, at *4 (N.D. Cal. Aug. 21, 2006)

21   (where the district has little interest in the subject matter of plaintiff's' complaint, plaintiffs'

22   choice of forum is entitled to minimal weight); *Maxon v. Jefferson Pilot Secs. Corp.*, No. C 01-

23   02668 CRB, 2002 WL 523575, at *2 (N.D. Cal. Apr. 2, 2002) ("Because the dispute is centered

24   elsewhere, and the underlying agreement was executed elsewhere, plaintiff's choice of forum is

25   not entitled to significant weight.").

26       Because (i) the Accident occurred in Afghanistan, (ii) the Subject Helicopter's engines

27   were designed and manufactured in Arizona, (iii) the deceased soldiers were residents of other

28   states, (iv) the injured plaintiffs are not residents of California, and (v) Plaintiffs' damages

11

1  evidence is not located here, this District has no connection to the issues raised in Plaintiffs'

2  Complaint.  Therefore, Plaintiffs' choice of this forum is entitled to little deference.

3      **X.      THE CONVENIENCE FACTORS STRONGLY FAVOR TRANSFER**

4          The convenience of the parties, the convenience of witnesses, and the ease of access to

5  proof all indicate that transfer is appropriate in this case.

6          **A.      The Convenience Of The Parties Favors Transfer**

7          Honeywell's engine manufacturing facilities are located in the District of Arizona.

8  Plaintiffs claim that it was the failure of the Honeywell engine that caused the Accident.  (Compl.

9  at ¶ 21.)  Therefore, all relevant documents and witnesses regarding the design, production,

10  manufacture, and testing of the Honeywell engines are likely to be in Arizona.  Furthermore,

11  Honeywell's relationship with the U.S. Army's MH-47E Chinook program is centered in

12  Arizona.  (Baker Decl. at ¶ 9.)  In addition, the residence of the Plaintiffs that were injured in the

13  Accident and the men who were killed are located in New Mexico, Kentucky, Iowa, Illinois,

14  Georgia, Florida, and North Carolina.  It logically follows that transfer to the District of Arizona

15  would serve the "convenience of the parties" under § 1404(a).  Examining this factor in a similar

16  situation, the Northern District granted a transfer motion to Arkansas where the named Plaintiffs

17  resided in Nevada, Kentucky, and New Mexico and the corporate defendant was headquartered in

18  Arkansas, finding that such transfer would clearly be more convenient for the defendant and

19  would be no less convenient for the plaintiffs than keeping the case in California.  *Lupiani*, 2003

20  WL 22416414 at *3.  Similarly, in *Panetta*, a court in the Northern District transferred a case to

21  the defendant's state of headquarters (Pennsylvania) when the plaintiff resided in Georgia, finding

22  that "[t]he Northern District of California is not a convenient forum for either party in this case."

23  *Panetta*, 2005 WL 1774327, at *4.

24          As in *Lupiani* and *Panetta*, this case would also be more conveniently litigated in the

25  District of Arizona for all parties.  This factor favors transfer to the District of Arizona.

26          **B.      The Convenience Of The Witnesses Favors Transfer**

27          "The relative convenience to the witnesses is often recognized as the most important

28  factor to be considered in ruling on a motion under § 1404."  *Saleh v. Titan Corp.*, 361 F. Supp.

12

1  2d 1152, 1160 (S.D. Cal. 2005) (citation omitted).  Accordingly, the Northern District

2  consistently has transferred cases where the majority of the witnesses were located in or near the

3  transferee state.  *See*, *e.g.*, *Inherent.com*, 420 F. Supp. 2d at 1101 (transferring case to New Jersey

4  in part because "New Jersey is the place where the majority of witnesses are located"); *Panetta*,

5  2005 WL 1774327, at *5 (transferring case to Pennsylvania where "[a]ll other witnesses

6  identified to the court appear to live in either Pennsylvania, Massachusetts, or Georgia");

7  *Biswas v. HR Value Group, LLC*, No. C 02-03469 CRB, 2002 WL 31261160, at *2 (N.D. Cal.

