1  JAMES W. HUSTON (BAR NO. 115596)
   jhuston@mofo.com
2  ERIN M. BOSMAN (BAR NO. 204987)
   ebosman@mofo.com
3  WILLIAM V. O'CONNOR (BAR NO. 216650)
   woconnor@mofo.com
4  JOANNA E. HERMAN (BAR NO. 227480)
   jeherman@mofo.com
5  MORRISON & FOERSTER LLP
   12531 High Bluff Drive, Suite 100
6  San Diego, California  92130-2040
   Telephone:  858.720 5100
7  Facsimile:  858.720.5188

8  Attorneys for Defendant
   HONEYWELL INTERNATIONAL INC.

9

10                 UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12

13  DEBORAH GETZ, et al.,                    Case No.    CV 07-06396 CW

14            Plaintiffs,              **DEFENDANT HONEYWELL
                                       INTERNATIONAL INC.'S NOTICE
15       v.                            OF MOTION AND MOTION TO
                                       DISMISS PLAINTIFFS'
16  THE BOEING COMPANY, et al.,        COMPLAINT; MEMORANDUM
                                       OF POINTS AND AUTHORITIES
17            Defendants.              IN SUPPORT THEREOF**

18                                     Date:        June 19, 2008
                                       Time:        2:00 p.m.
19                                     Courtroom:  2
                                       Judge:  Hon. Claudia Wilken
20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 19, 2008, at 2:00 pm, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Claudia Wilken, United States District Court, Northern District of California, Oakland Division, Courtroom 2, 4th Floor, 1301 Clay Street, 400 South, Oakland, California 94612, Honeywell International Inc. ("Honeywell") will, and hereby does, move the Court for an order dismissing plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  The claims in this case arise from military operations which are considered to be nonjusticiable political questions and therefore must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

This motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the accompanying Declarations and exhibits thereto of Joanna E. Herman and Marlin Kruse in Support of Honeywell's Motion to Dismiss; the pleadings and other files herein; and such other written and oral argument as may be presented to the Court.

Dated: April 29, 2008                MORRISON & FOERSTER LLP


By:  /s/ James W. Huston
         James W. Huston

Attorneys for Defendant
HONEYWELL INTERNATIONAL
INC.

1

1

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................. 2

III.  STANDARD FOR MOTION TO DISMISS ..................................................... 4

IV.   THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINT AS NONJUSTICIABLE
      UNDER THE POLITICAL QUESTION DOCTRINE ...................................... 5

      A.   Plaintiffs' Complaint Must Be Dismissed Because The Claims Arise Out Of Military
           Operations Which Are Constitutionally Committed To The Executive And Legislative
           Branches ................................................................................................... 7

      B.   A Lack Of Judicial Standards Requires Plaintiffs' Complaint Be Dismissed .................. 10

      C.   It Is Impossible To Decide This Case Without An Initial Policy Determination of Non-
           Judicial Discretion .................................................................................... 12

      D.   Plaintiffs' Complaint Should Also Be Dismissed Pursuant To The Remaining
           Independent Tests Under *Baker* .............................................................. 13

V.    CONCLUSION ................................................................................................ 14

1

# TABLE OF AUTHORITIES

2

## CASES

3   *Aktepe v. United States,*
        105 F.3d 1400 (11th Cir. 1997) ............................................................. 8, 10, 11, 13

4

    *Alperin v. Vatican Bank,*
5       410 F.3d 532 (9th Cir. 2005) ................................................................................. 10

6   *Baker v. Carr,*
        369 U.S. 186 (1962) ..................................................................................... *passim*

7

    *Banner v. United States,*
8       303 F. Supp. 2d 1 (D.D.C. 2004), *aff'd*, 428 F.3d 303 (D.C. Cir. 2005) ....................... 6, 13, 14

9   *Bentzlin v. Hughes Aircraft Co.,*
        833 F. Supp. 1486 (C.D. Cal. 1993) ........................................................... 7, 8, 10

10

    *Corrie v. Caterpillar, Inc.,*
11      503 F.3d 974 (9th Cir. 2007) ........................................................................... *passim*

12  *DaCosta v. Laird,*
        471 F.2d 1146 (2nd Cir. 1973) .................................................................................. 12

13

    *Farmer v. Rountree,*
14      252 F.2d 490 (6th Cir. 1958) ..................................................................................... 6

15  *Fisher v. Halliburton, Inc.,*
        454 F. Supp. 2d 637 (S.D. Tex. 2006) ................................................................ 7, 8, 13

16

    *Flast v. Cohen,*
17      392 U.S. 83 (1968) ..................................................................................................... 6

18  *Gilligan v. Morgan,*
        413 U.S. 1 (1973) .................................................................................................. 8, 11

19

    *In re "Agent Orange" Prod. Liab. Litig.,*
20      818 F.2d 204 (2d. Cir. 1987) ..................................................................................... 11

21  *Japan Whaling Ass'n v. Am. Cetacean Soc'y,*
        478 U.S. 221 (1986) ................................................................................................... 6

22

    *Kokkonen v. Guardian Life Ins. Co. of Am.,*
23      511 U.S. 375 (1994) ................................................................................................... 5

24  *Mack v. S. Bay Beer Distribs., Inc.,*
        798 F.2d 1279 (9th Cir. 1986), *abrogated on other grounds, Astoria Fed. Savs. & Loan*
25      *Ass'n v. Solimino,* 501 U.S. 104 (1991) ..................................................................... 5

26  *McCarthy v. United States,*
        850 F.2d 558 (9th Cir. 1988) ..................................................................................... 5

