THE BRANDI LAW FIRM
THOMAS J. BRANDI #53208
DANIEL DELL'OSSO #118203
BRIAN J. MALLOY #234882
354 Pine Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 989-1800
Facsimile: (415) 989-1801

JAMES R. DONAHUE, #105106
CAULFIELD DAVIES & DONAHUE
80 Iron Point Circle, #105
Folsom, CA 95630
Telephone: (916) 817-2900
Facsimile: (916) 817-2644

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DEBORAH GETZ, et al. | NO. CV 07 6396 CW |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| THE BOEING COMPANY, et al. | |
| Defendants. | |
| | Date: June 19, 2008 |
| | Time: 2:00 p.m. |
| | Courtroom: 2 |
| | Judge: Honorable Claudia Wilken |

PLAINTIFFS' OPPOSITION TO DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT- NO. CV 07 6396 CW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 3

LEGAL ARGUMENT ......................................................................................... 4

   I.      STANDARD OF REVIEW .................................................................... 4

   II.     PLAINTIFFS' PRODUCT DEFECT CLAIMS AGAINST
         PRIVATE ENTITIES ARE JUSTICIABLE AND THEREFORE
         DEFENDANT'S MOTION SHOULD BE DENIED .......................... 6

         A.    The Resolution of Plaintiffs' Product Defect Claims
             Against Private Entities Is Not Textually Committed
             to the Political Branches .......................................................... 7

               i.     Plaintiffs' Tort Claims Challenge the Design
                    and Manufacture of the Subject Helicopter
                    and Its Component Parts and Not Any Military
                    Operational Decision ...................................................... 7

               ii.    Plaintiffs Seek Monetary Damages Against Private
                    Parties and Not Injunctive Relief Against the
                    United States Military ................................................... 14

         B.    Tort Law Provides Clear Judicial Standards Upon
              Which This Court Can Rely ................................................... 15

         C.    Plaintiffs' Product Defect Claims Against Private
              Entities Do Not Involve An Initial Policy Determination
             of Non-Judicial Discretion .................................................... 16

         D.    The Three Remaining *Baker* Factors Are Inapplicable
              to Plaintiffs' Claims ............................................................. 16

         E.    Honeywell Seeks a Drastic Extension of the Political
              Question Doctrine ................................................................. 18

   III.    IT WOULD BE PREMATURE TO DISMISS PLAINTIFFS'
         COMPLAINT WITHOUT ALLOWING ANY DISCOVERY ........ 23

ii

1

IV.    MOST OF THE EVIDENCE SUBMITTED BY HONEYWELL
IS INADMISSIBLE    24

2

CONCLUSION    25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT- NO. CV 07 6396 CW

1

## **TABLE OF AUTHORITIES**

2

**CASES**

3

Aktepe v. United States
4
  105 F.3d 1400 (11th Cir. 1997)           19

5

Arakaki v. Lingle
6
  477 F.3d 1048 (9th Cir. 2007)          7, 14

7

Autery v. U.S.
8
  424 F.3d 944 (9th Cir. 2005)            5

9

Baker v. Carr
  369 U.S. 186 (1962)             *passim*
10

Balint v. Carson City
11
  180 F.3d 1047 (9th Cir. 1999)           5

12

Barasich v. Columbia Gulf Transmission Co.
13
  467 F.Supp.2d 676 (E.D.La. 2006)         16

14

Bentzlin v. Hughes Aircraft Co.
15
  833 F.Supp 1486 (C.D.Cal. 1993)         20, 21

16

Carmichael v. Kellogg, Brown & Root Services, Inc.
17
  450 F.Supp.2d 1373 (N.D.Ga. 2006)      12, 20, 21

18

Corrie v. Caterpillar, Inc.
19
  503 F.3d 974 (9th Cir. 2007)           22

20

Crockett v. Reagan
  720 F.2d 1355 (D.C.Cir. 1983)           15
21

DaCosta v. Laird
22
  471 F.2d 1146 (2nd Cir. 1973)           15

23

Doe v. Exxon Mobil Corp.
24
  473 F.3d 345 (D.C.Cir. 2007)           18

25

E.E.O.C. v. Peabody Western Coal Co.
26
  400 F.3d 774 (9th Cir. 2005)           7

27

Edmond v. United States Postal Serv. Gen. Counsel
  949 F.2d 415 (D.C.Cir. 1992)           23
28

Fisher v. Halliburton
    454 F.Supp.2d 637 (S.D.Tex. 2006) .................................................. 1

Gilligan v. Morgan
    413 U.S. 1 (1973) .......................................................... 8, 21, 22

Gonzalez-Vera v. Kissinger
    449 F.3d 1260 (D.C. Cir. 2006) ......................................................... 8

Gordon v. State of Texas
    153 F.3d 190 (5th Cir. 1998) ..................................................... 14, 16

Greenham Women Against Cruise Missiles v. Reagan
    591 F.Supp. 1332 (S.D.N.Y. 1984) ................................................... 15

Hwang Geum Joo v. Japan
    413 F.3d 45 (D.C. Cir. 2005) ......................................................... 8

Ibrahim v. Titan Corp.
    391 F.Supp.2d 10 (D.D.C. 2005) ..................................................... 13

In re African-American Slave Descendants Litig.
    375 F.Supp.2d 721 (N.D.Ill. 2005) ................................................. 17

In re African-American Slave Descendants Litigation
    471 F.3d 754 (7th Cir. 2006) ......................................................... 8

In re Nazi Era Cases Against German Defendants Litig.
    129 F.Supp.2d 370 (D.N.J. 2001) ..................................................... 7

Japan Whaling Ass'n v. Am. Cetacean Soc.
    478 U.S. 221 (1986) ..................................................................... 6

Klinghoffer v. S.N.C. Achille Lauro
    937 F.2d 44 (2nd Cir. 1991) ..................................................... passim

Koohi v. United States
    976 F.2d 1328 (9th Cir. 1992) ................................................... passim

Lane ex rel. Lane v. Halliburton
    ---F.3d---, 2008 WL 2191200 (5th Cir. May 28, 2008) ......................... passim

Laub v. United States Interior
    342 F.3d 1080 (9th Cir. 2003) ....................................................... 23

PLAINTIFFS' OPPOSITION TO DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT- NO. CV 07 6396 CW

Lessin v. Kellogg Brown & Root
        2006 WL 3940556 (S.D.Tex. 2006)                                7, 12

Luther v. Borden
        48 U.S. (7 How.) 1 (1849)                                      15

Masayesva on Behalf of Hopi Indian Tribe v. Hale
        118 F.3d 1371 (9th Cir. 1997)                                  14

McKay v. United States
        703 F.2d 464 (10th Cir. 1983)                                  16

McLachlan v. Bell
        261 F.3d 908 (9th Cir. 2001)                                   4

McMahon v. Presidential Airways, Inc.
        502 F.3d 1331 (11th Cir. 2007)                                 *passim*

McMahon v. Presidential Airways, Inc.
        460 F.Supp.2d 1315 (M.D.Fla. 2006)                    16, 20, 21, 23

Natural Res. Def. Council v. Pena
        147 F.3d 1012 (D.C.Cir. 1998)                                  23

Navajo Nation v. Norris
        331 F.3d 1041 (9th Cir. 2003)                                  5

Nation Magazine v. U.S. Dep't of Defense
        762 F.Supp. 1558 (S.D.N.Y. 1991)                               9