8  Oct. 4, 2002) (transferring employment dispute to the employer's home state of Wisconsin,

9  holding that "[a]ll of defendants' witnesses reside in Wisconsin, Illinois and some eastern states"

10  while "plaintiff has presented no evidence of any witnesses that reside in California, other than

11  plaintiff himself"); *Williams*, 157 F. Supp. 2d at 1109 (transferring case where "the balance of

12  witness convenience favors defendants"); *Fabus*, 2001 WL 253185, at *2 (transferring case to

13  Central District of California where "the witnesses identified are nearly entirely located in the Los

14  Angeles area," thus "a trial venue located in the Central District would certainly be more

15  convenient for the witnesses than a trial venue in San Francisco").  This case is no different.

16  **1.    Arizona Serves the Convenience of Witnesses**

17  Arguably the most relevant production facility — Honeywell's engine manufacturing

18  facility for the Subject Helicopter — is in Arizona.  In fact, none of the relevant production

19  facilities are in California.[11]

20  Honeywell's key witnesses with knowledge regarding the Subject Helicopter's engines

21  are located in the District of Arizona.  Because Plaintiffs' theories of liability focus primarily on

22  an alleged engine failure, Arizona is the "center of gravity" for this case.  Honeywell's employees

23  located in Phoenix are supporting the U.S. Army's investigation into the cause of the Accident.

24  (Baker Decl. at ¶ 11.)  None of the potential Honeywell, Boeing, or Goodrich witnesses reside in

25

26

27  _____

[11]  The other potentially relevant production facilities are located in Pennsylvania and Connecticut — on the other side of the United States from this District.

28

Honeywell Motion to Transfer Venue
sd-406215

1   California. Indeed, there is likely to be a complete dearth of party witnesses in the Northern

2   District of California.

3          Witnesses that are likely to be called by Plaintiffs are also not located within this District.

4   The Accident took place in Afghanistan. The U.S. Army investigation activities into the Accident

5   have occurred in Kentucky, Alabama, and Texas. (Kruse Decl. at ¶ 6.) There have been no

6   investigation activities in this District. Plaintiffs will likely call damages witnesses including

7   medical providers, employers, accountants, and rescue personnel. There is currently <u>no</u>

8   indication that any of these witnesses reside within this District.

9          Plaintiffs allege that the Honeywell engines failed, resulting in this Accident. The vast

10  majority of Honeywell's witnesses are located in Arizona. Conversely, this District contains no

11  probable defense witnesses. The injured Plaintiffs do not reside in this District, nor did any of the

12  decedents. Therefore, Arizona best serves the convenience of probable issues.

13         Providing a convenient forum for non-party witnesses who may have material information

14  relevant to the claims is a compelling consideration favoring transfer. For example, in

15  *Brownstein v. American Airlines*, C-05-3435 JCS, 2006 WL 118405 (N.D. Cal. Jan. 13, 2006),

16  the court transferred a case to the Central District of California based in part on "the convenience

17  of the nonparty witnesses," specifically referencing "the significance of the fact that five of the

18  eight non-party witnesses identified reside in the Central District and the medical expert will also

19  almost certainly reside in the Central District." *Id.* at *3.

20         The convenience of the non-party witnesses supports transfer in this case. Here, several

21  U.S. Army witnesses with knowledge of the Accident investigation and the nature of the Special

22  Operations Aviation Regiment mission on the night of the Accident presumably reside near Fort

23  Campbell, Kentucky, Fort Rucker, Alabama, Redstone Arsenal Alabama, and Corpus Christi,

24  Texas. These non-party witnesses are critical to Honeywell's defense. The crux of Plaintiffs'

25  Complaint is the allegation that engines manufactured and sold to the U.S. Army were defectively

26  designed or manufactured. Accordingly, the testimony of these U.S. Army witnesses, offering

27  first-hand experience with the Accident investigation and the operation of the Subject Helicopter,

28  including its maintenance history, will be significant in this case. The great inconvenience that

14

1  these non-party witnesses will suffer if this case remains in the Northern District of California

2  favors transfer to Arizona.

3  **C.    Ease Of Access To Sources Of Proof Favors Transfer**

4  In addition to being a foreign forum for all parties, this District also has no connection

5  with the evidence necessary for the parties to litigate the case.  Documents related to the design

6  and manufacturer of the Subject Helicopter's engines are not located in this District.  (Baker Decl.