27

    *McMahon v. Presidential Airways, Inc.,*
28      460 F. Supp. 2d 1315 (M.D. Fla. 2006), *aff'd*, 502 F.3d 1331 (11th Cir. 2007) ............... 11, 12

ii

*McMahon v. Presidential Airways, Inc.*,
  502 F.3d 1331 (11th Cir. 2007) ...............................................................................11

*Norwood v. Raytheon Co.*,
  455 F. Supp. 2d 597 (W.D. Tex. 2006) ....................................................................11

*Rappenecker v. United States*,
  509 F. Supp. 1024 (N.D. Cal. 1980)................................................................7, 8, 11

*Safe Air v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ....................................................................................5

*Savage v. Glendale Union High Sch. Dist. No. 205*,
  343 F.3d 1036 (9th Cir. 2003) ....................................................................................5

*Scott v. Pasadena Unified Sch. Dist.*,
  306 F.3d 646 (9th Cir. 2002) ......................................................................................4

*Smith v. Halliburton Co.*,
  No. H-06-0462, 2006 WL 2521326 (S.D. Tex. Aug. 30, 2006) ....................8, 12, 13

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ......................................................................................................4

*Thompson v. McCombe*,
  99 F.3d 352 (9th Cir. 1996) ........................................................................................4

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
  594 F.2d 730 (9th Cir. 1979) ......................................................................................5

*Unites States v. Stanley*,
  483 U.S. 669 (1987) ....................................................................................................7

*Vieth v. Jubelirer*,
  541 U.S. 267 (2004) ..................................................................................................10

*Whitaker v. Kellogg Brown & Root, Inc.*,
  444 F. Supp. 2d 1277 (M.D. Ga. 2006) ................................................................9, 12

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ....................................................................................5

*Zuckerbraun v. Gen. Dynamics Corp.*,
  755 F. Supp. 1134 (D. Conn. 1990) *aff'd*, 935 F.2d 544 (2nd Cir. 1991)............8, 11

## STATUTES

Fed. R. Civ. P. 12 ...............................................................................................................4

U.S. Const. Art. I, § 8 .........................................................................................................7

U.S. Const. Art. II, § 2 ........................................................................................................7

U.S. Const. Art. III, § 2 .......................................................................................................5

1

2

**MISCELLANEOUS**

Dept. of Defense Instruction No. 6055.7 ........................................................................................ 3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO OF PS & AS ISO HONEYWELL'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
sd-403890

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2        Defendant Honeywell International Inc. ("Honeywell") hereby files this Memorandum of

3    Points and Authorities in support of its motion to dismiss plaintiffs' complaint under the political

4    question doctrine.

5    **I.    INTRODUCTION**

6        This case arises from the crash of a United States Army Special Operations Aviation

7    Regiment MH-47E Chinook helicopter, serial number 92-00472 (the "subject helicopter"), on

8    February 18, 2007, during a Special Operations Aviation Regiment ("SOAR") mission in

9    Afghanistan (the "Accident").  The crash took the lives of eight military personal and injured

10   fourteen military personnel.

11       At the time of the Accident, the subject helicopter and its military crew and passengers

12   were involved in a combat mission in an active war zone in Afghanistan.  The political question

13   doctrine prohibits courts from becoming entangled in questions regarding military policy,

14   including the death of military forces in a combat-like situation, as such issues are constitutionally

15   committed to the Executive and Legislative Branches.

16       Plaintiffs' claims cannot be adjudicated without the court determining the cause or causes

17   of the Accident.  Causal analysis in the context of a military combat accident necessarily involves

18   examination of military decision-making in the planning, equipping, and execution of the

19   mission.  Indeed, defendants have asserted various defenses of superceding and intervening

20   cause, fault apportionment, and product alteration/misuse that will require the Court to evaluate

21   modifications of the helicopter by the U.S. Army's Special Operations Aviation Regiment, the

22   decision to fly the mission at a dangerously low altitude in formation and inclement weather over

23   mountainous terrain, the maintenance of the helicopter by the U.S. Army, the U.S. Army's

24   fueling practices, and the U.S. Army flight crew's training, preparation, performance, and

25   qualifications.  This Court lacks subject matter jurisdiction to hear this case as the plaintiffs'

26   claims arise from military operations, which are political matters within the dominion of the

27   Executive and Legislative Branches.  This case should be dismissed as nonjusticiable under Rule

28   12(b)(1) of the Federal Rules of Civil Procedure.

## II.   STATEMENT OF FACTS

In the early morning hours of February 18, 2007, the subject helicopter crashed in the Shahjoi District of the Zabul Province in Afghanistan while flying a mission in support of Operation Enduring Freedom.  (Compl. at ¶ 1; Declaration of Joanna E. Herman in Support of Motion to Dismiss ("Herman Decl.") at ¶¶ 2, 5, Exs. 1, 4.)[1]  At the time of the Accident, the Zabul province was considered a "hotbed for militant supporters of the former Taliban regime who have stepped up attacks over the past year."  (*Id*. at ¶ 6, Ex. 5.)  As the 160th Special Operations Aviation Regiment (Airborne) stated "[e]very night, the uniquely skilled and highly trained Night Stalker aviators and crew members perform the most challenging and dangerous missions in support of our Special Operations brothers."  (*Id*. at ¶ 5, Ex. 4.)

Operation Enduring Freedom involves troops from over 20 nations, including approximately 19,000 United States forces.  (*Id*. at ¶ 15, Ex. 14.)  "U.S. and coalition forces continue to engage Taliban remnants and other extremists and coordinate with the Pakistani military to bolster security along the Afghan-Pakistan border."  (*Id*.)