Nixon v. Herndon
        273 U.S. 536 (1927)                                            7

Northrop Corp. v. McDonnell Douglas Corp.
        705 F.2d 1030 (9th Cir. 1983)                                  14

Norwood v. Raytheon Co.
        455 F.Supp.2d 597 (W.D.Tex. 2006)                     12, 17, 18, 22

Potts v. Dyncorp Intern. LLC
        465 F.Supp.2d 1245 (M.D.Ala. 2006)                            8, 13

Rappenecker v. United States
        509 F.Supp. 1024 (N.D.Cal. 1980)                               21

PLAINTIFFS' OPPOSITION TO DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT- NO. CV 07 6396 CW

Rosales v. U.S.
        824 F.2d 799 (9th Cir. 1987)                                    5

Safe Air for Everyone v. Meyer
        373 F.3d 1035 (9th Cir. 2004)                                   5

Savage v. Glendale Union High Sch. Dist. No. 205
        343 F.3d 1036 (9th Cir. 2003)                                   5

Schlesinger v. Reservists Committee to Stop the War
        418 U.S. 208 (1974)                                               8

Smith v. Halliburton Co.
        2006 WL 2521326 (S.D.Tex. 2006)                                  20

Texas v. United States
        106 F.3d 661 (5th Cir. 1997)                                   15

The Paquete Habana
        175 U.S. 677 (1900)                                              10

Wells Fargo & Co. v. Wells Fargo Express Co.
        556 F.2d 406 (9th Cir. 1977)                                   23

Whitaker v. Harvell-Kilgore Corp.
        418 F.2d 1010 (5th Cir. 1969)                                  12

Whitaker v. Kellogg Brown & Root, Inc.
        444 F.Supp.2d 1277 (M.D.Ga. 2006)                                21

**STATUTES**

Federal Rules of Civil Procedure
        Rule 12(b)(1)                                                   4, 5

PLAINTIFFS' OPPOSITION TO DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT- NO. CV 07 6396 CW

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This case involves product liability tort claims asserted against private entities for monetary damages based on a helicopter crash during a transport flight in Afghanistan in which eight United States servicemen were killed and fourteen injured. This crash occurred sixty-four minutes after takeoff when the number two engine on the Boeing-made Chinook helicopter suddenly stopped, the remaining number one engine was unable to sustain flight, and the helicopter crashed within seconds.

Contrary to the overwrought hyperbole in defendant Honeywell International Inc.'s ("Honeywell") motion, there was no evidence of hostile or friendly fire or other combat activity that in any way contributed to the crash, nor that enemy activity, altitude, maintenance or pilot error played any role in this incident. The helicopter was simply ferrying troops from one base to another when its engine failed and it fell from the sky.

Plaintiffs contend, and the available evidence to date suggests, that defects in the design and manufacture of the subject helicopter and its components parts were the cause of the engine failure and subsequent crash. Plaintiffs have not sued the United States government, are not challenging any decision of the United States military, and are not seeking any injunctive relief that would interfere with military operations. The fact that plaintiffs or their decedents are servicemen and that the crash occurred in Afghanistan does not take the case out of the traditional tort context and render it nonjusticiable under the political question doctrine. None of the six factors set forth in *Baker v. Carr*, 369 U.S. 186 (1962) or the Court of Appeals decisions interpreting *Baker* in the military context - *Koohi v. United States*, 976 F.2d 1328 (9th Cir. 1992), *Lane ex rel. Lane v. Halliburton*, --- F.3d ---, 2008 WL 2191200 (5th Cir. May 28, 2008),[1] *McMahon v. Presidential Airways, Inc.,*

---

[1] Honeywell relies on the district court decision in *Fisher v. Halliburton*, 454 F.Supp.2d 637 (S.D. Tex. 2006). (*See* Motion at 7, 8, and 13). On May 28, 2008, the Fifth Circuit Court of Appeals in *Lane* reversed *Fisher*, holding that it was error to dismiss the plaintiffs' complaint on political question doctrine grounds.

PLAINTIFFS' OPPOSITION TO DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT- NO. CV 07 6396 CW

1 502 F.3d 1331 (11th Cir. 2007) and *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44 (2nd

2 Cir. 1991) - support dismissing plaintiffs' complaint on the basis that the case is

3 nonjusticiable under the political question doctrine.

4     The first *Baker* factor – whether the issue is textually committed to a political

5 branch of government – is not implicated in this case. The resolution of plaintiffs' product

6 defect claims against private entities is not textually committed to either Congress or the

7 President. In fact, it is the Judiciary where such a case is resolved. Moreover, plaintiffs

8 are only seeking damages against private parties. This case does not present the situation

9 where the political question doctrine has been successfully invoked, such as suits directly

10 against the United States, suits challenging military decisions, and suits seeking injunctions

11 against the government or the military.

12     The second *Baker* factor – whether there are judicially manageable standards for

13 resolving the issue – also is not implicated in this case. Product liability suits involving

14 private parties such as this are clearly within the province of the judiciary because tort law

15 provides judicially manageable standards. The third *Baker* factor – whether the case

16 involves an initial policy determination of non-judicial discretion – is also not implicated

17 because plaintiffs are seeking damages for wrongful death, personal injury and loss of

18 consortium and not injunctive relief against the military and are not challenging any

19 decision by the military.

20

21     Finally, the remaining three *Baker* factors apply when a coordinate branch of

22 government has already acted in an area within its purview and thus any judicial action

23 could conflict with or undermine that executive or legislative decision-making. Here,

24 plaintiffs' complaint presents no issue with any of these concerns. As none of the *Baker*

25 factors apply, Honeywell's motion to dismiss plaintiffs' complaint should be denied.

26     Honeywell's motion - which is supported primarily with hearsay news articles -

27 invites this Court to apply the political question doctrine to a situation involving purely

28

2

1   private parties seeking only monetary damages, a situation that has not been endorsed by

2   either the United States Supreme Court or any Courts of Appeal.  The Court should decline

3   such a drastic expansion of the political question doctrine especially where, as here, there

4   has been no discovery and defendants have filed motions to stay all discovery.

5   ### FACTUAL BACKGROUND

6   On or about February 17/18, 2007, plaintiffs and/or plaintiffs' decedents were

7   occupants and passengers on a Chinook MH-47E helicopter bearing Tail #94-00472

8   (hereinafter referred to as the "subject helicopter"), in the Shahjoi District of the Zabul

9   Province, in southeastern Afghanistan. (*See* Complaint, ¶1).  The subject helicopter was

10  transporting troops from Kandahar Air Base to Bagram Air Base as the third aircraft in a

11  flight of three MH-47E Chinooks.   (*See* Army Regulation 15-6 (hereafter "JAG Report"),

12  Essential Facts, at 2).[2]  Prior to takeoff, a weather briefing indicated that favorable weather

13  conditions existed.  (*See* JAG Report, Findings, at 3.)   The valley where the subject

14  helicopter was flying was considered relatively benign with no enemy incidents reported in

15  the vicinity of the accident.  (JAG Report, Findings, at 3.)   Sixty-four minutes after

16  takeoff, the number two engine experienced a sudden loss of power and crashed, killing

17  eight United States servicemen and injuring fourteen.  (JAG Report, Executive Summary,

18  at 1; Essential Facts, at 2.)