7  at ¶ 20.)  Documents related to government contracts and acceptance testing for the U.S. Army's

8  procurement of the Subject Helicopter's engines are located in Arizona.  (*Id.* at ¶¶ 14-15.)  In

9  addition, the engines from the Accident are located in Fort Campbell, Kentucky which is closer to

10  the District of Arizona than this District.  (*See* Kruse Decl. at ¶¶ 7-8.)  In short, most of the

11  documents and evidence of which Honeywell is aware that would be relevant to this case are in

12  Arizona or Kentucky.  (*Id.* ¶ 11.)

13  Conversely, Defendants are not aware of a single document relevant to Plaintiffs'

14  allegations that is located in this District.  (Baker Decl. ¶ 20.)  Furthermore, Plaintiffs' damages

15  evidence, including medical records, employment records, and tax returns are not located in

16  California.  The lack of documentary evidence in this District favors transfer.  *See Gerin v. Aegon*

17  *USA, Inc.,* No. C 06-5407 SBA, 2007 WL 1033472, at *6 (N.D. Cal. April 4, 2007) (transferring

18  class action to Middle District of Florida where "the primary defendants are located in Florida,

19  the acts giving rise to the claims occurred in Florida," and "most of the Defendants' material

20  witnesses and documentary evidence are located in Florida"); *Sweet-Reddy*, 2007 WL 841792, at

21  *3 (transferring case where "in no event is any of the evidence located in Northern California");

22  *Heil*, 2006 WL 2411416, at *3 ("aside from Plaintiffs, who reside in California, there is nothing

23  indicating that any witness or record evidence relevant to this case is located in the Northern

24  District"); *Biswas*, 2002 WL 31261160, at *3 (transferring a case to Wisconsin where "most of

25  the relevant evidence is located in Wisconsin").

26  In sum, the lack of evidence in this District and the overwhelming ease of access to

27  witnesses and proof in Arizona strongly favor transfer to the District of Arizona.

28

15

1

## XI.    THIS FORUM HAS NO MEANINGFUL CONTACT WITH THE PARTIES OR WITH PLAINTIFFS' CLAIMS AGAINST HONEYWELL

2

3       The absence of a connection between this District and the events underlying the

4   Complaint, as well as lack of contacts between the parties and this District, counsel in favor of

5   transferring this case to the District of Arizona, a district with a strong connection to the

6   allegations in the Complaint and to the parties themselves.

7       In *Lupiani*, the allegations concerned an alleged violation by Wal-Mart Stores, Inc. of

8   employees' rights under the Employee Retirement Income Security Act.  Granting the motion to

9   transfer the case to the Western District of Arkansas, where the defendant was headquartered, this

10  Court wrote:

11          [N]early all of the equitable factors . . . favor transfer of this case.
            The relevant agreements were negotiated and executed in the
12          Western District of Arkansas, which is also the forum where the
            parties have the most contacts, where the events leading up to
13          Plaintiffs' cause of action arose, where nearly all of the sources of
            proof are located, and presumably where the costs of litigation will
14          be least expensive.

15

16  *Lupiani*, 2003 WL 22416414, at *3.  Finding that "the Northern District of California has

17  virtually no connection or ties to this action," the case was transferred.  *Id.* at **3, 5.

18      As detailed above, Plaintiffs' causes of action are totally unconnected to this District.

19  That fact not only helps extinguish any deference to Plaintiffs' choice of forum, as discussed

20  above, but it also independently supports transfer of venue under the "contacts" factor.  *See*, *e.g.*,

21  *Inherent.com*, 420 F. Supp. 2d at 1100 ("Transfer of the suit from California would be proper

22  because this state has no relation to the parties or to the dispute."); *Stuart*, 2006 WL 2433416, at

23  *5 ("To the extent that defendants have contacts with this district, the bulk of those contacts are

24  unrelated to the torts at issue.  . . .  Thus, this factor weighs in favor of transfer."); *Panetta*, 2005

25  WL 1774327, at *7 (transfer to the Southern District of New York granted where plaintiff's

26  "causes of action . . . are unrelated to the California forum").  While the Northern District of

27  California has no meaningful connection to this dispute, the District of Arizona — the "center of

28  gravity" for this case and the location of many of the relevant witnesses and documentary

16

1   evidence — does.  The lack of connection between the allegations of the Complaint and this