The subject helicopter "was part of a multiaircraft flight carrying a quick-reaction force" in support of a Joint Special Operations Command task force mission.  (*Id*. at ¶¶ 3, 6, Exs. 2, 5.)  The subject helicopter was meant to provide CSAR (combat, search and rescue) coverage to several ongoing operations at the time of the Accident.  (*Id*. at ¶ 4, Ex. 3.)  The mission was cancelled and the quick-reaction force was returning to Bagram Air Base from Kandahar.  (*Id*. at ¶¶ 3, 6, Exs. 2, 5.)

The subject helicopter was operated by the U.S. Army 160th Special Operations Aviation Regiment.  (Declaration of Marlin Kruse ("Kruse Decl.") at ¶ 4.)  The unit, nicknamed the "Night Stalkers," specializes in low-level night flying in combat and rescue missions, mostly in support of Army special forces troops.  (Herman Decl. at ¶ 8, Ex. 7; *see also* Kruse Decl. at ¶ 5.)  "The

---

[1] "Operation Enduring Freedom (OEF) is a multinational coalition military operation initiated in October 2001 to counter terrorism and bring security to Afghanistan in collaboration with Afghan forces.  OEF operations led to the collapse of the Taliban regime and helped bring a measure of security and stability to Afghanistan for the first time in a generation."  (*Id*. at ¶ 15, Ex. 14.)

MEMO OF PS & AS ISO HONEYWELL'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
sd-403890

1    160th, and the Rangers, support Joint Special Operations Command, (JSOC) which is in charge of

2    the most sensitive special operations missions." (Herman Decl. at ¶ 6, Ex. 5.)

3         Immediately after the Accident, a combat search and rescue operation was launched to

4    secure the Accident site and recover the passengers. (*Id.* at ¶¶ 6, 9, Exs. 5, 8.) After the subject

5    helicopter crashed, it was destroyed by U.S. forces to ensure that enemy combatants were unable

6    to retrieve any sensitive military data and to prevent possible exploitation of the site by terrorist

7    groups. (Herman Decl. at ¶ 7, Ex. 6.)

8         The Accident took the lives of eight military personnel who died in the line of duty. (*See,*

9    *e.g., id.* at ¶10, Ex. 9.) Four of the decedents families have brought claims in this action. Scott

10   Duffman was a member of the U.S. Air Force Special Operations, assigned to the 24th Special

11   Tactics Squadron. The Department of the Air Force's Report of Casualty states that Scott

12   Duffman "died in a combat zone or from a terroristic or military action." (*Id.* at ¶ 11, Ex. 10.)

13   Kristofer Thomas was a member of the 75th Ranger Regiment and was serving as a member of a

14   Site Security Team at the time of the Accident. (*Id.* at ¶ 12, Ex. 11.) Ryan Garbs was a grenadier

15   and riflemen with the 75th Ranger Regiment at the time of the Accident. (*Id.* at ¶ 13, Ex. 12.)

16   Travis Vaughn was a MH-47E Crew Chief and a member of the 160th U.S. Army Special

17   Operations Aviation Regiment "Night Stalkers." (*Id.* at ¶ 14, Ex. 13.)

18        As a result of the crash, fourteen military personnel were injured – five have brought

19   claims in this action, as well as a claim by the wife of one of the injured military personnel. The

20   injured include a crewman from the 160th SOAR, Air Force special operations combat

21   controllers, and Army Rangers. (*See id.* at ¶ 6, Ex. 5.)

22        Following the Accident, the U.S. Army began an investigation to determine its cause.

23   (Kruse Decl. at ¶ 6.) The military is required to "[i]nvestigate, report, and keep related records on

24   accidental death, injury, occupational illness, and property damage for" all accidents resulting in

25   injury to military personnel or property, as well as for accidents resulting in non-military property

26   damage or injury if caused by military operations. Dept. of Defense Instruction No. 6055.7 at

27   §§ 4, E2.1.7. Investigation related activities have occurred at the following U.S. Army

28   installations: Fort Campbell, Kentucky (home of the 160th), Fort Rucker, Alabama (location of

3

1   the U.S. Army Combat Readiness Center, the U.S. Army's principal aviation accident

2   investigating authority), Redstone, Alabama, and the Corpus Christi Army Depot, Texas.  (Kruse

3   Decl. at ¶ 6.)

4        The U.S. Army recovered the engines, engine control system components, and other

5   component parts from the subject helicopter.  These components were transported to the United

6   States from Afghanistan under the control of the 160th.  (*Id.* at ¶ 7.)  The recovered engines are in

7   the custody of the 160th located in Fort Campbell, Kentucky.  (*Id.* at ¶¶ 7-8.)  The U.S. Army's

8   investigation into the cause of the Accident is still continuing and no final investigation report has

9   been issued to date.

10       Plaintiffs sued Honeywell, The Boeing Company, Goodrich Corporation, BF Goodrich

11  Aerospace, Chandler Evans Control Systems and General Electric[2] seeking damages for wrongful

12  death, bodily injuries and loss of consortium based on theories of negligence, strict product

13  liability, and breach of express and implied warranty.