19

20  The number two engine was practically new with all scheduled maintenance,

21  engine washings completed and with no history of engine problems.  (*See* JAG Report,

22  Findings, at 4.)  In fact, months of power assurance checks, conducted by flight crews prior

23  to the first flight of the day, show a strong, healthy engine.  (*Id.*)  The engine was only

24  _____

25  [2]Defendant's motion contains sweeping and speculative statements about how the crash
    may have occurred and insinuates, without any factual support, that fault may lie with the
26  servicemen, their commanders or their training.  Rather than rely upon speculation and
    news articles, plaintiffs submit that the most concise statement of the facts presently
27  available for what actually happened are located in the JAG Report, which is attached as
    Exhibit A to the Declaration of Thomas J. Brandi, filed herewith.
28

3

seven months old, had 215 flight hours with over 2100 flight hours remaining before an overhaul. (*Id.*)

The primary cause of the accident was the sudden catastrophic failure of the number two engine while the subject helicopter was flying totally obscured in the clouds. (JAG Report, Executive Summary, at 1). There were no indications that the accident was caused by misconduct on the part of the aircrew, the chain of command, or any person involved in the mission. (JAG Report, Executive Summary, at 1; Findings, at 3.) There is no evidence that the accident was caused by friendly or hostile fire. (JAG Report, Executive Summary, at 1; Findings, at 3.) The aircraft was properly maintained and there was no evidence found in the engine and component records, or the flight recorder, of any engine problems prior to the engine failure in flight. (JAG Report, Executive Summary, at 1; Findings, at 4.) Most crewmembers within the flight were very experienced with the aircraft and had completed multiple rotations in Afghanistan. (JAG Report, Executive Summary, at 1.) Other possible contributing factors that have been ruled out include icing, foreign object damage, and toxicology. (JAG Report, Findings, at 3-4.)

## LEGAL ARGUMENT

### I.    STANDARD OF REVIEW

The Court may decide Honeywell's Federal Rules of Civil Procedure, Rule 12(b)(1) ("Rule 12(b)(1)") motion either on the papers or after an evidentiary hearing. The Court need not conduct a hearing nor allow additional discovery, but where the Court rules on a motion to dismiss for lack of subject matter jurisdiction without holding an evidentiary hearing, the factual allegations in complaint must be taken as true. *McLachlan v. Bell*, 261 F.3d 908, 909 (9th Cir. 2001).

If the Court considers evidence and conducts a hearing, the Court may "make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial, if the jurisdictional facts are not intertwined with the merits." *Rosales v. U.S.*, 824 F.2d 799,

4

803 (9th Cir. 1987). But "if the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment and grant the motion to dismiss for lack of jurisdiction only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*[3]*; see also Autery v. U.S.*, 424 F.3d 944, 956 (9th Cir. 2005); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "Otherwise, the intertwined jurisdictional facts must be resolved at trial by the trier of fact." *Rosales*, 824 F.2d at 803.

Defendant contends that plaintiffs bear the burden of establishing subject matter jurisdiction in a Rule 12(b)(1) context. That is true, but only if the moving party has met its burden of properly furnishing evidence suggesting that the court lacks subject matter jurisdiction. *See Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). As a private party asserting the political question doctrine, Honeywell faces a "double burden." *McMahon,* 502 F.3d at 1359. "First, [Honeywell] must demonstrate that the claims against it will require reexamination of a decision *by the military.* Then, it must demonstrate that the military decision at issue is . . . insulated from judicial review." *Id.* at 1359-60. Dismissal is warranted only if there are no "plausible set of facts that would permit recovery against [the defendant] without compelling the court to answer a nonjusticiable political question." *Lane*, 2008 WL 2191200.

As set forth more fully in Part IV below, because Honeywell's evidence consists mostly of hearsay news articles and statements that lack foundation, Honeywell has not properly presented evidence suggesting that a political question exists. Instead,

---

[3] In ruling on a motion for summary judgment, the Court views "the evidence in the light most favorable to the nonmoving party," and "determine[s] whether there are any genuine issues of material fact." *Safe Air*, 373 F.3d at 1040 n.4 (citing *Navajo Nation v. Norris,* 331 F.3d 1041, 1044 (9th Cir.2003)). The Court does not "weigh the evidence or determine the truth of the matter, but only determine[s] whether a genuine issue of material fact exists for trial." *Id.* (citing *Balint v. Carson City,* 180 F.3d 1047, 1054 (9th Cir.1999) (en banc)).

5

1    Honeywell's motion contains speculative statements of what the Court may have to decide

2    and what issues may be raised, which are an improper basis to dismiss plaintiffs' complaint

3    on subject matter jurisdictional grounds.  In any event, even if Honeywell's evidence is

4    competent, plaintiffs have met their burden of establishing that this case is justiciable.

5    **II.    PLAINTIFFS' PRODUCT DEFECT CLAIMS AGAINTS PRIVATE
6         ENTITIES ARE JUSTICIABLE AND THEREFORE DEFENDANT'S
         MOTION SHOULD BE DENIED**

7
8         Defendant Honeywell's motion should be denied because this product defect case

9    between private parties does not touch on any of the concerns invoking the political

10   question doctrine.  The political question doctrine is a function of the separation of powers

11   among the three branches of government, and it "excludes from judicial review those

12   controversies which revolve around policy choices and value determinations

13   constitutionally committed for resolution to the halls of Congress or the confines of the

14   Executive Branch."  *Japan Whaling Ass'n v. Am. Cetacean Soc.,* 478 U.S. 221, 230 (1986).

15   In *Baker v. Carr,* the Supreme Court set forth six elements indicative of a nonjusticiable

16   political question:

17        (1) a textually demonstrable constitutional commitment of the issue to a coordinate
         political department;
18        (2) a lack of judicially discoverable and manageable standards for resolving it;
19        (3) the impossibility of deciding without an initial policy determination of a kind
         clearly for nonjudicial discretion;
20        (4) the impossibility of a court's undertaking independent resolution without
         expressing lack of the respect due coordinate branches of government;
21        (5) an unusual need for unquestioning adherence to a political decision already
22        made; or
         (6) the potentiality of embarrassment from multifarious pronouncements by various
23        departments on one question.

24   369 U.S. 186, 217 (1962).  "Unless one of these formulations is **inextricable** from the case

25   at bar, there should be no dismissal for non-justiciability on the ground of a political

26   question's presence." *Id.* at 217 (emphasis supplied).

27        In order to dismiss plaintiffs' tort claims under the political question doctrine, the

28

                                        6

1    Court must conclude that resolution of these claims "would interfere with the

2    constitutional duties of one of the political branches." *Arakaki v. Lingle*, 477 F.3d 1048,

3    1068 (9th Cir. 2007). "A nonjusticiable political question exists when, to resolve a

4    dispute, the court must make a policy judgment of a legislative nature, rather than

5    resolving the dispute through legal and factual analysis." *E.E.O.C. v. Peabody Western*

6    *Coal Co.*, 400 F.3d 774, 784 (9th Cir. 2005). "[T]he [political question] doctrine must be

7    cautiously invoked, and the mere fact that a case touches on the political process does not

8    necessarily create a political question beyond courts' jurisdiction." *In re Nazi Era Cases*

9    *Against German Defendants Litig,* 129 F.Supp.2d 370, 374 (D.N.J. 2001) (citing *Nixon v.*

10   *Herndon,* 273 U.S. 536, 540 (1927)).