2   District strongly favors transfer to Arizona.

3   **XII.    DIFFERENCES IN LITIGATION COSTS BETWEEN THE TWO
           FORUMS FAVOR TRANSFER**

4

5       The "cost of litigation" factor favors transfer from this District to the District of Arizona.

6   In a case brought by a Georgia resident against a Pennsylvania-based corporation, the district

7   court noted that "the costs of litigation would be less for both parties in Pennsylvania" and found

8   "it . . . likely that transportation costs for plaintiff would be higher if he were to litigate in

9   California than in Pennsylvania." *Panetta*, 2005 WL 1774327, at \*7; *see also Italian Colors Rest.*

10  *v. Am. Express Co.*, No. C 03-3719 SI, 2003 WL 22682482, at \*5 (N.D. Cal. Nov. 10, 2003) ("the

11  cost of litigation will be substantially lessened if the action is venued in the same district where

12  most of the documentary evidence is found").  The same is true here.

13      As discussed above, documents pertaining to the design and manufacture of the engines

14  can be found in Phoenix.  Plaintiffs can be expected to produce very few documents in connection

15  with their damages claims, and in any case there is no indication that those documents are located

16  in the Northern District.  Moreover, "litigation costs are reduced when venue is located near most

17  of the witnesses expected to testify or give depositions." *Italian Colors*, 2003 WL 22682482, at

18  \*5.  Because the allegations center around Honeywell's design and manufacture of the T55-GA-

19  714A engines, the material witnesses will likely be employees of Honeywell residing in Phoenix,

20  Arizona, representatives of Boeing and Goodrich, located in Pennsylvania and Connecticut

21  respectively, and various U.S. Army witnesses residing in Kentucky, Alabama, Texas and

22  Georgia.  Phoenix is the actual location for many of the material witnesses and is geographically

23  closer for the witnesses who do not reside in Arizona.

24      Finally, a transfer to Arizona not only will constitute no inconvenience for Plaintiffs, it

25  actually provides greater convenience for them.  Plaintiffs on average will be required to travel

26  less distances if this case is transferred from San Francisco to Phoenix.  Travel time and expense

27  for all parties and witnesses will be reduced if this case is litigated in Arizona instead of in this

28

1    District.  Thus, transfer would be more convenient for all parties to the litigation, not just for

2    Defendants.[12]

3    ### XIII.    THE DISTRICT OF ARIZONA HAS A LOCALIZED INTEREST IN THIS
         CASE AND ITS RESIDENTS ARE MORE APPROPRIATELY
4            BURDENED BY JURY DUTY

5            Defendants are headquartered in New Jersey, Illinois, and Connecticut; however, the

6    center of the controversy in this action is the District of Arizona where the engines were designed

7    and manufactured.  Given the concentration of Honeywell's aerospace business in Phoenix, the

8    District of Arizona has a localized interest in the outcome of this case.  (Baker Decl. at ¶ 21).

9    Furthermore, "jury duty is a burden that ought not to be imposed upon the people of a community

10   which has no relation to the litigation."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).

11   As set forth above, California has no distinguishing relationship to this litigation, whereas the

12   District of Arizona plainly has the most significant relationship to the parties, the witnesses, and

13   the evidence.  Accordingly, jury duty more appropriately lies in the District of Arizona than this

14   District.

15   ### XIV.    CONCLUSION

16           As in *Pacific Car & Foundry*, the Court is "left . . . with a choice of forum supported only

17   by the fact that it was chosen."  403 F.2d at 955.  That is no basis to retain a case where, as here,

18   every relevant factor in the § 1404(a) analysis points in favor of transfer:

19           •    Plaintiffs claim the Subject Helicopter was defectively designed or manufactured

20                by the Defendants, but do not allege one connection to this District.

21           •    The District of Arizona is more convenient for a majority of the party and non-

22                party witnesses, and none of the party or non-party witnesses are in the Northern

23                District of California.

24

25           ———————————
     [12] According to the Judicial Caseload Profiles for 2007, the "court congestion" factor is a

26   neutral one.  Median time to trial in the District of Arizona is 31.5 months while the median time
     to trial in the Northern District is 27 months.  *See*

27   http://www.uscourts.gov/caseload2007/tables/C05Mar07.pdf (last visited January 10, 2007).

28

                                                    18

1
2

- The relevant evidence can largely be found in the District of Arizona, and no evidence can be found in the Northern District of California.