14       **III.    STANDARD FOR MOTION TO DISMISS**

15       Federal courts generally determine issues of subject matter jurisdiction before considering

16  a case on its merits.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-96 (1998); *Scott v.*

17  *Pasadena Unified Sch. Dist.*, 306 F.3d 646, 653-54 (9th Cir. 2002).  A Rule 12(b)(1) motion

18  challenges the district court's subject matter jurisdiction.[3]  *Corrie v. Caterpillar, Inc.*, 503 F.3d

19  974, 982 (9th Cir. 2007).  The Ninth Circuit has held that the political question doctrine is a

20  jurisdictional limitation imposed on the Courts by the Constitution.  *Id.* at 981 (motion must be

21  decided pursuant to a Rule 12(b)(1) motion).  The Court concluded "that if a case presents a

22  political question, we lack subject matter jurisdiction to decide that question."  *Id.* at 982.

23       The burden of proof on a rule 12(b)(1) motion is on the party averring jurisdiction, in this

24  case the plaintiffs.  *See Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996); *see also*

25  _____

26       [2] General Electric has been voluntarily dismissed by Plaintiffs.  (Docket No. 33.)

27       [3] Lack of subject matter jurisdiction cannot be waived by the parties "[i]f the court
    determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."
    Fed. R. Civ. P. 12(h)(3).

28

MEMO OF PS & AS ISO HONEYWELL'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
sd-403890

1   *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994) (in effect the court

2   presumes lack of jurisdiction until the plaintiff proves otherwise).  A Rule 12(b)(1) motion has

3   two possible forms: (1) a "facial attack" on the complaint that requires the court to assess whether

4   the plaintiff has alleged a basis for subject matter jurisdiction, or (2) a "factual attack," which

5   challenges the truth of the allegation of subject matter jurisdiction.  *Safe Air v. Meyer*, 373 F.3d

6   1035, 1039 (9th Cir. 2004).

7        Under a "factual attack," the court "need not presume the truthfulness of the plaintiffs'

8   allegations," *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000), and may resolve factual disputes.

9   *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

10  Moreover, "[i]n resolving a factual attack on jurisdiction, the district court may review evidence

11  beyond the complaint."  *Safe Air*, 373 F.3d at 1039.  In fact, the court "may review *any*

12  evidence . . . to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v.*

13  *United States*, 850 F.2d 558, 560 (9th Cir. 1988) (emphasis added).  This includes testimony,

14  affidavits, matters of public record, and matters subject to judicial notice.  *See White*, 227 F.3d at

15  1242; *McCarthy*, 850 F.2d at 560; *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th

16  Cir. 1986), *abrogated on other grounds*, *Astoria Fed. Savs. & Loan Ass'n v. Solimino*, 501 U.S.

17  104 (1991) ("On a motion to dismiss a court may take judicial notice of facts outside the

18  pleadings.").  The Ninth Circuit has specifically held that, when resolving a motion to dismiss

19  based on the political question doctrine, matters outside the pleadings, including declarations and

20  documents attached to declarations, may be considered.  *See Corrie*, 503 F.3d at 982.

21       "Once the moving party has . . . present[ed] affidavits or other evidence properly brought

22  before the court, the party opposing the motion must furnish affidavits or other evidence

23  necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage v. Glendale*

24  *Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

25  **IV.    THIS COURT MUST DISMISS PLAINTIFFS' COMPLAINT AS
        NONJUSTICIABLE UNDER THE POLITICAL QUESTION DOCTRINE**

26

27  The United States Constitution restricts courts' jurisdiction to justiciable cases or

28  controversies.  U.S. Const. Art. III, § 2, cl. 1 (the Constitution limits the federal judicial power to

---

5

designated "cases" and "controversies"); *see also Baker v. Carr*, 369 U.S. 186, 199 (1962). The federal courts are limited to adjudicating questions presented in an adversarial context and are not allowed to intrude into areas committed to other branches of government. *Flast v. Cohen*, 392 U.S. 83, 94-95 (1968). "Justiciability is the term of art employed to give expression to this dual limitation …" *Id.* at 95.

The political question doctrine is one such area in which the U.S. Supreme Court has held that disputes or cases are nonjusticiable. The doctrine arises from two independent constitutional principles: (1) the separation of powers of the three independent branches of government and (2) the limits of judicial capabilities and resources. *See Banner v. United States*, 303 F. Supp. 2d 1, 9 (D.D.C. 2004), *aff'd*, 428 F.3d 303 (D.C. Cir. 2005). The political question doctrine prohibits courts from interfering in political matters that are within the dominion of another branch of government. *Id.*; *see also Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986); *Farmer v. Rountree*, 252 F.2d 490, 491 (6th Cir. 1958). "The nonjusticiability of a political question is primarily a function of the separation of powers." *Baker*, 369 U.S. at 210; *see Corrie*, 503 F.3d at 980. The Supreme Court in *Baker* laid out six independent tests for determining whether courts should defer to the political branches on an issue, thereby dismissing a case as a nonjusticiable political question:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due co-ordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker*, 369 U.S. at 217; *see also Corrie*, 503 F.3d at 980. Courts have held that the "presence of *any one of these factors* is sufficient to render an issue nonjusticiable." *Banner*, 303 F. Supp. 2d at 9 n.9 (emphasis added). As explained below, the facts of this case dictate that plaintiffs' claims should be dismissed under *each* of the six independent *Baker* tests.

MEMO OF PS & AS ISO HONEYWELL'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
sd-403890

1    Moreover, the district courts of California have previously dealt with similar claims

2  involving the death or injury of individuals during military combat operations implicate the

3  political question doctrine.  *See Rappenecker v. United States*, 509 F. Supp. 1024, 1030 (N.D.