11          This exceedingly high standard is especially true where, as here, the case is at the

12   early stage of litigation, there has been no discovery responded to and, in fact, defendants

13   have sought a stay of all discovery pending the resolution of this motion. *See Lessin v.*

14   *Kellogg Brown & Root*, 2006 WL 3940556 (S.D.Tex. 2006) ("A finding that this case will

15

16   necessarily involve nonjusticiable political questions, particularly before discovery has

17   been completed and all parties properly joined, would expand the political question

18   doctrine beyond its current applications and boundaries.").

19   **A.    The Resolution of Plaintiffs' Product Defect Claims Against Private**
             **Entities Is Not Textually Committed to the Political Branches**
20

21          **i.    Plaintiffs' Tort Claims Challenge the Design and Manufacture**
                    **of the Subject Helicopter and Its Component Parts and Not Any**
22                  **Military Operational Decision**

23          Where, as here, plaintiffs assert product liability claims against private entities

24   seeking only monetary damages and not injunctive relief against the government, the

25   political question doctrine should not apply. *See Koohi v. United States*, 976 F.2d 1328

26   (9th Cir. 1992). The first *Baker* factor provides that an issue is nonjusticiable if it involves

27   "a textually demonstrable constitutional commitment of the issue to a coordinate political

28

7

1  department." The resolution of plaintiffs' product defect claims against private parties is

2  not textually committed to either Congress of the President. Resolution of such tort

3  matters <u>is</u> the province of the judiciary. *See Klinghoffer*, 937 F.2d at 49 ("The department

4  to whom this issue has been 'constitutionally committed' is none other than our own--the

5  Judiciary.").

6      In order for the first *Baker* consideration to apply, the issue must be textually

7  committed to another branch of government. The political question doctrine is typically

8  asserted in cases involving broad policy issues or political disputes masquerading as a

9  lawsuit. *See, e.g., Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208

10  (1974) (whether current members of Congress are ineligible to hold commissions in the

11  armed forces); *In re African-American Slave Descendants Litigation* 471 F.3d 754 (7th

12  Cir. 2006) (descendents of slaves brought actions seeking reparations from private

13  companies); *Gonzalez-Vera v. Kissinger* 449 F.3d 1260 (D.C. Cir. 2006) (victims of the

14  Chilean government's human rights abuses brought action against former U.S. Secretary of

15  State and others); *Hwang Geum Joo v. Japan* 413 F.3d 45 (D.C. Cir. 2005) (plaintiffs

16  alleged they were abducted and forced into sexual slavery by Japanese Army).

17  

18      *Baker* indicated that merely because an issue touches upon foreign policy and the

19  military does not automatically render it a political question. Instead, "the pertinent

20  question is whether the case at bar involves decisions regarding foreign policy at such a

21  level where judicial review would encroach upon the constitutional authority of one or

22  both of the politically accountable branches." *Potts v. Dyncorp Intern. LLC*, 465

23  F.Supp.2d 1245, 1249 (M.D.Ala. 2006). "[I]t is clear that not even military judgments are

24  completely immune from judicial review." *McMahon*, 502 F.3d at 1358 (citing *Gilligan v.*

25  *Morgan,* 413 U.S. 1, 11-12 (1973) and *Baker,* 369 U.S. at 211)); *see also Baker,* 369 U.S.

26  at 211 ("it is error to suppose that every case or controversy which touches foreign

27  relations lies beyond judicial cognizance'). Simply because a case may touch upon the

28  

8

1   military does not automatically render a case nonjusticiable.  Instead, military-related cases

2   that constitute political questions have been limited to "direct challenges to the institutional

3   functioning of the military in such areas as the relationship between personnel, discipline,

4   and training . . . [or challenges] impact[ing] upon the internal functioning and operation of

5   the military." *Nation Magazine v. U.S. Dep't of Defense*, 762 F.Supp. 1558, 1567

6   (S.D.N.Y. 1991).

7        The resolution of product liability claims against private parties such are this are

8   not textually committed to either Congress of the President.  Plaintiffs' complaint does not

9   challenge any military decision of the United States government nor does it seek any

10  injunctive relief against the military.  Instead, plaintiffs are alleging product liability claims

11  against the manufacturer of the subject helicopter and its component parts, seeking

12  monetary damages only.  *Koohi*, 976 F.2d 1328, the leading Ninth Circuit case on this

13  political question matter, involved an action by heirs of passengers of an Iranian civilian

14  aircraft shot down by the USS Vincennes, a naval cruiser equipped with the computerized

15  Aegis Air Defense System, during the Iran-Iraq war.  Some of the heirs of the Iranian

16  aircraft passengers brought suit against the United States and several private companies

17  involved in the construction of the Aegis Air Defense System, which was deployed on the

18  USS Vincennes.  The United States was sued for the negligent operation of the Vincennes

19  and claims were asserted against the weapons manufacturers for design defects in the

20  Aegis system.  Plaintiffs contended "that the defendants were, for differing reasons and to

21  differing degrees, each responsible for the misidentification of the civilian Airbus as an F-

22  14 and the consequent decision to shoot it down." *Id.* at 1331-32.

23        *Koohi* held that the political question doctrine did not apply and that the case was

24  justiciable.[4]  *Id.* at 1332.  In so holding, *Koohi* noted that "the fact that an action is 'taken

25

26

27  _____

28  [4] *Koohi* dismissed the case against the United States under the "combatant activities"
    exception to the Federal Tort Claims Act and, under the unique facts of that case, also

9

in the ordinary exercise of discretion in the conduct of war' does not put it beyond the judicial power." *Id.* (quoting and citing *The Paquete Habana,* 175 U.S. 677 (1900) and citing other cases). "The claim of military necessity will not, without more, shield governmental operations from judicial review." *Id.* Further, as discussed more fully below, *Koohi* noted that "[a] key element in our conclusion that the plaintiffs' action is justiciable is the fact that the plaintiffs seek only damages for their injuries." *Id.* at 1332. Moreover, "because the plaintiffs seek only damages, the granting of relief will not draw the federal courts into conflict with the executive branch." *Id.* The political question doctrine therefore did not apply. *Id.*

Other Courts of Appeal have likewise noted that the mere fact that a tort action arises during a military operation does not make it nonjusticiable, particularly where the military decisions are not being challenged and plaintiffs seek only monetary damages. In *McMahon*, 502 F.3d 1331, survivors of United States soldiers who were killed when an airplane in which they were being flown crashed into a mountain in Afghanistan brought action against the contractors that provided air transportation and operational support services to the Department of Defense (DOD). The plaintiffs

> allege[d] that Presidential entered into a contract with the Department of Defense ("DOD") to provide air transportation and other support services in aid of the military mission in Afghanistan. A Statement of Work ("SOW") governed the relationship between Presidential and the U.S. military. Presidential agreed to furnish "all fixed-wing aircraft, personnel, equipment, tools, material, maintenance, and supervision necessary to perform Short Take-Off and Landing (STOL) passenger, cargo, or passenger and cargo air transportation services" between various locations in Afghanistan, Uzbekistan, and Pakistan. DOD directed what missions would be flown, when they would be flown, and what passengers and cargo would be carried.

*Id.* at 1337. The contractors' motion to dismiss based on, *inter alia*, the political question doctrine was denied by the district court, and the Eleventh Circuit affirmed.

---

dismissed the claims of the military contractors under that exception. Because of *Koohi*'s unique circumstances, its ruling on the "combatant activities" exception has no applicability to this case.