3
4

- The District of Arizona has a real connection to the allegations in the Complaint, whereas the Northern District of California has none.

5
6

- Plaintiffs, represented by counsel admitted to practice in Arizona, would be no more inconvenienced by litigating in Phoenix than by litigating in San Francisco.

7  For the foregoing reasons, Honeywell respectfully requests that the Court transfer this case to the

8  United States District Court for the District of Arizona, Phoenix Division, for the convenience of

9  the parties and witnesses and in the interests of justice.

10

11  Dated: January 10, 2008                    MORRISON & FOERSTER LLP

12                                             By:  /s/ William V. O'Connor
                                                    William V. O'Connor

13                                             Attorneys for Defendant
                                               HONEYWELL INTERNATIONAL INC.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

19

1

**CERTIFICATE OF SERVICE**

2       I, James W. Huston, hereby certify that on January 10, 2008, I caused to be electronically

3  filed a true and correct copy of the attached

4       **DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION TO
       TRANSFER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES IN**

5       **SUPPORT THEREOF**

6       **DECLARATION OF WILLIAM V. O'CONNOR IN SUPPORT OF HONEYWELL
       INTERNATIONAL INC.'S MOTION TO TRANSFER VENUE**

7
       **DECLARATION OF PETER B. BAKER IN SUPPORT OF HONEYWELL**

8       **INTERNATIONAL INC.'S MOTION TO TRANSFER VENUE**

9       **DECLARATION OF MARLIN KRUSE IN SUPPORT OF HONEYWELL
       INTERNATIONAL INC'S MOTION TO TRANSFER VENUE**

10
       **[PROPOSED] ORDER GRANTING DEFENDANT HONEYWELL**

11       **INTERNATIONAL INC.'S MOTION TO TRANSFER VENUE**

12       with the Clerk of the Court using CM/ECF, which will send notification that such filing is

13  available for viewing and downloading to the following counsel of record for Plaintiffs:

14

15

| | |
|---|---|
| Ronald A. McIntire, Esq.<br>Chung H. Han, Esq.<br>PERKINS COIE LLP<br>1620 26th Street, Sixth Floor, South Tower<br>Santa Monica, CA  90404-4013 | Telephone:  310.788.9900<br>Facsimile:  310.788.3399<br><br>***Attorneys for Defendant The Boeing<br>Company*** |
| Thomas J. Brandi, Esq.<br>Daniel Del'Osso, Esq.<br>Casey A. Kaufman, Esq.<br>Brian J. Malloy, Esq.<br>THE BRANDI LAW FIRM<br>44 Montgomery Street, Suite 1050<br>San Francisco, CA  94104 | Telephone:  415.989.1800<br>Facsimile:  415.989.1801<br><br>***Attorneys for Plaintiffs*** |
| James R. Donahue, Esq.<br>CAULFIELD DAVIES & DONAHUE<br>80 Iron Point Circle, Suite 105<br>Folsom, CA  95630 | Telephone:  916.817.2900<br>Facsimile:  916.817.2644<br><br>***Attorneys for Plaintiffs*** |
| Clement L. Glynn, Esq.<br>GLYNN & FINLEY, LLP<br>100 Pringle Ave., Suite 500<br>Walnut Creek, CA  94596 | Telephone:  925.210.2801<br>Facsimile:  925.945.1975<br><br>***Attorneys for Defendant General Electric*** |

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE
sd-406215

| | |
|---|---|
| Frank Chiarchiaro, Esq.<br>MENDES & MOUNT, LLP<br>750 Seventh Avenue<br>New York, NY  10019-6829 | Telephone:  212.261.8000<br>Facsimile:  212.261.8750<br><br>**_Attorneys for Defendant Goodrich_**<br>**_Corporation_** |
| Garth Aubert, Esq.<br>Mark Irvine, Esq.<br>MENDES & MOUNT, LLP<br>445 South Figueroa Street, 38th Floor<br>Los Angeles, CA  90071 | Telephone:  213.955.7780<br>Facsimile:  213.955.7725<br><br>**_Attorneys for Defendant Goodrich_**<br>**_Corporation_** |

Executed at San Diego, California, on this 10th day of January, 2008.


MORRISON & FOERSTER LLP


By:   /s/  William V. O'Connor
         William V. O'Connor

Attorneys for Defendant
HONEYWELL INTERNATIONAL INC.