4  Cal. 1980) (claims based on the conduct of military operations deemed nonjusticiable political

5  question); *see also Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486, 1497 (C.D. Cal. 1993)

6  (death of armed forces in a combat-like situation).  The facts of this case dictate that plaintiffs'

7  complaint be dismissed pursuant to the political question doctrine.

8          **A.     Plaintiffs' Complaint Must Be Dismissed Because The Claims Arise
                 Out Of Military Operations Which Are Constitutionally Committed**
9                **To The Executive And Legislative Branches**

10    The first independent test under *Baker* upon which a case may be identified as

11  nonjusticiable pursuant to the political question doctrine is "a textually demonstrable

12  constitutional commitment of the issue to a coordinate political department."  *Baker*, 369 U.S. at

13  217; *see also Fisher v. Halliburton, Inc.,* 454 F. Supp. 2d 637, 640 (S.D. Tex. 2006) (first factor

14  considered to be the most important of the factors).

15    This case is nonjusticiable under the political question doctrine as it involves claims for

16  wrongful death and injuries resulting from the crash of a U.S. Army Special Operations helicopter

17  during a Special Operations mission in Afghanistan.  *See Rappenecker,* 509 F. Supp. at 1030 (the

18  decision to employ military force is nonjusticiable as it is committed to the Executive Branch);

19  *see also Bentzlin,* 833 F. Supp. at 1497 (death of armed forces in a combat-like situation).  Here,

20  the control of the military is textually committed to the executive and legislative branches by the

21  Constitution and cannot be intruded upon by the judiciary.  The Constitution clearly confers

22  authority over the military to the executive and legislative branches of government.  U.S. Const.

23  Art. I, § 8, cls. 11-16 (granting Congress the power to declare war and provide for, organize, arm,

24  maintain, and govern the military); U.S. Const. Art. II, § 2 (providing that the President is the

25  Commander-In-Chief of the armed forces); *see also Unites States v. Stanley*, 483 U.S. 669, 682

26  (1987) (Constitution granted authority over the Army, Navy, and militia to the political branches).

27    When foreign policy and military affairs are involved in cases, the judiciary has a history

28  of abstention because the political question doctrine mandates that the issues are nonjusticiable.

7

1    *See Aktepe v. United States*, 105 F.3d 1400, 1403 (11th Cir. 1997) ("matters intimately related to

2    foreign policy and national security are rarely proper subjects for judicial intervention") (*quoting*

3    *Haig v. Agee*, 453 U.S. 280, 292 (1981)).

4        The training, equipping, and control of military forces are of the types of governmental

5    action intended by the Constitution to be left to the political branches.  *See Gilligan v. Morgan*,

6    413 U.S. 1, 10 (1973).  Training procedures implicate military decision-making to the point of

7    preventing courts from hearing these cases.  *Aktepe,* 105 F.3d at 1404.  In *Aktepe*, the Eleventh

8    Circuit dismissed a case involving political question related to the accidental firing of an armed

9    missile during a simulated event.  *Id.*  The court held that "the Constitution reserves to the

10    legislative and executive branches responsibility for developing military training procedures that

11    will ensure the combat effectiveness of our fighting forces."  *Id.* at 1403.  As a result, the political

12    question doctrine dictated that the Eleventh Circuit not assess the plaintiffs' claims that failure of

13    military communication caused the incident.

14        Military strategy decisions are also considered to be nonjusticiable because courts cannot

15    resolve issues of causation without inquiring into all other causes, including those dedicated to the

16    executive and legislative branches.  *Rappenecker*, 509 F. Supp. at 1030 ("The textual

17    commitment to the President as commander in chief of authority for military decisions entails that

18    his decisions may be implemented without judicial scrutiny"); *Bentzlin*, 833 F. Supp. at 1497-

19    1498 (court held case to be nonjusticiable because deaths occurred during the Persian Gulf War

20    during combat and the conduct of war is committed to the Executive and Legislative Branches);

21    *Zuckerbraun v. Gen. Dynamics Corp.*, 755 F. Supp. 1134, 1142 (D. Conn. 1990), *aff'd*, 935 F.2d

22    544 (2nd Cir. 1991) (suit dismissed based on political question doctrine because the complaint

23    posed political questions regarding the rules of engagement and the standing orders surrounding a

24    military incident); *Fisher*, 454 F. Supp. 2d at 641 ("the court finds that it cannot try a case set on a

25    battlefield during war-time without an impermissible intrusion into powers expressly granted to

26    the Executive by the Constitution");  *Smith v. Halliburton Co.*, No. H-06-0462, 2006 WL

27    2521326, at **6-7 (S.D. Tex. Aug. 30, 2006) (dismissing complaint based on the first factor of

28    the *Baker* case, among others, and holding that the issue of control of access to a military base is

1  clearly within the Constitutional powers granted to the President and Congress); *Whitaker v.*

2  *Kellogg Brown & Root, Inc.,* 444 F. Supp. 2d 1277, 1281 (M.D. Ga. 2006) (case presents a

3  nonjusticiable political question when soldier was negligently killed in a car accident by a

4  government contractor in Iraq).  Thus, where courts are asked to analyze and assess the decisions

5  of the military, the political question doctrine is implicated.

6          Here, the political question doctrine is implicated due to the very facts underlying

7  plaintiffs' claims—the injuries and deaths of military personnel arising out of the crash of a

8  United States Army Special Operations MH-47E Chinook helicopter during a Special Operations

9  Aviation Regiment combat mission in Afghanistan in support of Operation Enduring Freedom.

10  Plaintiffs' claims and the Accident itself are political questions dedicated to the executive branch

11  because the subject helicopter was operated by members of the United States Army, pursuant to a

12  mission in support of Operation Enduring Freedom.  (Herman Decl. at ¶ 2, Ex. 1.)