10

Initially, the Eleventh Circuit noted that the *McMahon* complaint, much like plaintiffs' complaint here, "does not allege that combat activities in Afghanistan had anything to do with the plane crash, and does not allege that any action performed, dictated, or controlled by the military caused the accident." *Id.* at 1337 n.3. Indeed, plaintiffs' complaint alleges, and plaintiffs contend the evidence will establish, that the cause of the crash was a defect in the subject helicopter, including but not limited to the engine and component parts, particularly the FADEC. Accordingly, *McMahon* held that the plaintiffs' "suit did not present a nonjusticiable political question because it did not yet appear that her tort claims against a private contractor would require the court to examine the judgments or strategy of the United States military." *Id.* at 1337-38.

In *Lane*, 2008 WL 2191200, the Fifth Circuit recently reversed a district court order that dismissed the plaintiffs' complaint as being nonjusticiable under the political question doctrine. The case was brought by employees of a contractor in Iraq against the contractor alleging various state law claims for deploying their convoy as a decoy into an area that the contractor allegedly knew to be under attack in order to ensure the safe passage of a second convoy, resulting in serious injuries and death. Noting that, "when faced with an 'ordinary tort suit,' the textual commitment factor actually weighs in favor of resolution by the judiciary," the Fifth Circuit held that the contractor's "conduct can be examined by a federal court without violating the Constitution's separation of powers." *Id.*

In *Klinghoffer*, 937 F.2d 44, suits were brought against the Palestine Liberation Organization (PLO) in connection with the October 1985 seizure of the Italian passenger liner Achille Lauro and the killing of passenger Leon Klinghoffer. The PLO moved to dismiss the action on, *inter alia*, that the case presented a nonjusticiable political question because it "raises foreign policy questions and political questions in a volatile context lacking satisfactory criteria for judicial determination." *Id.* at 49.

Rejecting this argument, *Klinghoffer* noted that because this was "an ordinary tort

11

1    suit, alleging that the defendants breached a duty of care owed to the plaintiffs or their

2    decedents" it was constitutionally committed to the judiciary, "strongly suggest[ing] that

3    the political question doctrine does not apply." *Id.* Moreover, "because the common law

4    of tort provides clear and well-settled rules on which the district court can easily rely, this

5    case does not require the court to render a decision in the absence of 'judicially

6    discoverable and manageable standards.'" *Id. Klinghoffer* found the remaining *Baker*

7    factors inapplicable, *see id.* at 49-50, and therefore held the case was justiciable. *See also*

8    *Whitaker v. Harvell-Kilgore Corp.*, 418 F.2d 1010 (5th Cir. 1969) (a manufacturer was not

9    shielded from liability where the plaintiff's action arose out of a live grenade explosion

10   that injured a soldier during combat training).

11        Several other federal district courts are in accord with *Koohi, Lane, McMahon* and

12   *Klinghoffer* concerning their political question doctrine analysis, particularly in cases such

13   as this involving purely private parties where only monetary damages are sought. *See*

14   *Norwood v. Raytheon Co.*, 455 F.Supp.2d 597 (W.D.Tex. 2006) (suit by American and

15   German servicemen who sued various American manufacturers of radar equipment,

16   seeking compensation for injuries allegedly incurred due to inadequate radiation shielding,

17   did not present a political question); *Carmichael v. Kellogg, Brown & Root Services, Inc.*,

18   450 F.Supp.2d 1373 (N.D.Ga. 2006) (political question doctrine did not apply, particularly

19   where there had been no discovery and given the facts under which doctrine would not be

20   implicated, in suit against military contractors alleging that their driver's negligence in

21   losing control of truck caused injuries suffered by service member, who was providing

22   military escort for contractors' convoy in a combat zone); *Lessin*, 2006 WL at *8 (political

23   question doctrine did not apply in wrongful death suit where a U.S. soldier who was

24   attempting to help a private contractor whose truck had malfunctioned was killed, court

25   reasoning that "[t]he incident ... was, essentially, a traffic accident, involving a commercial

26   truck alleged to have been negligently maintained, as well as a civilian truck driver who

27

28

12

1   was allegedly negligent in operating the truck and insufficiently trained. Claims of

2   negligence arising from this type of incident are commonly adjudicated by courts, using

3   well-developed standards."); *Potts*, 465 F.Supp.2d 1245 (political question doctrine did not

4   apply in negligence action brought by a civilian worker against a private contractor, which

5   was employed by the Coalition Provisional Authority in Iraq, when he suffered injuries in

6   a rollover accident in Iraq); *Ibrahim v. Titan Corp.*, 391 F.Supp.2d 10 (D.D.C. 2005)

7   (political question doctrine did not bar suit by Iraqi national detainees and spouses of

8   deceased detainees against two private government contractors who provided interrogators

9   and interpreters to United States military in Iraq, stemming from alleged acts of torture

10  inflicted upon them at prison in Iraq).

11          Here, private plaintiffs are asserting product liability claims against private

12  defendants.  The fact that plaintiffs or their decedents are servicemen and that the crash

13  occurred in Afghanistan does not render the design or manufacture of the subject

14  helicopter and its component parts, including the FADEC, a political question.  The crash

15  did not occur during or as a result of combat; it is undisputed that the crash occurred as a

16  result of the failure of the number two engine.  (*See* JAG Report, Executive Summary, at 1;

17  Essential Facts, at 2.).  This engine was essentially brand new, with all scheduled

18  maintenance, engine washings completed and with no history of engine problems.  (*See*

19  JAG Report, Findings, at 4.)  There were no indications that the accident was caused by

20  misconduct on the part of the aircrew, the chain of command, or any person involved in the

21  mission, nor is there any evidence that the accident was caused by friendly or hostile fire.

22  (JAG Report, Executive Summary, at 1; Findings, at 3.)  The aircraft was properly

23  maintained and there was no evidence found in the engine and component records, or the

24  flight recorder, of any engine problems prior to the engine failure in flight.  (JAG Report,

25  Executive Summary, at 1; Findings, at 4.)  Accordingly, there is no basis to apply the

26  political question doctrine.

27

28

13

1

2

**ii.    Plaintiffs Seek Monetary Damages Against Private Parties and Not Injunctive Relief Against the United States Military**

3    Significantly, plaintiffs seek only monetary damages, not injunctive relief.

4    "Damage actions are particularly judicially manageable" and "particularly nonintrusive"

5    because "[t]he granting of [monetary] relief will not draw the federal courts into conflict

6    with the executive branch." *Koohi*, 976 F.2d at 1332 (citation omitted); *see also*

7    *Masayesva on Behalf of Hopi Indian Tribe v. Hale,* 118 F.3d 1371, 1378 (9th Cir.1997)

8    (difficult calculation of damages in case concerning dispute between two Native American

9    nations did not constitute a political question); *Northrop Corp. v. McDonnell Douglas*

10    *Corp.*, 705 F.2d 1030, 1047 (9th Cir. 1983) ("Northrop does not challenge the wisdom or

11    legality of any governmental act or decision.  Instead, it seeks to restrain and recover

12    damages from McDonnell for the latter's allegedly improper tactics in marketing F-18's. . .

13    The issues presented for trial are not political questions-they are legal issues, involving

14    private commercial activity which the judiciary is uniquely equipped to resolve."); *Gordon*

15    *v. State of Texas*, 153 F.3d 190, 195 (5th Cir. 1998) ("[A]s compared to injunctive relief,

16    requests for monetary damages are less likely to raise political questions.  Monetary

17    damages might but typically do not require courts to dictate policy to federal agencies.").