13          The subject helicopter was being operated in an active war zone at the time of the

14  Accident.  (*See id*. at ¶ 3, Ex. 2.)[4]  The Accident occurred in the Zabul Province in Afghanistan,

15  which was considered a "hotbed for militant supporters of the former Taliban regime who had

16  stepped up attacks over the past year."  (Compl. at ¶ 1; Herman Decl. at ¶¶ 2, 6, Exs. 1, 5.)  There

17  can be no dispute that the Accident occurred during a potentially dangerous combat mission.  The

18  military regiment operating the subject helicopter at the time of the Accident, the 160th Special

19  Operations Aviation Regiment, stated "[e]very night, the uniquely skilled and highly trained

20  Night Stalker aviators and crew members perform the most challenging and dangerous missions

21  in support of our Special Operations brothers."  (Herman Decl. at ¶ 5, Ex. 4.)

22          The subject helicopter was supposed to participate in a combat, search and rescue mission

23  when the mission was cancelled; shortly afterwards the Accident occurred.  (*Id*. at ¶¶ 4, 3, Exs. 3,

24  2.)  In order for this Court to hear plaintiffs' claims it will have to examine the orders of the

25  military troops aboard the subject helicopter, to determine the nature of the combat activity, to

26  _____

27  [4] Thousands of U.S. forces are deployed in Southeastern Afghanistan where they have a base under NATO control.  (*Id*. at ¶ 3, Ex. 2.)  The Zabul province is described as a "hotbed for militant supporters of the former Taliban regime."  *Id.*

28

9

consider the day-to-day procedures, training, and operations involved in a combat search and rescue mission and to analyze whether appropriate tactical decisions were made during this mission. These tactical decisions and evaluations are legislative and executive branch decisions and are nonjusticiable issues that cannot be decided by this Court. *See Bentzlin*, 833 F. Supp. at 1497 (precedent establishes that orders received by pilots and ground troops during active combat are considered political questions, and are thus nonjusticiable); *Aktepe*, 105 F.3d at 1403 (delicacy of international conflicts are entrusted, by the Constitution, to the political branches of government); *see also Corrie*, 503 F.3d at 983 (the decision to provide military aid to a foreign country implicates the political question doctrine).

This case would also require an evaluation of Army (and particularly the Special Operations Unit) flight training, emergency flight procedures, and proper conduct of a military flight in combat to determine whether proper procedures were followed during this flight. Procedures involving military training, however, have been found to be nonjusticiable. *Aktepe*, 105 F.3d at 1403. Plaintiffs' complaint thus clearly implicates the first *Baker* test: a constitutional commitment to a coordinated political department in the military and governance of the military. The oversight of the military in this case (and in general) is specifically granted to the executive and legislative branches by the Constitution and cannot be intruded on by the judiciary. Because this case meets the first independent *Baker* test, dismissal of plaintiffs' complaint is required pursuant to Rule 12(b)(1). *See id.* at 1402-1403.

### B.     A Lack Of Judicial Standards Requires Plaintiffs' Complaint Be Dismissed

The second independent test of *Baker* is whether judicially discoverable and manageable standards exist for resolving the questions raised by the suit. *See Baker*, 369 U.S. at 217; *Aktepe*, 105 F.3d at 1404. In this case, no judicial standards exist for resolving plaintiffs' claims. "One of the most obvious limitations [on a court] . . . is that judicial action must be governed by *standard*, by *rule*." *Vieth v. Jubelirer*, 541 U.S. 267, 278 (2004) (emphasis in original). Courts must determine whether they have the legal tools to make rulings in certain arenas. *See Alperin v. Vatican Bank*, 410 F.3d 532, 552 (9th Cir. 2005). Such standards are particularly difficult where,

10

1   as here, courts must examine Army decisions, an area "not subject to judicial second-guessing."

2   *See In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 204, 206 (2d. Cir. 1987).  In general, when

3   dealing with military issues, the Supreme Court noted "it is difficult to conceive of an area of

4   governmental activity in which the courts have less competence."  *Gilligan*, 413 U.S. at 10.

5        Courts recognize that military decisions result in a complex and subtle balancing of many

6   technical military considerations, including the trade-off between safety and combat

7   effectiveness.  *Aktepe*, 105 F.3d at 1404.  Although courts may hear some lawsuits involving the

8   military, complaints by service members (as opposed to civilians) involving decisions made in the

9   heat of battle are generally considered to be judicially unmanageable, as courts lack standards

10  "with which to assess whether reasonable care was taken to achieve military objectives while

11  minimizing injury and loss of life."  *Id.*; *see also Zuckerbraun*, 755 F. Supp. at 1142 (courts are

12  considered ill-equipped to evaluate the risks taken to achieve tactical objectives against the

13  exposure of military personnel to danger).  "[C]ourts lack standards with which to judge whether

14  reasonable care was taken to achieve tactical objectives while minimizing injury and loss of life."

15  *Rappenecker*, 509 F. Supp. at 1030; *McMahon v. Presidential Airways, Inc.*, 460 F. Supp. 2d

16  1315, 1322 (M.D. Fla. 2006), *aff'd*, 502 F.3d 1331 (11th Cir. 2007) ("Courts have no guidepost

17  with which to evaluate military strategy and they cannot apply traditional standards of care to

18  war").  Most recently, the Eleventh Circuit in the *McMahon v. Presidential Airways, Inc.* case

19  held that where cases involve "a sui generis situation such as military combat or training, …

20  courts are incapable of developing judicially manageable standards."  *See McMahon v.*

21  *Presidential Airways, Inc.*, 502 F.3d 1331, 1364 (11th Cir. 2007).