18    In contrast, injunctive relief is more susceptible to political question problems

19    because "the framing of injunctive relief may require the courts to engage in the type of

20    operational decision-making . . . constitutionally committed to other branches." *Koohi*, 976

21    F.2d at 1332.  As plaintiffs are not seeking injunctive relief, the concern that plaintiffs'

22    claims may somehow interfere with military operations is non-existent.  *See, e.g.*, *Arakaki*,

23    477 F.3d at 1068 ("Nothing in the claims Plaintiffs have asserted or the remedy they seek

24    invites the district court to exercise powers reserved to Congress or to the President.").

25    Therefore, the first *Baker* factor is not implicated by plaintiffs' complaint.

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT- NO. CV 07 6396 CW

### B.     Tort Law Provides Clear Judicial Standards Upon Which This Court Can Rely

The second *Baker* factor renders nonjusticiable a case where there is "a lack of judicially discoverable and manageable standards for resolving it." *Baker*, 369 U.S. at 217.   For example, the Supreme Court has ruled that cases brought under the Constitution's Guaranty Clause are judicially unmanageable. *See Luther v. Borden,* 48 U.S. (7 How.) 1 (1849).  Some courts have found that claims under the Naturalization Clause are nonjusticiable because of the absence of any judicially manageable standards to determine the constitutionality of Congressional immigration effort.  *See, e.g., Texas v. United States,* 106 F.3d 661 (5th Cir. 1997).  In the foreign policy context, courts have found suits challenging United States military policies as they apply to foreign countries nonjusticiable under this prong.  *See, e.g., Crockett v. Reagan,* 720 F.2d 1355 (D.C.Cir.1983) (finding nonjusticiable a claim that military aid to El Salvador violated the war powers clause of the Constitution); *DaCosta v. Laird,* 471 F.2d 1146 (2nd Cir. 1973) (holding that a suit against the President for illegally authorizing military action was nonjusticiable); *Greenham Women Against Cruise Missiles v. Reagan,* 591 F.Supp. 1332 (S.D.N.Y. 1984) (declaring nonjusticiable a suit seeking an injunction against the deployment of cruise missiles in an English town).

In contrast, tort suits involving private parties such as this are clearly within the province of the judiciary because tort law provides judicially manageable standards.  *See Koohi*, 976 F.2d at 1331-32; *Lane*, 2008 WL 2191200 ("American courts have resolved such matters between private litigants since before the adoption of the Constitution. . . . The court will be asked to judge [the contractor's] policies and actions, not those of the military or Executive Branch."); *Klinghoffer*, 937 F.2d at 49 ("[B]ecause the common law of tort provides clear and well-settled rules on which the district court can easily rely, this case does not require the court to render a decision in the absence of 'judicially

15

1  discoverable and manageable standards.'"); *McKay v. United States,* 703 F.2d 464, 470

2  (10th Cir.1983) ("[T]he political question theory and the separation of powers doctrines do

3  not ordinarily prevent individual tort recoveries."); *Barasich v. Columbia Gulf*

4  *Transmission Co.,* 467 F.Supp.2d 676, 684 (E.D.La. 2006) ("[T]he Supreme Court has

5  never applied the "lack of judicially manageable standards" prong to a dispute between

6  private parties."); *McMahon v. Presidential Airways, Inc.,* 460 F.Supp.2d 1315, 1322

7  (M.D.Fla. 2006) ("[C]ases involving traditional tort liability--even if they relate to the

8  military or occur during a time of war--are capable of judicial resolution. The judicial

9  standards required are no different than in ordinary tort actions; it is simply the context that

10  has changed.").  This is especially true when the only remedy sought is monetary damages

11  and not injunctive relief.  *Koohi,* 976 F.2d at 1332; *Gordon,* 153 F.3d at 195 (monetary

12  damages do not "constitute a form of relief that is not judicially manageable").

13        Because tort law provides clear standards that this Court can apply, the second

14  *Baker* factor is inapplicable.

15

16        **C.    Plaintiffs' Product Defect Claims Against Private Entities Do Not
                Involve An Initial Policy Determination of Non-Judicial Discretion**

17        The third Baker factor is not implicated by plaintiffs' complaint.  Plaintiffs are

18  seeking damages for wrongful death, personal injury and loss of consortium. They are not

19  seeking injunctive relief against the military and are not challenging any decision by the

20  military.  "As the case appears to be an ordinary tort suit, there is no 'impossibility of

21  deciding without an initial policy determination of a kind clearly for nonjudicial

22  discretion.'"  *McMahon,* 502 F.3d at 1364-65 (quoting *Baker,* 369 U.S. at 217).

23

24        **D.    The Three Remaining *Baker* Factors Are Inapplicable to Plaintiffs'
                Claims**

25        Finally, the remaining three *Baker* factors - the impossibility of a court's

26  undertaking independent resolution without expressing lack of the respect due to

27  coordinate branches of government, an unusual need for an unquestioning adherence to a

28

                                          16

political decision already made, or the potentiality of embarrassment from multifarious pronouncements by various departments on one question - are not present in this case. These three *Baker* prongs are interrelated, as they apply when a coordinate branch of government has already acted in an area within its purview and thus any judicial action could conflict with or undermine that executive or legislative decision-making. These prongs are commonly invoked in reparations cases. *See, e.g., In re African-American Slave Descendants Litig.,* 375 F.Supp.2d 721 (N.D.Ill. 2005). They are not commonly invoked in a case such as this.

Plaintiffs do not ask this Court to second-guess the military, so the fourth *Baker* factor is inapplicable. *See Norwood,* 455 F.Supp.2d at 606 ("[T]he Court sees no potential for such a policy determination, given that Plaintiffs' claims are predicated on injuries allegedly caused by defective radars used by the American and German militaries during the latter half of the twentieth century."). Plaintiffs also do not challenge any military decision, so the fifth *Baker* factor (an unusual need for unquestioning adherence to a political decision) does not apply. *See id.*

Finally, the sixth *Baker* consideration – the potentiality of political embarrassment – likewise does not apply in this case. Rejecting a similar argument, *Norwood* stated that "Defendants' broad proposition that a resolution of the American Plaintiffs' products liability and negligence actions against defense contractors could lead to multifarious pronouncements would apply to any tort claim brought by servicemen against defense contractors. In all such cases, the military would have made the initial decision to purchase the product in question, and would have established protocols for its use. The political question doctrine does not sweepingly bar all such claims." *Norwood,* 455 F.Supp.2d at 607.

In sum, *Norwood* is instructive:

Plaintiffs allege that defense contractors failed to adequately design the radars and to adequately warn Plaintiffs about the dangers posed by the radars. If Plaintiffs

17

1
2
3
4
5
6
7

succeed on their claims, the decision of the United States military to use the radars will not be questioned by the Court, as liability will lie with the defense contractors. Any alleged fault of the United States will be potentially implicated only by defenses that might be asserted by Defendants, and no party has argued that the United States military knew of and ignored the alleged dangers posed by the radar systems at issue. Furthermore, even should such evidence be presented for review to the Court, "[t]he Supreme Court has made clear that the federal courts are capable of reviewing military decisions." *Koohi,* 976 F.2d 1328, 1329 (9th Cir.1992). In sum, Defendants have presented no evidence that the resolution of Plaintiffs' claims against private defendants would result in the Court's expressing a lack of respect due to the political branches of the federal government.

8
9

*Norwood,* 455 F.Supp.2d at 605-606. Accordingly, the fourth, fifth, and sixth *Baker*

considerations are not implicated by plaintiffs' complaint.