22       When evaluating a claim's justiciability, the key is whether the product's performance can

23  be assessed without questioning the wisdom of military operations and decision making.  *See*

24  *McMahon*, 460 F. Supp. at 1324.  For example, if a plaintiff's claim requires analysis of decisions

25  made by armed services personnel during military operations, then the political question doctrine

26  is implicated and the case should be dismissed.  *Rappenecker*, 509 F. Supp. at 1030; *McMahon*,

27  460 F. Supp. at 1322; *see Norwood v. Raytheon Co.*, 455 F. Supp. 2d 597, 601 (W.D. Tex. 2006)

28  (inquiry made into rules of engagement during battle implicated the political question doctrine);

MEMO OF PS & AS ISO HONEYWELL'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
sd-403890

1   *Smith*, 2006 WL 2521326, at *6 (case was dismissed as nonjusticiable under the political question

2   doctrine when court determined that courts lack expertise to determine whether reasonable care

3   was taken in military context); *Whitaker*, 444 F. Supp. 2d at 1282.

4          Plaintiffs' complaint involves allegations regarding American soldiers killed or injured

5   during military operations.  The complaint thus raises political questions because analyzing and

6   understanding the causes of this Accident would require an examination of the Army officers'

7   actions and reactions taken during the mission in an active combat zone, as well as military

8   decisions in general.  Whatever military exigencies and requirements intruded into the conduct of

9   this flight are outside of the Court's ability to evaluate.  *See DaCosta v. Laird*, 471 F.2d 1146,

10  1155 (2nd Cir. 1973) (courts that are "deficient in military knowledge" and lacking information

11  upon which to assess military operations are not able to assess the nature of military operations

12  from thousands of miles from the field of action).  For a court to be asked to determine whether

13  the 160th Night Stalkers followed appropriate military commands is beyond judicial resources

14  and the bounds of judicial knowledge and expertise; nor is this Court in a position to decide the

15  correct procedures for combat search and rescue missions.  The Court lacks the ability necessary

16  to decide whether the Army should have ordered the mission that the subject helicopter was

17  involved in at the time of the Accident.  Courts cannot and should not be asked to apply the

18  reasonable standard of care to actions taken by military personnel in combat zones, as they are

19  without guidelines to evaluate military strategy and cannot apply traditional standards of care to

20  war.  *McMahon*, 460 F. Supp. 2d at 1322.  Courts are thus unable to balance several possible

21  causes of the crash of a combat helicopter and therefore cannot possibly do justice to any of the

22  defendants before them.  Therefore, plaintiffs' claims implicate the political question doctrine and

23  their complaint must be dismissed.

24          **C.      It Is Impossible To Decide This Case Without An Initial Policy
                      Determination of Non-Judicial Discretion**

25         The third independent test under *Baker*, the impossibility of deciding the case without an

26  initial policy determination of a clear non-judicial discretion, also applies in this case.  *See Baker*,

27  369 U.S. at 217.  Courts have held that this test looks at whether resolving the case requires courts

28

12

1    to make policy decisions generally reserved for military discretion. *Aktepe*, 105 F.3d at 1404.

2    This ground for dismissal recognizes that there are certain responsibilities of the military that

3    cannot be transferred to the judiciary including the merits of "methods of training, equipping, and

4    controlling military forces with respect to their duties under the Constitution." *Id.* It is

5    inappropriate, under the political question doctrine, for courts to undertake analysis of military

6    decisions. *Id.*; *see also Fisher*, 454 F. Supp. 2d at 644 (case dismissed for nonjusticiable issue

7    under political question doctrine when entire Executive Branch policies would potentially be

8    under scrutiny); *Smith*, 2006 WL 2521326, at * 6 (case was dismissed because court would have

9    had to inappropriately substitute its judgment for that of the military).

10        Here, the Court would need to determine: (1) how the special operations helicopter was

11    modified and outfitted by the Army after its purchase from Boeing, (2) the standard operating

12    procedures for these helicopters by the 160th SOAR including low level flying in mountainous

13    terrain with NVDs (Night Vision Devices), (3) the wisdom of a three helicopter flight formation

14    in the dark mountains of Afghanistan, (4) the Army's operational decisions on operation of the

15    accident helicopter in flight regimes that left little room for error or response to in-flight

16    emergencies, (5) the wisdom of maintenance decisions made by the Army to keep the accident

17    helicopter in an in-flight status even if it increased the risk of an aborted mission, (6) whether the

18    military pilots were sufficiently trained, (7) whether the military sufficiently briefed the pilots for

19    their mission, (8) whether the military crew was adequately rested prior to flight, among other

20    factors, and (9) the appropriateness and the decision making process behind the Army's

21    destruction of the subject aircraft after the Accident. These all involve policy determinations

22    made by the military during a time of war. This is an area clearly not appropriate for judicial

23    determination, when the military is capable of making its own policy determinations, including

24    balancing competing factors outside of normal experience, that involve non-judicial discretion.