10

### E.  Honeywell Seeks a Drastic Extension of the Political Question Doctrine

11
12
13
14
15
16
17
18
19
20

In essence, Honeywell asks this Court to extend the political question doctrine to a product liability context involving purely private parties, an extension yet to be endorsed by either the Supreme Court or any Courts of Appeal. *See Koohi*, 976 F.2d at 1332 fn.3 (rejecting application of political question doctrine and stating that it was aware of "no Supreme Court or Court of Appeals decisions which have dismissed a suit brought against a private party on the basis of the political question doctrine"); *McMahon*, 502 F.3d at 1358 n.26 ("No Court of Appeals has yet upheld the dismissal of a suit against a private military contractor on political question grounds."); *Doe v. Exxon Mobil Corp.,* 473 F.3d 345, 355 (D.C.Cir. 2007).

21
22
23
24
25
26
27
28

Under Honeywell's logic, virtually every product liability action that touches on the military or its personnel would involve political questions. For example, if a truck's brakes failed while it was being driven on a military base, the truck's manufacturer could speculate the brake failure was due to poor maintenance, inappropriate speed, or that the Army training policies were defective because they did not include adequate driver training and thus the case should not go forward because these arguments would implicate the political question doctrine. But that is clearly not the law. In fact, there have only been a

18

1   handful of courts (which are cited by Honeywell) which have granted a motion such as

2   Honeywell's and, as set forth below, those cases involve actions directly (or indirectly)

3   against the United States, seek injunctive relief, and/or have dramatic facts which are

4   plainly inapplicable to this case.

5       Honeywell relies heavily on *Aktepe v. United States,* 105 F.3d 1400 (11th Cir.

6   1997). In *Aktepe,* the Eleventh Circuit upheld a dismissal on political question grounds

7   when the suit was brought by Turkish survivors against the United States (and not private

8   contractors) challenging certain decisions concerning training made by the U.S. military.

9   The case concerned an accident that took place during a joint training exercise involving

10  both the Turkish and U.S. navies when a U.S. ship accidentally fired a live missile at one

11  of the Turkish ships, resulting in several deaths and numerous injuries. *Id.* at 1402.

12      To decide the Turkish sailors' negligence action against the United States, the court

13  would have had to determine whether various members of the U.S. military exercised

14  reasonable care during a training exercise. *Id.* at 1404. That would have required

15  reexamination of core military decisions, including "Navy communication, training, and

16  drill procedures." *Id.* The essence of the Turkish sailors' claims was not whether private

17  contractors defectively designed and manufactured the equipment at issue, but whether the

18  U.S. military's training was reasonable. *Aktepe* held that no judicially manageable

19  standards existed to "determine how a reasonable military force would have conducted the

20  [missile firing] drill" and accordingly dismissed the case on political question grounds.

21      Here, plaintiffs have not sued the United States and are not seeking to change or

22  challenge military communication, training, drill or any other procedures. Moreover, as set

23  forth above there are judicially manageable standards through tort law to determine

24  plaintiffs' product defect claims against private entities. *Aktepe* therefore provides no

25  support to Honeywell.

26      *Bentzlin v. Hughes Aircraft Co.*, 833 F.Supp. 1486 (C.D.Cal. 1993) also provides

27

28

19

no support to Honeywell. In *Bentzlin*, family members of six Marines who were killed in combat during Persian Gulf War when their vehicle was struck by a "friendly fire" missile fired from Air Force aircraft brought an action against missile's manufacturer, alleging a manufacturing defect. The court dismissed the action on several grounds, including the political question doctrine.

*Bentzlin* is distinguishable from this case and should not be followed for several reasons. First, *Bentzlin* involved a death as the result of the direct use of force during combatant activities. While *Bentzlin* alleged product defects, in reality (and unfortunately for the U.S. Marines killed) the missile functioned as intended. Here, there was no direct use of force, as the subject helicopter crashed without being fired upon. (JAG Report, Executive Summary, at 1; Findings, at 3.) Second, unlike in *Bentzlin*, plaintiffs and their decedents in this case were not the perceived enemies being fired upon. Third, this case does not question the design and manufacture of a product used solely for military purposes, such as the missile involved in *Bentzlin*. *See Bentzlin*, 833 F.Supp. at 1490 (noting distinction between purely military use versus a product manufactured for both civilian and military uses). Instead, this case concerns a subject helicopter and its component parts, including the FADEC, which have widespread civilian use. Finally, *Bentzlin* has been criticized, distinguished and/or expressly not followed by several courts. *See McMahon*, 502 F.3d at 1359-64; *McMahon v. Presidential Airways, Inc.*, 460 F.Supp.2d 1315, 1321-22 (M.D.Fla. 2006); *Carmichael,* 450 F.Supp.2d at 1375-76.[5]

Honeywell also relies on *Smith v. Halliburton Co.*, 2006 WL 2521326 (S.D.Tex. 2006), which involved a security negligence case based on an insurgent bombing at a mess

---

[5] Also in *Bentzlin*, the United States intervened and moved to dismiss the case under the political question and state secrets doctrines. *See Bentzlin,* 833 F. Supp. at 1487. Here, the United States has not intervened or expressed its position. Even if the United States intervened on behalf of the defendants, the political question doctrine would not apply for the reasons set forth in this opposition.

1  hall in Iraq.  While the complaint alleged that the contractor defendant was negligent in

2  providing the security services, discovery revealed that the contractor was only responsible

3  for food services; the military retained full control over the security.  Therefore, because

4  the military was responsible for the security and had full control over it, the case would

5  have required the court to evaluate the reasonableness of the military's security.

6        The other district court cases cited by Honeywell are equally inapplicable.  *See*

7  *Rappenecker v. United States*, 509 F. Supp. 1024 (N.D. Cal. 1980) (claim that President

8  was negligent in responding to seizure of American cargo vessel by Cambodian gunboats

9  dismissed as political question); *Whitaker v. Kellogg Brown & Root, Inc.*, 444 F.Supp.2d

10  1277 (M.D.Ga. 2006) (degree of military control over convoy was so extensive as to

11  render the political question doctrine applicable in case against contractor engaged in

12  wartime convoy operation planned and executed by the military - including placement of

13  vehicles in the convoy, distance between them, rate of speed, and escorted by military

14  providing security - and alleging negligence of contractor's employee who was performing

15  duties subject to the military's planning, orders, and regulations).  Notably, *Whitaker*, like

16  *Bentzlin*, has been criticized, distinguished and/or expressly not followed by several courts.

17  *See McMahon*, 502 F.3d at 1356 n.22; *McMahon*, 460 F.Supp.2d at 1320; *Potts*, 465

18  F.Supp.2d at 1251-53; *Carmichael*, 450 F.Supp.2d at 1376.

19

20        Honeywell also cites *Gilligan*, 413 U.S. 1, for the proposition that "[t]he training,

21  equipping, and control of military forces are the types of governmental action intended by

22  the Constitution to be left to the political branches."  (Motion at 8:4-6; *see also* Motion at

23  11:2-4).  But *Gilligan* sought a <u>request for injunctive relief</u>, a request not made in this case.

24  It would be inappropriate for a court as was presented in *Gilligan* to order the United

25  States military to revise its training and equipping. It is quite another matter – presented in

26  this case – for a court to determine whether a product was defective and award monetary

27  damages.  *See Norwood*, 455 F.Supp.2d at 605 ("Unlike the request for injunctive relief in

28

21

1    the *Gilligan* case, Plaintiffs' request for damages from defense contractors would in no

2    way require judicial oversight of military decisions.").