25          **D.**     **Plaintiffs' Complaint Should Also Be Dismissed Pursuant To The Remaining Independent Tests Under *Baker***

26

27        While only one of the independent *Baker* tests is required to establish that there is a

28    nonjusticiable political question, all six tests are met in this case. *See Banner*, 303 F. Supp. 2d at

MEMO OF PS & AS ISO HONEYWELL'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
sd-403890

1    9 n.9; *see also Corrie*, 503 F.3d at 980.  The fourth *Baker* test (impossibility of a court

2    undertaking independent resolution without expressing lack of respect to a coordinate branch) is

3    implicated as the judiciary cannot become enmeshed in second guessing military decisions made

4    in the heat of war.  *See Baker*, 369 U.S. at 217.  The fifth test (an unusual need for unquestioning

5    adherence to a political decision) is also evident as the judiciary should not question combat

6    decisions made by the military.  *See id.*  Finally, the sixth test (the potentiality of political

7    embarrassment) may be implicated if the judiciary begins to question the decisions of military

8    strategists and decision makers and opens each combat death to the scrutiny of a federal court in a

9    lawsuit by survivors.  *See id.*  Thus, these additional tests support a finding that plaintiffs' claims

10   are nonjusticiable under the political question doctrine and should be dismissed pursuant to Rule

11   12(b)(1).

12   **V.    CONCLUSION**

13   For the foregoing reasons, Honeywell respectfully requests that plaintiffs' complaint be

14   dismissed with prejudice pursuant to Rule 12(b)(1).

16
17   Dated: April 29, 2008                    MORRISON & FOERSTER LLP

18
19                                            By:  /s/ James W. Huston
                                                  James W. Huston

20
21                                            Attorneys for Defendant
                                              HONEYWELL INTERNATIONAL INC.

22
23
24
25
26
27
28

MEMO OF PS & AS ISO HONEYWELL'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
sd-403890

1

**CERTIFICATE OF SERVICE**

2        I, James W. Huston, hereby certify that on April 29, 2008, I caused to be electronically

3  filed a true and correct copy of the attached **DEFENDANT HONEYWELL**

4  **INTERNATIONAL INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**

5  **PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN**

6  **SUPPORT THEREOF** with the Clerk of the Court using CM/ECF, which will send notification

7  that such filing is available for viewing and downloading to the following counsel of record for

8  Plaintiffs:

9

| | |
|---|---|
| Ronald A. McIntire, Esq.<br>Chung H. Han, Esq.<br>PERKINS COIE LLP<br>1620 26th Street, Sixth Floor, South Tower<br>Santa Monica, CA  90404-4013 | Telephone:  310.788.9900<br>Facsimile:  310.788.3399<br><br>*Attorneys for Defendant The Boeing Company* |
| Thomas J. Brandi, Esq.<br>Daniel Del'Osso, Esq.<br>Brian J. Malloy, Esq.<br>THE BRANDI LAW FIRM<br>354 Pine Street, Third Floor<br>San Francisco, CA  94104 | Telephone:  415.989.1800<br>Facsimile:  415.989.1801<br><br>*Attorneys for Plaintiffs* |
| James R. Donahue, Esq.<br>CAULFIELD DAVIES & DONAHUE<br>1 Natoma Street<br>Folsom, CA  95630-2637 | Telephone:  916.817.2900<br>Facsimile:  916.817.2644<br><br>*Attorneys for Plaintiffs* |
| Garth Aubert, Esq.<br>Mark Irvine, Esq.<br>MENDES & MOUNT, LLP<br>445 South Figueroa Street, 38th Floor<br>Los Angeles, CA  90071 | Telephone:  213.955.7780<br>Facsimile:  213.955.7725<br><br>*Attorneys for Defendant Goodrich Corporation* |

I also served the following party by overnight mail [Fed. Rule Civ. Proc. rule 5(b)] by placing a true copy thereof enclosed in a sealed envelope with delivery fees provided for, addressed as follows, for collection by UPS, at 12531 High Bluff Drive, Suite 100, San Diego, California, 92130-2040 in accordance with Morrison & Foerster LLP's ordinary business practices.

I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for overnight delivery and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be deposited in a box or other facility regularly maintained by UPS or delivered to an authorized courier or driver authorized by UPS to receive documents on the same date that it (they) is are placed at Morrison & Foerster LLP for collection.

CERTIFICATE OF SERVICE                    1
sd-402041

| | |
|---|---|
| Steve Bell, Esq.<br>Beth M. Strosky, Esq.<br>PERKINS COIE LLP<br>1201 Third Avenue, Suite 4800<br>Seattle, WA 98101 | Telephone: 206.359.8000<br>Facsimile: 206.359.9000<br>**Attorneys for Defendant The Boeing Company** |
| Richard Chon, Esq.<br>Perkins Coie LLP<br>1620 26th Street, Sixth Floor<br>South Tower<br>Santa Monica, CA 90404-4013 | Telephone: 310.788.9900<br>Facsimile: 310.788.3399<br>**Attorneys for Defendant The Boeing Company** |
| Casey A. Kaufman, Esq.<br>The Brandi Law Firm<br>354 Pine Street, 3rd Floor<br>San Francisco, CA 94104 | Telephone: 415.989.1800<br>Facsimile: 415.989.1801<br>**Attorneys for Plaintiffs** |

Executed at San Diego, California, on this 29th day of April, 2008.

MORRISON & FOERSTER LLP

By:   /s/  James W. Huston
James W. Huston
jhuston@mofo.com
Morrison & Foerster LLP
12531 High Bluff Drive, Suite 100
San Diego, California 92130-2040
Telephone:    858.720 5100
Facsimile:    858.720.5188
Attorneys for Defendant

Attorneys for Defendant
HONEYWELL INTERNATIONAL INC.