3         Finally, defendant relies upon *Corrie v. Caterpillar, Inc.*, 503 F.3d 974 (9th Cir.

4    2007), but that does not involve purely private parties and is inapplicable.  In *Corrie*,

5    which was not a products liability case, family members of individuals who were killed or

6    injured when the Israeli Defense Forces (IDF) used bulldozers to demolish homes in

7    Palestinian Territories brought action against the manufacturer of such bulldozers, alleging

8    that manufacturer provided the IDF with equipment it knew would be used in violation of

9    international law.  While the face of the complaint superficially showed claims only

10   involving private parties, evidence revealed that these sales "were financed by the

11   executive branch pursuant to a congressionally enacted program calling for executive

12   discretion as to what lies in the foreign policy and national security interests of the United

13   States." *Id.* at 982.  The "factual attack" on the complaint revealed that the United States

14   was essentially an indispensible defendant because it was the United States' decision to

15   sale the equipment to Israel, not the private contractor.  Therefore, "[a]llowing this action

16   to proceed would necessarily require the judicial branch of our government to question the

17   political branches' decision to grant extensive military aid to Israel. It is difficult to see

18   how we could impose liability on Caterpillar without at least implicitly deciding the

19   propriety of the United States' decision to pay for the bulldozers which allegedly killed the

20   plaintiffs' family members." *Id.*  Accordingly, the political question doctrine applied.

21        As plaintiffs are not suing the United States, are not seeking to challenge any

22   decision by the United States military, are not seeking any injunctive relief against the

23   military, and are not questioning the wisdom of any foreign policy decision, the cases

24   Honeywell relies upon are inapplicable.

25

26

27

28

1    **III.    IT WOULD BE PREMATURE TO DISMISS PLAINTIFFS' COMPLAINT**
2    **WITHOUT ALLOWING ANY DISCOVERY**

3        Should the court proceed with a hearing, then plaintiffs must be entitled to

4    discovery. It is an abuse of discretion to dismiss for lack of jurisdiction without giving

5    plaintiffs an opportunity for discovery if requested. *See Laub v. United States Interior*, 342

6    F.3d 1080, 1092 (9th Cir. 2003). "[D]iscovery should be granted when, as here, the

7    jurisdictional facts are contested or more facts are needed." *Id.* (citing *Wells Fargo & Co.*

8    *v. Wells Fargo Express Co.,* 556 F.2d 406, 430 n. 24 (9th Cir. 1977) (district court abused

9    its discretion in refusing to grant discovery on jurisdictional issue); *Natural Res. Def.*

10   *Council v. Pena,* 147 F.3d 1012, 1024 (D.C.Cir. 1998) and *Edmond v. United States Postal*

11   *Serv. Gen. Counsel,* 949 F.2d 415, 425 (D.C.Cir. 1992) (district court abused its discretion

12   when it denied jurisdictional discovery).

13       Plaintiffs' complaint does not challenge any military decision. Honeywell has

14   argued in its motion hypothetical scenarios as to why the military's decision may be

15   implicated in this case. Yet plaintiffs' complaint does not challenge any of those

16   scenarios, and the available evidence to date suggests that the cause of accident was not the

17   result of military decisions but of design and manufacturing defects in the subject

18   helicopter and its component parts, particularly the FADEC. Even if the case touches upon

19   military decisions, that is not enough to render the case nonjusticiable. The Court should

20   therefore not dismiss the complaint on such an incomplete record where no discovery has

21   commenced. *See McMahon*, 502 F.3d at 1365.[6]

22

23

24   _____

     [6] Plaintiffs submit that Honeywell's motion be denied outright. Secondarily, plaintiffs
25   submit that Honeywell's motion should at least be denied as being premature, as there has
     been no discovery. Plaintiffs here are requesting discovery. Plaintiffs have already
26   propounded requests for admissions on basic facts from the JAG Report and also have met
     and conferred with custodian of record depositions. Moreover, plaintiffs intend on
27   propounding additional discovery.

28

1
2
## IV.    MOST OF THE EVIDENCE SUBMITTED BY HONEYWELL IS INADMISSIBLE

3       Honeywell has submitted two declarations in support of its motion to dismiss: the

4   declaration of Joanna Herman with fourteen exhibits attached and the declaration of Marlin

5   Kruse, with no exhibits attached.  Plaintiffs object to this evidence as follows:

6   **Objections to the Declaration of Joanna E. Herman:**

7       Paragraphs 2-8 and Exhibits 1-7.  These news articles and the declarant's

8   description of them lack authentication, are hearsay, and lack foundation.

9       Paragraph 9, and Exhibit 8.  This press release and the declarant's description of it

10  lacks authentication, is hearsay, and lacks foundation.

11      Paragraph 10, Exhibit 9.  This memorandum and the declarant's description of it

12  lacks authentication, is hearsay and lacks foundation.

13      Paragraph 11, Exhibit 10.  This is a document produced by plaintiffs with their

14  Rule 26 initial disclosures.  It would be inequitable for defendant to use a document

15  plaintiffs have produced in compliance with the letter and spirit of Rule 26 while

16  defendants have not produced any documents and have sought a stay on discovery.

17      Paragraphs 12-14, Exhibits 11-13.  These biographical sketches and the declarant's

18  description of them lacks authentication, are hearsay and lack foundation.

19      Paragraph 15, Exhibit 14.  This U.S. Department of State Fact Sheet and the

20  declarant's description of the document lacks authentication, is hearsay, and lacks

21  foundation.  Further, the declarant's description of Operation Enduring Freedom is hearsay

22  and lacks foundation.

23  **Objections to the Declaration of Marlin Kruse:**

24      Paragraphs 4 and 5.  The declarant's entire statements in these paragraphs lack

25  foundation.

26

27      Paragraph 7.  The declarant's entire statement in this paragraph lacks foundation.

28

Paragraph 8.  The statement "Engine control system components were also transported back to the United States," lacks foundation.  The statement "I was told by investigators from the 160th that the aircraft was demolished by explosives into manageable pieces for storage purposes" is hearsay.  Moreover, the declarant's claims that he viewed and photographed the subject helicopter's engines are in conflict with the JAG report stating "the engines were destroyed by friendly forces after the accident and are thus not available for physical examination."  However, the engines <u>of the other two Chinooks</u> were examined and foreign object damage on them was found to be not relevant. (JAG Report, Essential Facts, at 3; Findings, at 3).

Paragraph 12.  The entire statement, "During the teardown of the engines, one of the 160th investigators informed me that a grenade had been thrown down the tail pipe and into the turbine section of the number two engine in Afghanistan" is hearsay, lacks foundation, and is speculative.

Paragraph 13.  The entire statement, "Upon review of the engine, I was able to see the damage from the grenade impact to the number two engine," lacks foundation and is speculative.

Paragraph 14.  The term "grenade damage to the number two engine" lacks foundation and is speculative and the photographs lack proper authentication.

Paragraph 15.  The entire statement is not relevant.

For these reasons, the Court should not consider this evidence in support of Honeywell's motion.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss should be denied.

Dated: May 29, 2008                    THE BRANDI LAW FIRM

                                       By:  _/s/ Thomas J. Brandi_
                                            THOMAS J. BRANDI
                                            Attorney for Plaintiffs