TB684588

QC
PC
CE

OH

CREW CHIEF'S NAME | SUPERVISOR'S NAME

(b)(6), (b)(3) (10USC130b)

PM Summary

Current A/C Hours

Eng1 Eng2

High Limit

Low Limit

| Flt Date | Flt | No.1 | No.2 |
|---|---|---|---|
| 2/14/2007 | 2 | 0A26 | 0A21 |
| 2/14/2007 | 1 | A27 | A32 |
| 2/8/2007 | 4 | 0A28 | 0A30 |
| 2/8/2007 | 3 | 34 | 31 |
| 2/7/2007 | 2 | 27 | 30 |
| 2/4/2007 | 2 | 0A29 | 0A34 |
| 2/2/2007 | 1 | 0A27 | 0A31 |
| 1/28/2007 | 1 | 28 | 31 |
| 1/27/2007 | 1 | 0A28 | 0A31 |
| 1/24/2007 | 1 | 0A27 | 0A30 |
| 1/23/2007 | 1 | 0A21 | 0A24 |
| 1/14/2007 | 1 | 37 | 34 |
| 1/12/2007 | 1 | 28 | 32 |
| 1/11/2007 | 1 | 29 | 34 |
| 1/4/2007 | 1 | 28 | 30 |
| 1/1/2007 | 1 | A28 | A31 |
| 12/28/2006 | 1 | 30 | 30 |
| 12/23/2006 | 1 | 28 | 31 |
| 12/19/2006 | 1 | 28 | 31 |
| 12/18/2006 | 1 | 21 | 21 |
| 12/16/2006 | 1 | 0A27 | 0A32 |
| 12/7/2006 | 1 | 28 | 31 |
| 12/6/2006 | 1 | 28 | 30 |
| 12/5/2006 | 1 | 27 | 20 |
| 12/1/2006 | 1 | 28 | 31 |
| 11/30/2006 | 1 | 28 | 31 |
| 11/14/2006 | 1 | A28 | A30 |
| 11/7/2006 | 1 | 27 | 31 |
| 11/4/2006 | 1 | 33 | 28 |
| 11/3/2006 | 1 | 27 | 32 |
| 11/2/2006 | 1 | 0A27 | 0A31 |
| 11/1/2006 | 1 | A25 | A36 |
| 10/31/2006 | 1 | 28 | 30 |
| 10/30/2006 | 1 | 27 | 33 |
| 10/28/2006 | 1 | A27 | A34 |
| 10/21/2006 | 1 | A23 | A27 |
| 10/18/2006 | 1 | A28 | A32 |
| 10/12/2006 | 1 | 0A30 | 0A31 |
| 10/10/2006 | 1 | A29 | A31 |
| 10/4/2006 | 1 | 28 | 31 |
| 9/29/2006 | 1 | 30 | 33 |
| 9/26/2006 | 1 | A31 | A28 |
| 9/21/2006 | 1 | 30 | 32 |
| 9/19/2006 | 1 | 31 | 29 |
| 9/18/2006 | 1 | 24 | 31 |
| 9/15/2006 | 1 | 28 | 32 |
| 9/14/2006 | 1 | 27 | 31 |
| 9/7/2006 | 1 | A27 | A30 |

Prepared by: (b)(6), (b)(3) (10USC130b)

Quality Control NCO

(b)(1)1.4a

PRIVACY ACT STATEMENT

**Authority:** The general authority for soliciting this information is 10 USC § 3012. More specific authority(ies) may exist.

**Purpose:** The purpose(s) for soliciting this information is to obtain facts and make recommendations to assist the commander in determining what action to take with regard to:

MISHAP OF (b)(1)1.4a 17 FEB 07 AND THE RESULTING CASUALTIES

**Failure to disclose:**

*For soldiers and civilians not being advised of their Article 31, UCMJ rights and civilians not being advised of the 5th Amendment rights:* **Providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or Army regulations or applicable civilian personnel regulations.**

*For soldiers and civilians being advised of their Article 31, UCMJ rights and civilians being advised of the 5th Amendment rights:* **Providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than that certain information might not otherwise be available to the commander for his or her decision in this matter.**

**Routine Uses:** Any information you provide is disclosable to members of the Department of Defense who have a need for the information in the performance of their duties. In addition, the information may be disclosed to Government agencies outside of the Department of Defense.

(b)(6), (b)(3) (10USC130b)

SIGNATURE OF INDIVIDUAL BEING INTERVIEWED

(b)(6), (b)(3) (10USC130b)

SIGNATURE OF INVESTIGATING OFFICER

DATE

# SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

**PRIVACY ACT STATEMENT**

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| BAF | 2007 02 27 | 1901 Z | |

5. LAST NAME, FIRST NAME, MIDDLE NAME (b)(6), (b)(3) (10USC130b) 6. SSN 7. GRADE/STATUS

8. ORGANIZATION OR ADDRESS

9.

I, (b)(6), (b)(3) (10USC130b), WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

Engine shop NCOIC in OEF. I have been with my unit for 4 years, and supported 3 trips to OEF.

On ~~19 Feb 07~~ 21 Feb 07 I was informed that one of our aircraft had major damage to both engines 1st stage blades. On ~~21 Feb 07~~ 22 Feb 07 I flew to the site and replaced them, because the damage was not repairable on the aircraft.

When I inspected the engines, I found damage that I have never seen before. One of the blades was Bent forward, and several others were nicked and chewed up. I replaced the #2 engine on aircraft 476, and both the #1 and #2 on 469.

I wash the engines in a desert environment about every 20 flight Hours, depending on if they have flown in severe dust or dirt.

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 2 PAGES |
|---|---|---|
| | (b)(6), (b)(3) | |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF ____ TAKEN AT ____ DATED ____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.*

STATEMENT OF (b)(6), (b)(3) (10USC130b) TAKEN AT 1901 Z DATED 27 FEB 07

9. STATEMENT *(Continued)*

(b)(6)

NOTHING FOLLOWS

**AFFIDAVIT**

I, (b)(6), (b)(3) (10USC130b), HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 2. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

(b)(6), (b)(3) (10USC130b)
*(Signature of Person Making Statement)*

WITNESSES:

ORGANIZATION OR ADDRESS

ORGANIZATION OR ADDRESS

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 27 day of FEB, 2007 at BAF

(b)(6), (b)(3) (10USC130b)
*(Signature of Person Administering Oath)*

*(Typed Name of Person Administering Oath)*

*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT

PAGE 2 OF 2 PAGES

*DA FORM 2823, NOV 2006* APD V1.00

PRIVACY ACT STATEMENT

**Authority:** The general authority for soliciting this information is 10 USC § 3012. More specific authority(ies) may exist.

**Purpose:** The purpose(s) for soliciting this information is to obtain facts and make recommendations to assist the commander in determining what action to take with regard to:

MISHAP OF (b)(1)1.4a 17 FEB 07 AND THE RESULTING CASUALTIES

**Failure to disclose:**

*For soldiers and civilians not being advised of their Article 31, UCMJ rights and civilians not being advised of the 5th Amendment rights:* **Providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or Army regulations or applicable civilian personnel regulations.**

*For soldiers and civilians being advised of their Article 31, UCMJ rights and civilians being advised of the 5th Amendment rights:* **Providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than that certain information might not otherwise be available to the commander for his or her decision in this matter.**

**Routine Uses:** Any information you provide is disclosable to members of the Department of Defense who have a need for the information in the performance of their duties. In addition, the information may be disclosed to Government agencies outside of the Department of Defense.

(b)(6), (b)(3) (10USC130b)

SIGNATURE OF INDIVIDUAL BEING INTERVIEWED

(b)(6), (b)(3) (10USC130b)

SIGNATURE OF INVESTIGATING OFFICER

DATE 27 FEB 07 0708 Z

STATEMENT OF (b)(6), (b)(3) (10USC130b) TAKEN AT 1313 Z DATED 27 FEB 07

9. STATEMENT *(Continued)*

When you became aware of the problem with (b)(1)1.4a what actions did your aircraft perform immediately after hearing of the situation and actions taken after you left the scene. What specific roles did you perform?

Began looking for a landing area. didn't find one until (b)(1) 1.4a landed (b)(1) 1.4a and worked to keep the aircraft in a state of Readiness, left Ramp.

Are you aware of any issues with the reliability of the aircrafts engines?

no

Do you have anything further you would like to add?

No

**AFFIDAVIT**

I, (b)(6), (b)(3) (10USC130b), HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 2. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

(b)(6), (b)(3) (10USC130b)

*(Signature of Person Making Statement)*

WITNESSES:

ORGANIZATION OR ADDRESS

ORGANIZATION OR ADDRESS

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 27 day of FEB, 2007 at 1313 Z

(b)(6), (b)(3) (10USC130b)

*(Signature of Person Administering Oath)*

*(Typed Name of Person Administering Oath)*

*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT

PAGE OF PAGES

# SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG

## PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 *(SSN)*.

**PRINCIPAL** To provide commanders and law enforcement officials with means by which information may be accurately identified.

**ROUTINE USES:** Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval.

**DISCLOSURE:** Disclosure of your social security number is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| BAF DFE | 20070227 | 1109 | |

5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS
(b)(6), (b)(3) (10USC130b)

8. ORGANIZATION OR ADDRESS
(b)(1)1.5a

9. I, (b)(6), (b)(3) (10USC130b), WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

Background information.

1. Overall flt time
2. MH47D _______ MH47E 800 hrs.
3. Years in Avn 6 yrs
4. Years in 160th 2 yrs.
5. Number of deployments and months in: Iraq 0/0 Afghan 2/10

Pre-mission. Summarize pre-mission planning to include what the mission was, length of time between warning order to execution, whether rehearsals were conducted, and what aspects of the mission were you most concerned about.

Mission was to drop off personel to capture/kill someone in the alqaida network, about 2 hours between warning order to execution - only concern was exfil.

During the briefing what aspect(s) were stressed more than others?

exfil.

Pilots: According to your performance planning how would the loss of an engine affect your ability to maintain flight or perform certain maneuvers required by the mission?

Mission Execution. Briefly summarize the mission from aircraft crank to when you first became aware of the problem with (b)(1)1.4a How did you first find out? Describe your aircrafts airspeed, altitude and the weather conditions at this time.

Tookoff (b)(1) 1.4a Hit weather and the (b)(1)1.4a Radioed that they had a Engine failure. Airspeed was slow, low altitude and the worst weather Ive flown in, weather Rapidly Degraded, could only see the Rotor Blades Rain on the Rotor Blades (HALO) guns began to Ice and food screens were Iced.

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 2 PAGES |
|---|---|---|
| | (b)(6), (b)(3) (10USC130b) | |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF ___ TAKEN AT ___ DATED ___*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.*

PRIVACY ACT STATEMENT

**Authority:** The general authority for soliciting this information is 10 USC § 3012. More specific authority(ies) may exist.

**Purpose:** The purpose(s) for soliciting this information is to obtain facts and make recommendations to assist the commander in determining what action to take with regard to:

MISHAP OF (b)(1)1.4a 17 FEB 2007 AND THE RESULTING CASUALTIES

**Failure to disclose:**

*For soldiers and civilians not being advised of their Article 31, UCMJ rights and civilians not being advised of the 5th Amendment rights:* **Providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or Army regulations or applicable civilian personnel regulations.**

*For soldiers and civilians being advised of their Article 31, UCMJ rights and civilians being advised of the 5th Amendment rights:* **Providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than that certain information might not otherwise be available to the commander for his or her decision in this matter.**

**Routine Uses:** Any information you provide is disclosable to members of the Department of Defense who have a need for the information in the performance of their duties. In addition, the information may be disclosed to Government agencies outside of the Department of Defense.

(b)(3)(10USC130b), (b)(6)

ED

SIGNATURE OF INVESTIGATING OFFICER

DATE 27 FEB 2007

STATEMENT OF ______ TAKEN AT ______ DATED ______

9. STATEMENT *(Continued)*

AND BLDGS IN AREA DURING ATTEMPT CK2 OVERTOOK CK1 W/OUT REALIZING IT IMMEDIATELY ONCE RECOGNIZED (b)(1)1.4a BECAME FLT LD. (b)(1)1.4a SYMBOL ICED (ABOUT 1½") WHICH GAVE GHOST (b)(6) (ERRONEOUS) CLIMB INDICATIONS. PIC DECIDED TO (b)(1)1.4a (b)(1)1.4a ASSUMED LEAD PRIOR TO LANDING. (b)(1)1.4a MADE REPEATED CALLS TO (b)(1)1.4a WITHOUT A RESPONSE.

When you became aware of the problem with (b)(1)1.4a what actions did your aircraft perform immediately after hearing of the situation and actions taken after you left the scene. What specific roles did you perform?

Are you aware of any issues with the reliability of the aircrafts engines?

THINKS BEST ENGINES

ONLY KNOWS OF 2 INCIDENTS INCLUDING THIS ONE. 1ST INCIDENT WAS ON HIS AIRCRAFT AS THE AIRCRAFT SHUT DOWN. DOES NOT RECALL CAUSE OR DETERMINATION FOR ENG FAILURE. DOES NOT RECALL TAIL #

Do you have anything further you would like to add?

POST FLT FOUND ABOUT 1½" OF ICE ON COMBINING TRANSMISSION (C-BOX) LOCATED FWD OF REAR/AFT XMSN.

AFFIDAVIT

I (b)(3)(10USC130b), (b)(6) ______, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 2. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

(b)(3)(10USC130b), (b)(6)

*(Signature of Person Making Statement)*

WITNESSES:

ORGANIZATION OR ADDRESS

ORGANIZATION OR ADDRESS

Subscribed and sworn to before me, a person authorized by law to administer oaths, this ______ day of ______, ______ at ______

(b)(3)(10USC130b), (b)(6)

*(Signature of Person Administering Oath)*

*(Typed Name of Person Administering Oath)*

*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT | PAGE OF PAGES

# SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

## PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 *(SSN)*.

**PRINCIPAL** To provide commanders and law enforcement officials with means by which information may be accurately identified.

**ROUTINE USES:** Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval.

**DISCLOSURE:** Disclosure of your social security number is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| BAF | 2007 02 27 | 1010 Z | |

5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS
(b)(3)(10USC130b), (b)(6)

(b)(1)1.4a FTCKY 42223

9. (b)(3)(10USC130b), (b)(6)

I, ________, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

Background information.
1. Overall flt time 1,300
2. MH47D ______ MH47E 1300
3. Years in Avn 9yrs. 4mo
4. Years in 160th 9yrs
5. Number of deployments and months in: Iraq 1/4 Afghan 7/36

Pre-mission. Summarize pre-mission planning to include what the mission was, length of time between warning order to execution, whether rehearsals were conducted, and what aspects of the mission were you most concerned about.

RTN TO BAF FROM (b)(1) 1.4a DOESN'T REMEMBER CEILING OR VIS. CARRYING 16 PAX. CREW 7 W/ MEDIC. (b)(1)1.4a A/C HAS 2 BAGS OF SURVIVAL GEAR AND 1 BAG OF TRAUMA. (b)(1)1.4a WAS DESIGNATED CASEVAC. ALL CREW PRC 112 ~~GA~~ AND 1 SAT PHONE AND 1 EMITTER ON A/C. WX A CONSIDERATION (b)(6) BUT SHOULD CLEAR BY BAF.

During the briefing what aspect(s) were stressed more than others? NONE

Pilots: According to your performance planning how would the loss of an engine affect your ability to maintain flight or perform certain maneuvers required by the mission?

NO NOT EVEN FOR LEVEL FLT W/ 15 PAX AND 8000 lbs OF FUEL

Mission Execution. Briefly summarize the mission from aircraft crank to when you first became aware of the problem with (b)(1) 1.4a How did you first find out? Describe your aircrafts airspeed, altitude and the weather conditions at this time.

4-5 mi VIS. 110 KTS 200-300 AGL FLYING ECHELON LEFT W/ 5 ROTOR DISKS BETWEEN (b)(1)1.4a AND (b)(1)1.4a BECAME BOXED IN AND O/O WX A/C SEPARATED BEGAN FLYING IMC TFTA RADIO CALL THAT "FLT LD (b)(1)1.4a HAS #2 ENG FAILURE" THINKS CK1 ADVISED TO LAND CHALK 1 CALLED TOC WX ADVISED THAT SHOULD BREAK THROUGH. THINKS IN WX 15-20 MIN A/C BEGAN TO HAVE ICE ON GUNS AND BLADES (BLADES HAD VISIBLE ICE) SAW NO ICE ON THE FOD SCREENS. SOP TO PREVENT ENG ICING IS REMOVE ENG INLET SCREEN TO ALLOW AIR TO ENTER ENG EVEN IF FRONT PARTICLE SCREEN BECOMES ICED OVER. HIS FIRST IN CONDITIONS THAT BAD. (b)(1)1.4a CONTINUED FLYING W/ CK1 FOR ABOUT 10 MIN. WHEN DIDN'T HEAR ANYTHING ATTEMPTED TO LAND BUT COULD NOT CEILING WAS ABOUT 100 FT AGL

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT (b)(6) | PAGE 1 OF ______ PAGES |
|---|---|---|

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT ______ TAKEN AT ______ DATED ______*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.*

# PRIVACY ACT STATEMENT

**Authority:** The general authority for soliciting this information is 10 USC § 3012. More specific authority(ies) may exist.

**Purpose:** The purpose(s) for soliciting this information is to obtain facts and make recommendations to assist the commander in determining what action to take with regard to:

MISHAP OF (b)(1)1.4a 17 FEB 2007 AND THE RESULTING CASUALTIES

**Failure to disclose:**

*For soldiers and civilians not being advised of their Article 31, UCMJ rights and civilians not being advised of the 5th Amendment rights:* **Providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or Army regulations or applicable civilian personnel regulations.**

*For soldiers and civilians being advised of their Article 31, UCMJ rights and civilians being advised of the 5th Amendment rights:* **Providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than that certain information might not otherwise be available to the commander for his or her decision in this matter.**

**Routine Uses:** Any information you provide is disclosable to members of the Department of Defense who have a need for the information in the performance of their duties. In addition, the information may be disclosed to Government agencies outside of the Department of Defense.

(b)(3)(10USC130b), (b)(6)

S... VIEWED

S...

DATE 27 FEB 07

**9. STATEMENT** *(Continued)*

When you became aware of the problem with ██████ what actions did your aircraft perform immediately after hearing of the situation and actions taken after you left the scene. What specific roles did you perform? ████ *downloaded mission equipment* (██████ *etc.) we went to the site and loaded up casualties we then departed for* ████ *downloaded casualties we repositioned the aircraft to parking and shut down.*

Are you aware of any issues with the reliability of the aircrafts engines? *No*

Do you have anything further you would like to add? *No*

---

**AFFIDAVIT**

I, ██████████████ , HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE _2_ . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

████████████████
(Signature of Person Making Statement)

WITNESSES:

_____

_____

ORGANIZATION OR ADDRESS

_____

_____

ORGANIZATION OR ADDRESS

Subscribed and sworn to before me, a person authorized by law to administer oaths, this _____ day of _____ , _____

at _____

_____
(Signature of Person Administering Oath)

_____
(Typed Name of Person Administering Oath)

_____
(Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT    ████████    PAGE _2_ OF _2_ PAGES

**PAGE 3, DA FORM 2823, DEC 1998**    USAPA V1.01

# SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

## PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 *(SSN)*.

**PRINCIPAL** To provide commanders and law enforcement officials with means by which information may be accurately identified.

**ROUTINE USES:** Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval.

**DISCLOSURE:** Disclosure of your social security number is voluntary.

| 1. LOCATION | 2. DATE *(YYYYMMDD)* | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| BAF | 20070227 | 0950 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| (b)(3)(10USC130b), (b)(6) | | |

8. ORGANIZATION OR ADDRESS
(b)(1)1.4a

9. I, (b)(3)(10USC130b), (b)(6), WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

Background information.
1. Overall flt time 250
2. MH47D 0 MH47E 250
3. Years in Avn 1
4. Years in 160th 1
5. Number of deployments and months in: Iraq 0/0 Afghan 1/2

Pre-mission. Summarize pre-mission planning to include what the mission was, length of time between warning order to execution, whether rehearsals were conducted, and what aspects of the mission were you most concerned about.

2 days prior we were briefed that we would depart (b)(1)1.4a and return to BAF.

During the briefing what aspect(s) were stressed more than others? No part of the mission was stressed more than normal

Pilots: According to your performance planning how would the loss of an engine affect your ability to maintain flight or perform certain maneuvers required by the mission?

Mission Execution. Briefly summarize the mission from aircraft crank to when you first became aware of the problem with (b)(1)1.4a How did you first find out?
Describe your aircrafts airspeed, altitude and the weather conditions at this time.

We cranked the aircraft with no problems and departed (b)(1)1.4a as a flight of three about 30 min into the flight we hit bad weather with no visibility [redacted] reported icing as well as right jum. We descended to 300 ft still icing and visibility were bad and descended to 100 ft. Shortly after [redacted] reported #2 Eng fail (b)(1)1.4a ~~[illegible]~~ attempted to land but continued to Ghazni due to visibility. when in clouds I turned my lip light on and discovered ICing on the minigun

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 2 PAGES |
|---|---|---|
| | (b)(6) | |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT ____ TAKEN AT ____ DATED ____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.*

# PRIVACY ACT STATEMENT

**Authority:** The general authority for soliciting this information is 10 USC § 3012. More specific authority(ies) may exist.

**Purpose:** The purpose(s) for soliciting this information is to obtain facts and make recommendations to assist the commander in determining what action to take with regard to:

MISHAP OF (b)(1)1.4a 17 FEB 2007 AND THE RESULTING CASUALTIES

**Failure to disclose:**

*For soldiers and civilians not being advised of their Article 31, UCMJ rights and civilians not being advised of the 5th Amendment rights:* **Providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or Army regulations or applicable civilian personnel regulations.**

*For soldiers and civilians being advised of their Article 31, UCMJ rights and civilians being advised of the 5th Amendment rights:* **Providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than that certain information might not otherwise be available to the commander for his or her decision in this matter.**

**Routine Uses:** Any information you provide is disclosable to members of the Department of Defense who have a need for the information in the performance of their duties. In addition, the information may be disclosed to Government agencies outside of the Department of Defense.

(b)(3)(10USC130b), (b)(6)

ED

SIGNATURE OF INVESTIGATING OFFICER

DATE

STATEMENT OF (b)(3)(10USC130b), (b)(6) TAKEN AT 1430 Z DATED 27 FEB 07

9. STATEMENT *(Continued)*

When you became aware of the problem with (b)(1)1.4a what actions did your aircraft perform immediately after hearing of the situation and actions taken after you left the scene. What specific roles did you perform?

We slowed down and began looking for a suitable landing area. We attempted a landing but due to visibility and location headed on to (b)(1) 1.4a

Are you aware of any issues with the reliability of the aircrafts engines?

No

Do you have anything further you would like to add?

No.

When we initialy flew over the aircraft. It appeared mostly intact just smooshed down, it had no real skid marks like it fell straight out of the sky.

AFFIDAVIT

I, (b)(3)(10USC130b), (b)(6), HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 2. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

(b)(3)(10USC130b), (b)(6)
*(Signature of Person Making Statement)*

WITNESSES:

ORGANIZATION OR ADDRESS

ORGANIZATION OR ADDRESS

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 27 day of FEB, 2007 at BAF

(b)(3)(10USC130b), (b)(6)
*(Signature of Person Administering Oath)*

*(Typed Name of Person Administering Oath)*

*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT (b)(6)

PAGE 2 OF 2 PAGES

## SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

### PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 *(SSN)*.

**PRINCIPAL** To provide commanders and law enforcement officials with means by which information may be accurately identified.

**ROUTINE USES:** Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval.

**DISCLOSURE:** Disclosure of your social security number is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| Bagram | 20070227 | 09502 | |

5. (b)(3)(10USC130b), (b)(6)

8. ORGANIZATION OR ADDRESS (b)(1)1.5a

9. I, (b)(3)(10USC130b), (b)(6), WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

Background information.
1. Overall flt time 300
2. MH47D ______ MH47E 300
3. Years in Avn 5
4. Years in 160th 2
5. Number of deployments and months in: Iraq 1 / 12 Afghan 2 / 05 (b)(6)

Pre-mission. Summarize pre-mission planning to include what the mission was, length of time between warning order to execution, whether rehearsals were conducted, and what aspects of the mission were you most concerned about.

Our Mission brief was 2 days prior, we were redeploying to Baf. Crew brief was conduckt prior to leaving (b)(1) 1.4a

During the briefing what aspect(s) were stressed more than others?

Pilots: According to your performance planning how would the loss of an engine affect your ability to maintain flight or perform certain maneuvers required by the mission?

Mission Execution. Briefly summarize the mission from aircraft crank to when you first became aware of the problem with (b)(1) 1.4a How did you first find out?
Describe your aircrafts airspeed, altitude and the weather conditions at this time.

We ran up the aircraft, (b)(1)1.4a went to (b)(1) 1.4a droped of people came back and we departed for BAF. Aproximately 30min into flight we went into the clouds. We then noticed Icing and dropped to 300 Ft AGL and TF flight. We then went to 200ft followed by 100 Ft due to icing. Then we heard over the radio (b)(1)1.4a Eng fail. they said which one but I cant remember. When it happened we were around 110 Knots and Slowed to 90 knots After hearing problem. I Did see halo indicating Icing on blades, we were the lowest altitude of the three birds.

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 2 PAGES |
|---|---|---|
| | (b)(6) | |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT ______ TAKEN AT ______ DATED ______*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.*

# PRIVACY ACT STATEMENT

**Authority:** The general authority for soliciting this information is 10 USC § 3012. More specific authority(ies) may exist.

**Purpose:** The purpose(s) for soliciting this information is to obtain facts and make recommendations to assist the commander in determining what action to take with regard to:

MISHAP OF (b)(1)1.4a 17 FEB 07 AND THE RESULTING CASUALTIES

**Failure to disclose:**

*For soldiers and civilians not being advised of their Article 31, UCMJ rights and civilians not being advised of the 5th Amendment rights:* **Providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or Army regulations or applicable civilian personnel regulations.**

*For soldiers and civilians being advised of their Article 31, UCMJ rights and civilians being advised of the 5th Amendment rights:* **Providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than that certain information might not otherwise be available to the commander for his or her decision in this matter.**

**Routine Uses:** Any information you provide is disclosable to members of the Department of Defense who have a need for the information in the performance of their duties. In addition, the information may be disclosed to Government agencies outside of the Department of Defense.

(b)(3)(10USC130b), (b)(6)

SIGNATURE OF INVESTIGATING OFFICER

DATE

STATEMENT OF [redacted] TAKEN AT 1417 DATED 27 FEB 07

9. STATEMENT *(Continued)*

When you became aware of the problem with [redacted] what actions did your aircraft perform immediately after hearing of the situation and actions taken after you left the scene. What specific roles did you perform?

Monitored radios, informed higher, scanned the 3 o'clock to 9 o'clock areas. We landed, transloaded medical equipment and personnel and took on fuel. We departed and landed at the crash site. I exited the aircraft to assist with casualty transload. We departed the crash site and landed at [redacted] We transloaded all casualties, took fuel and departed for the crash site again, but were called off so we landed at [redacted]

Are you aware of any issues with the reliability of the aircrafts engines?

No

Do you have anything further you would like to add?

[redacted] We transported 5 wounded and 7 expectent from the crash site to [redacted] When I got onto the crach site I noticed the aircraft was mostly upright, but had a slight nose low attitude. I had to step down into the cabin through the right gun door. The #2 fuel tank appeared to still be attached as was the #2 engine and both Pylons. The blades were no longer attached to the FWD head. The landing gear and probe were not visible. At [redacted] I performed a through flight inspection and noticed a bead of ice approximately a half inch wide, 1-2 mm thick running from the root end of the blades to the tip. The FOD screens were clear as were the centrifugal droopstop on the afthead.

**AFFIDAVIT**

I, [redacted], HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 2. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFL[redacted]

[redacted]

*(Signature of Person Making Statement)*

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 27 day of FEB, 2007 at BAF

ORGANIZATION OR ADDRESS

*(Signature of Person Administering Oath)*

*(Typed Name of Person Administering Oath)*

ORGANIZATION OR ADDRESS

*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT [redacted]

PAGE 2 OF 2 PAGES

## SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

### PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 *(SSN)*.

**PRINCIPAL** To provide commanders and law enforcement officials with means by which information may be accurately identified.

**ROUTINE USES:** Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval.

**DISCLOSURE:** Disclosure of your social security number is voluntary.

| 1. LOCATION | 2. DATE *(YYYYMMDD)* | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| Bagram | 20070227 | 0950 Z | |

(b)(3)(10USC130b), (b)(6)

8. ORGANIZATION OR ADDRESS (b)(1)1.4a

9. (b)(3)(10USC130b), (b)(6)

I, ________________, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

Background information.
1. Overall flt time 440hrs
2. MH47D ______ MH47E 469
3. Years in Avn 4
4. Years in 160th 2
5. Number of deployments and months in: Iraq __/__ Afghan 2/5

Pre-mission. Summarize pre-mission planning to include what the mission was, length of time between warning order to execution, whether rehearsals were conducted, and what aspects of the mission were you most concerned about.
Deploy to (b)(1) 1.4a conduct infil/exfil mission and return to BAF. Detailed air mission brief before. Icing concerned me the most.

During the briefing what aspect(s) were stressed more than others?
Infil, ground maneuver and exfil.

Pilots: According to your performance planning how would the loss of an engine affect your ability to maintain flight or perform certain maneuvers required by the mission?

Mission Execution. Briefly summarize the mission from aircraft crank to when you first became aware of the problem with (b)(1) 1.4a How did you first find out?
Describe your aircrafts airspeed, altitude and the weather conditions at this time.
Departed (b)(1) 1.4a as flight of 3, all systems were normal. Entered an area of weather. Climbed to MEA, &entered icing conditions, descended to 300' CALT with TF/TA rador, descended to 100' CALT with TF/TA rador. (b)(1)1.4a announced engine failure over one of the radios. We were probably around 100' AGL, 90 Knots indicated in clouds. After departure from (b)(1) 1.4a we encountered a 30 Knot headwind as indicated by the difference in ground speed + airspeed. I ~~saw~~ noticed precipitation coming in from the window and trace amounts of icing on the lower FOD screen of the #2 engine. I did not notice ice build up on my 240 barrel or the fuel Jettison tube on the #2 side. I heard other crew talking about halo on the blades, but due to scintillation I was unable to view this through NVGs.

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT (b)(6) | PAGE 1 OF 2 PAGES |
|---|---|---|

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT ____ TAKEN AT ____ DATED ____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.*

PRIVACY ACT STATEMENT

**Authority:** The general authority for soliciting this information is 10 USC § 3012. More specific authority(ies) may exist.

**Purpose:** The purpose(s) for soliciting this information is to obtain facts and make recommendations to assist the commander in determining what action to take with regard to:

MISHAP OF (b)(1)1.4a 17 FEB 2007 AND THE RESULTING CASUALTIES

**Failure to disclose:**

*For soldiers and civilians* *not being advised of their Article 31, UCMJ rights and civilians not being advised of the 5th Amendment rights:* **Providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or Army regulations or applicable civilian personnel regulations.**

*For soldiers and civilians being advised of their Article 31, UCMJ rights and civilians being advised of the 5th Amendment rights:* **Providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than that certain information might not otherwise be available to the commander for his or her decision in this matter.**

**Routine Uses:** Any information you provide is disclosable to members of the Department of Defense who have a need for the information in the performance of their duties. In addition, the information may be disclosed to Governm (b)(3)(10USC130b), (b)(6) Defense.

SIGNATURE OF INVESTIGATING OFFICER

DATE 27 FEB 07

**9. STATEMENT** *(Continued)*

When you became aware of the problem with ██████ (b)(1) 1.4a what actions did your aircraft perform immediately after hearing of the situation and actions taken after you left the scene. What specific roles did you perform?

Slaved back. Tried to find an area to land and coordinate assistance

After confirmation of accident, ct ██ (b)(1) 1.4a set ACFT up to perform Casevac 3 medics - 1 FLT medic, ██ (b)(1) 1.4a medics w/ litters aid bags skedco's etc. Arrived on scene and Evacuated 5 survivors and 7 casualties.

Are you aware of any issues with the reliability of the aircrafts engines?

No.

Do you have anything further you would like to add?

At ████ (b)(1) 1.4a received priority to Medevac pad. Landed and offloaded casualties immediately with aid from CSH.

Each ACFT is equipped with 2 EA survival Rucks w/ 3 sleeping bags, long underwear, hats, gloves, Food, water, Fire starting equip. Each Ruck will support 5 personnel. This is in addition to the 7 first aid kits on board.

D² conducts desert Maint including ~~test~~ ENG Wash at predetermined intervals.

████ (b)(3)(10USC130b), (b)(6)

**AFFIDAVIT**

I, _____, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE __2__. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUEN██ (b)(3)(10USC130b), (b)(6)

_____
(Signature of Person Making Statement)

WITNESSES:

_____

_____
ORGANIZATION OR ADDRESS

_____

_____
ORGANIZATION OR ADDRESS

Subscribed and sworn to before me, a person authorized by law to administer oaths, this __27__ day of __FEB__, __2007__ at __BAF__

_____
(Signature of Person Administering Oath)

_____
(Typed Name of Person Administering Oath)

_____
(Authority To Administer Oaths)

INITIALS OF PER██ (b)(6) ██ G STATEMENT

PAGE __2__ OF __2__ PAGES

# SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

**PRIVACY ACT STATEMENT**

**AUTHORITY:** Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 *(SSN)*.
**PRINCIPAL** To provide commanders and law enforcement officials with means by which information may be accurately identified.
**ROUTINE USES:** Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval.
**DISCLOSURE:** Disclosure of your social security number is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| BAF | 2007 02 27 | | |

5. LAST NAME, FIRST NAME, MIDDLE NAME (b)(3)(10USC130b), (b)(6) 6. SSN 7. GRADE/STATUS

8. ORGANIZATION OR ADDRESS (b)(1)1.4a

9. I, (b)(3)(10USC130b), (b)(6), WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

Background information.
1. Overall flt time 2000+ hrs
2. MH47D ______ MH47E 1000+
3. Years in Avn 9 yrs
4. Years in 160th 4+
5. Number of deployments and months in: Iraq / Afghan 9/30

Pre-mission. Summarize pre-mission planning to include what the mission was, length of time between warning order to execution, whether rehearsals were conducted, and what aspects of the mission were you most concerned about.

Mission was to RTB @ BAF on or about 2030z. Wx was good.

During the briefing what aspect(s) were stressed more than others?

NONE - Standard brief

Pilots: According to your performance planning how would the loss of an engine affect your ability to maintain flight or perform certain maneuvers required by the mission?

Mission Execution. Briefly summarize the mission from aircraft crank to when you first became aware of the problem with (b)(1) 1.4a How did you first find out?
Describe your aircrafts airspeed, altitude and the weather conditions at this time.

2030z departure - Normal. Ran into Wx about 30-45 min after departure. Conducted TF seperation and climbed to MEA. (b)(1)1.4a in heavy icing. Descended to 300 ft TF ctr. Still icing, descended to 100 ft. During descent to 100 ft Heard (b)(1)1.4a call (b)(1)1.4a has an engine failure". Flt was IMC, Flt slowed back. Attempted to land. Could not find suitable LZ, and elected to fly to (b)(1) 1.4a Arrive (b)(1) 1.4a around 2300z

Discovered ICE on windstreen, windshield Anti ice on - ICE on M-15's but NOT FOD screens.

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT (b)(6) | PAGE 1 OF 2 PAGES |
|---|---|---|

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT ______ TAKEN AT (b)(6) DATED ______*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.*

PRIVACY ACT STATEMENT

**Authority:** The general authority for soliciting this information is 10 USC § 3012. More specific authority(ies) may exist.

**Purpose:** The purpose(s) for soliciting this information is to obtain facts and make recommendations to assist the commander in determining what action to take with regard to:

MISHAP OF (b)(1)1.4a 17 FEB 2007 AND THE RESULTING CASUALTIES

**Failure to disclose:**

*For soldiers and civilians not being advised of their Article 31, UCMJ rights and civilians not being advised of the 5th Amendment rights:* **Providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or Army regulations or applicable civilian personnel regulations.**

*For soldiers and civilians being advised of their Article 31, UCMJ rights and civilians being advised of the 5th Amendment rights:* **Providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than that certain information might not otherwise be available to the commander for his or her decision in this matter.**

**Routine Uses:** Any information you provide is disclosable to members of the Department of Defense who have a need for the information in the performance of their duties. In addition, the information may be disclosed to Government agencies outside of the Department of Defense.

(b)(3)(10USC130b), (b)(6)

[...]VIEWED

SIGNATURE OF INVESTIGATING OFFICER

DATE 27 FEB 07

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF (b)(3)(10USC130b), (b)(6) [redacted] TAKEN AT BAF, AF DATED 27 Feb 07

9. STATEMENT *(Continued)*

Immediately following the call from (b)(1)1.5a [redacted] Flight Lead (FLD) dropped a waypoint ahead on the map and began to look for a place to land the flight. The flight slowed and was able to visually acquire the ground, but visibility was extremely low and many small compounds and/or a village were surrounding us at a hover. I discussed with FLD on the option of turning back. He pointed out that they may still be continuing single engine on course and that turning back may cause us to converge along the route.

Throughout the TF flight I was not aware of any Radar issues or problems with (b)(1)1.4a [redacted] system.

Once the site was located and verified by FW assets [redacted] FLD built a flight plan back to the crash site and we departed single ship after weather cleared significantly and (b)(1) 1.4a [redacted] cleared us to leave. Initially TF was executed but approximately halfway enroute visibility began increasing and at approx 15NM from crash site we could ID lights on the horizon which did turn out to be the crash site.

INITIALS OF (b)(3)(10USC130b), (b)(6) [redacted] PAGE 3 OF 3 PAGES

STATEMENT OF (b)(3)(10USC130b), (b)(6) TAKEN AT BAF AF DATED 27 Feb 2007

9. STATEMENT *(Continued)*

both aircraft shut down and refueled. Mr Offutt and I went in to the TOC and awaited clearance to return to the site. Once we began to clear we flew back single ship, loaded 12 x casualties and transloaded them to the CSH (b)(1) 1.4a After that we refueled and parked on Echo Extension.

When you became aware of the problem with (b)(1)1.4a what actions did your aircraft perform immediately after hearing of the situation and actions taken after you left the scene. What specific roles did you perform?

(b)(1)1.4a immediately looked for a place to land, but was unable. In order to remain as a flight and avoid turning back into (b) (1) 1.4a if they were continuing single engine. 41 and 42 continued to (b)(1) 1.4a I waited about a minute before attempting to contact (b)(1)1.4a I reported to [redacted] and informed them of the situation. I tried on Fox Uniform Victor and Guard, SAT with negative results. (b)(1)1.4a MTX had been intermittent so it did not accurately portray the status.

Are you aware of any issues with the reliability of the aircrafts engines?

I was not aware of any issues prior to the accident.

Do you have anything further you would like to add?

My Callsign was (b)(1)1.4a (AMC) in the jump seat of (b)(1)1.4a The Last TACAN distance I remember reported from (b)(1)1.4a was 4.8 NM from (b)(1)1.4a

Upon separating for TF flight initially at 300' Clearance Altitude, the flight then went to 100' CALT because of evidence of icing.

AFFIDAVIT

I, (b)(3)(10USC130b), (b)(6), HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE ____. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLU(b)(3)(10USC130b), (b)(6)T.

(b)(3)(10USC130b), (b)(6)

*(Signature of Person Making Statement)*

WITNESSES:

ORGANIZATION OR ADDRESS

ORGANIZATION OR ADDRESS

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 27 day of FEB, 2007 at BAF

(b)(3)(10USC130b), (b)(6)

*(Signature of Person Administering Oath)*

*(Typed Name of Person Administering Oath)*

*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEME(b)(3)(10USC130b), (b)(6)

PAGE 2 OF 3 PAGES

# SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

**PRIVACY ACT STATEMENT**

**AUTHORITY:** Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 *(SSN)*.

**PRINCIPAL** To provide commanders and law enforcement officials with means by which information may be accurately identified.

**ROUTINE USES:** Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval.

**DISCLOSURE:** Disclosure of your social security number is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| BAF, AF | 20070227 | 1024 | |

5. LAST NAME, FIRST NAME, MIDDLE NAME (b)(3)(10USC130b), (b)(6)

8. O (b)(1)1.4a

9. I, (b)(3)(10USC130b), (b)(6), WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

Background information.
1. Overall flt time 1000
2. MH47D ______ MH47E 200
3. Years in Avn 6 yrs
4. Years in 160th 1.5
5. Number of deployments and months in: Iraq 1/4 Afghan 3/5

Pre-mission. Summarize pre-mission planning to include what the mission was, length of time between warning order to execution, whether rehearsals were conducted, and what aspects of the mission were you most concerned about.

Full air mission brief, Joint OPORD, Rock drill and numerous coord's with GFC. The biggest concern was the enemy situation and FW asset support.

During the briefing what aspect(s) were stressed more than others?

Complexity and coord of ISR/CAS assets for a very high threat environment.

Pilots: According to your performance planning how would the loss of an engine affect your ability to maintain flight or perform certain maneuvers required by the mission?

With the planned weight and fuel @ TGT area and enroute was 75 KTS as far as I remember. At the lower altitudes I believe single engine capability existed.

Mission Execution. Briefly summarize the mission from aircraft crank to when you first became aware of the problem with (b)(1)1.4a. How did you first find out? Describe your aircrafts airspeed, altitude and the weather conditions at this time. Along the (b)(1) 1.4a without passing any high ground or mountain passes. ~~Red~~ (b)(6)

We departed (b)(1) 1.4a to RTB back to BAF after the original msn was cancelled for intel reasons. Each aircraft had 16 (b)(1) 1.4a on board. We departed after recieving a verbal and faxed wx brief at 2000Z. We proceeded along the standard (b)(1) 1.4a and started to encounter decreasing visibility vic (b)(1) 1.4a Flt executed a TF separation by airspeed and TACAN. Approximately 20 miles from (b)(1) 1.4a and approximately 18 miles from (b)(1) 1.4a stated they had a #2 ENG FAIL. (b)(1)1.4a attempted to land but due to very low vis and the presence of a village or compound we continued to (b)(1) 1.4a After arriving at (b)(1) 1.4a

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 3 PAGES |
|---|---|---|
| | (b)(3)(10USC130b), (b)(6) | |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT ______ TAKEN AT ____ DATED ____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.*

# PRIVACY ACT STATEMENT

**Authority:** The general authority for soliciting this information is 10 USC § 3012. More specific authority(ies) may exist.

**Purpose:** The purpose(s) for soliciting this information is to obtain facts and make recommendations to assist the commander in determining what action to take with regard to:

MISHAP OF ███(b)(1)1.4a███ 17 FEB 07 AND THE RESULTING CASUALTIES

**Failure to disclose:**

For soldiers and civilians _not_ being advised of their Article 31, UCMJ rights and civilians _not_ being advised of the 5th Amendment rights: **Providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or Army regulations or applicable civilian personnel regulations.**

For soldiers and civilians _being_ advised of their Article 31, UCMJ rights and civilians _being_ advised of the 5th Amendment rights: **Providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than that certain information might not otherwise be available to the commander for his or her decision in this matter.**

**Routine Uses:** Any information you provide is disclosable to members of the Department of Defense who have a need for the information in the performance of their duties. In addition, the information may be disclosed to Governm (b)(3)(10USC130b), (b)(6)
Defense.

███████████████████ D

SIGNATURE OF INVESTIGATING OFFICER

DATE

STATEMENT OF (b)(3)(10USC130b), (b)(6) TAKEN AT 1810 Z DATED 27 MAR 2007

9. STATEMENT *(Continued)*

AFFIDAVIT

I, (b)(3)(10USC130b), (b)(6), HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE_____. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY W(b)(3)(10USC130b), (b)(6) EWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUEN T.

*(Signature of Person Making Statement)*

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 27 day of MAR, 2007 at BAF

(b)(3)(10USC130b), (b)(6)

*(Signature of Person Administering Oath)*

ORGANIZATION OR ADDRESS

*(Typed Name of Person Administering Oath)*

ORGANIZATION OR ADDRESS

*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT (b)(6)

PAGE 2 OF 2 PAGES

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF ______ TAKEN AT ______ DATED ______

9. STATEMENT *(Continued)*

INITIALS OF PERSON MAKING STATEMENT

PAGE OF PAGES

# SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

## PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| ISAF | 2007 02 27 | 1910 Z | |

5. (b)(3)(10USC130b), (b)(6)

8. ORGANIZATION OR ADDRESS

9. I, (b)(3)(10USC130b), (b)(6), WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

1. DURING THE MISSION I WAS IN THE (b)(1)1.4a PLANNING BUILDING. TYPICALLY, I MOVE INTO THE JOC, DURING MISSIONS.

2. FOR SINGLE-SHIP OPERATIONS WE BRIEF MINIMUM EQUIPMENT OF BLUE FORCE TRACKING AND OVER-THE-HORIZON COMMS. FOR MULTI-SHIP WE BRIEF MINIMUM OF BLUE FORCE TRACKING AND AT LEAST ONE AIRCRAFT WITH OVER-THE-HORIZON COMMS. WE HAVE FLOWN WITHOUT BLUE FORCE TRACKER IN THE PAST.

3. IN MY OPINION, I BELIEVE (b)(3)(10USC130b), (b)(6) WOULD HAVE ANNOUNCED ENEMY FIRE HAD HE ENCOUNTERED IT. HE WAS FLYING THE AIRCRAFT THAT GOT SHOT DOWN IN JULY Ø6.

NOTHING FOLLOWS

| 10. EXHIBIT | 11. INITIALS (b)(6) OF PERSON MAKING STATEMENT | PAGE 1 OF 1 PAGES |
|---|---|---|

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF ____ TAKEN AT ____ DATED ____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.*

# PRIVACY ACT STATEMENT

**Authority:** The general authority for soliciting this information is 10 USC § 3012. More specific authority(ies) may exist.

**Purpose:** The purpose(s) for soliciting this information is to obtain facts and make recommendations to assist the commander in determining what action to take with regard to:

MISHAP OF (b)(1)1.4a 17 FEB 07 AND THE RESULTING CASUALTIES

**Failure to disclose:**

*For soldiers and civilians not being advised of their Article 31, UCMJ rights and civilians not being advised of the 5th Amendment rights:* **Providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or Army regulations or applicable civilian personnel regulations.**

*For soldiers and civilians being advised of their Article 31, UCMJ rights and civilians being advised of the 5th Amendment rights:* **Providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than that certain information might not otherwise be available to the commander for his or her decision in this matter.**

**Routine Uses:** Any information you provide is disclosable to members of the Department of Defense who have a need for the information in the performance of their duties. In addition, the information may be disclosed to Government agencies outside of the Department of Defense.

(b)(3)(10USC130b), (b)(6)

SIGNATURE OF INVESTIGATING OFFICER

DATE 27 FEB 07

STATEMENT OF [redacted: (b)(3)(10USC130b), (b)(6)] TAKEN AT _WRAMC_ DATED _12 MAR 07_

9. STATEMENT (Continued)

NOTHING FOLLOWS _____

**AFFIDAVIT**

I, [redacted: (b)(3)(10USC130b), (b)(6)] , HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE __2__. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

[redacted: (b)(3)(10USC130b), (b)(6)]

(Making Statement)

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to administer oaths, this _15_ day of _MAR_ , _2007_ at _1230 ES_

_____

[redacted: (b)(6), (b)(3)(10USC130b), (b)(6)]

ORGANIZATION OR ADDRESS

(Signature of Person Administering Oath)

_____

(Typed Name of Person Administering Oath)

ORGANIZATION OR ADDRESS

(Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT [redacted: (b)(6)]

PAGE _2_ OF _2_ PAGES

DA FORM 2823, NOV 2006

APD V1.00

# SWORN STATEMENT

For use of this form, see AR 190-45;the proponent agency is PMG.

PRIVACY ACT STATEMENT

AUTHORITY: Title 10USC Section 301;Title 5 USC Section 2951;E.O. 9397dated November 22,1943 (SSN).
PRINCIPAL PURPOSE: To provide commanders and law enforcement officials with means by which information may be accurately
ROUTINE USES: Your social security number is used as an additional/alternate means of identification to facilitate filing and
DISCLOSURE: Disclosure of your social security number is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| Walter Reed Army Medical Center | 2007/03/13 | 1230 EST | |

(b)(3)(10USC130b), (b)(6)

8. ORGANIZATION OR ADD (b)(1)1.4a Fricky

9. I, (b)(3)(10USC130b), (b)(6) , WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

(b)(6) was in the left pilots seat.
Prior to the flight when the accident occurred we did a short flight to move some ground personnel.

What do you remember about the WX in your crew mission brief?
The WX was clear for the way home.

When and what were the indications that WX had deteriorated during your flight?
I don't remember how long it was into the flight but I lost sight of the ground and the terrain to our sides. The pilots were flying radar ques and so we tried to keep quiet in the back. I didn't see any icing on the outside of the aircraft (I was on the right gun) but I did see ice on the center windshield.

When and how did you know there was something wrong with the aircraft?
I heard the engine go off-line (quiet) and heard the Pilot say that they had lost an engine. The pilot announced that we had lost the number 2 engine and then mentioned something about torque under control. I then went to look out the window and begin scanning for a landing area. The pilot announced rotor droop and we were losing power. I don't remember a lot of the details but the aircraft starting getting crazy. it started to yaw left and right and was acting like it normally does. At that point I went inside to sit on the floor.

What do you remember after the accident?
I woke up hanging out the right gun window, don't ask me how I got there but somehow, someway there I was. I remember hearing guys moving around inside and outside the aircraft. I yelled for someone to cut me down because I was suspended by my monkeytail. Someone cut the monkeytail and dragged me away from the aircraft a litle bit away from the right gun door position. I couldn't feel my lower half and had a hard time breathing. I tried to take off my body armor but only managed to get it halfway off then I lay there in the snow with just the clothes I was wearing until the CSAR or QRF arrived.

Do you remember if any actions by the survivors to get people out?
From where I was laying I couldn't see anything. I remember there was a small fire on the aircraft tha someone put out. A couple of guys got out of the aircraft. There was also a guy with a broken back helping out. There was some yelling from inside the helicopter for help.

NOTHING FOLLOWS-----------------------------------------------

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 2 PAGES |
|---|---|---|
| | (b)(6) | |

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT ____ TAKEN AT ____ DATED ____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.

STATEMENT OF (b)(3)(10USC130b), (b)(6) TAKEN AT 1830 DATED 7 MAR 07

9. STATEMENT *(Continued)*

When you became aware of the problem with (b)(1)1.4a what actions did your aircraft perform immediately after hearing of the situation and actions taken after you left the scene. What specific roles did you perform?

Are you aware of any issues with the reliability of the aircrafts engines?

Do you have anything further you would like to add?

AFFIDAVIT

I, (b)(3)(10USC130b), (b)(6), HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE ____. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

(b)(3)(10USC130b), (b)(6)

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 7 day of MAR, 2007 at FCKY

(b)(6)

ORGANIZATION OR ADDRESS

*(Typed Name of Person Administering Oath)*

(b)(6) ION OR ADDRESS

*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT

PAGE OF PAGES

PRIVACY ACT STATEMENT

**Authority:** The general authority for soliciting this information is 10 USC § 3012. More specific authority(ies) may exist.

**Purpose:** The purpose(s) for soliciting this information is to obtain facts and make recommendations to assist the commander in determining what action to take with regard to:

AIRCRAFT 472 INCIDENT 17 FEB 2007 AND THE RESULTING CASUALTIES

**Failure to disclose:**

*For soldiers and civilians not being advised of their Article 31, UCMJ rights and civilians not being advised of the 5th Amendment rights:* **Providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or Army regulations or applicable civilian personnel regulations.**

*For soldiers and civilians being advised of their Article 31, UCMJ rights and civilians being advised of the 5th Amendment rights:* **Providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than that certain information might not otherwise be available to the commander for his or her decision in this matter.**

**Routine Uses:** Any information you provide is disclosable to members of the Department of Defense who have a need for the information in the performance of their duties. In addition, the information may be disclosed to Govern(b)(3)(10USC130b), (b)(6) Defense.

PRINT NAME

SIGN

SIGNATURE OF INVESTIGATING OFFICER (b)(6)

DATE 9 MAR 07

# SWORN STATEMENT

[REDACTED] Fort Campbell, Kentucy

[REDACTED] TAKEN AT 1430 8 MRS 07 AT FCKY [REDACTED] INITIAL

Background information:
1. Overall flight time: 3600 hours
2. CH-47D: 1128 MH-47E: 1035
3. Years of Avn Service: 15
4. Years in 160th SOAR: 5
5. Number of deployments and months in OEF: 9 rotations/26 months, OIF: 0/0

Pre-mission. Summarize pre-mission planning to include what the mission was, length of time between warning order to execution, whether rehearsals were conducted, and what the aspects of the mission you were most concerned about.

The overall mission was received 24 hours in advance at which time planning and an AMB was conducted. The mission was to depart Bagram AB on 16 Feb 07 fly to [REDACTED] AB, link up with the ground force to conduct additional planning, execute Direct Action type mission on an HVT and RTB to Bagram on completion of mission. On the 16th the target did not develop as planned and the ground force decided to remain at [REDACTED] to execute on the 17th. We were advised by our commander to remain at [REDACTED] with the ground force to execute the following day. The following day a DP (decision point) was set for 1800Z for the target to develop or to cancel the mission. The mission ended up being cancelled. I called back to our TOC to advice the commander that it had been cancelled and let him know that we planned on returning to Bagram. He agreed that we should recover to Bagram. I also talked to our Weather NCO and asked him to email me the weather and told me I would call him for a brief. The en-route weather that he gave me was 6 miles visibility with haze, Scattered at 10000'MSL, Broken at 20000'MSL. Freezing level at 8000' with the possibity of light icing in precipitation. Possibility of isolated thunder storms west of the route in the mountainous area. If that were the actual weather, we would have had at least 1000' AGL and 6 miles visibility the entire route. I gave each PC a copy of the weather and conducted a short update brief prior to moving to the aircraft.

During the initial AMB all areas of the mission are stressed, however since we didn't have the actual grid for the HVT we did not cover actions on at the objective. That was to be covered once the target developed more. IIMC was covered in detail as it always is in all of my AMBs. The overall plan for IIMC was to conduct a TF break up and proceed to VMC conditions.

Performance Planning: Single engine capability varied throughout the flight, but at the point that [REDACTED] called their engine failure the should have been approximately 44000 lbs and 6500 MSL and the would have had a small window of single engine airspeed (75-80 CAS) which would have allow for continued single engine flight at that MSL altitude. However knowing that we were going to climb to our final destination they may have elected to attempt a landing in the valley below them or turn around to lower elevations.

Mission Execution. [REDACTED] light of 3 departed at approximately 2000Z from [REDACTED] Bagram without any problems. Visibility was approximately 5 miles without any ceiling above us, illumination was 0%. About 35 minutes into the flight we were passing [REDACTED] area and started to see some scattered clouds off of the city lighting. Just after that I called for a weather update for [REDACTED] and Bagrham. I was given VFR weather at all locations. About 10 minutes (approx 2050) chalk 2 call me and said that he was losing site of our aircraft. At that point I initiated a TF break up with the flight. I called my CAS as 110 and passed an arrival time to Ghazni of 2150. Each chalk passed their adjusted airspeeds to me as 100 and 90 CAS and continued with the break up procedure. When I noticed that I had a TACAN reading of 3.8 NM from chalk 2 I called the flight for a SITREP from each aircraft and everyone reported operations normal. Shortly after the TF break up I called weather to inform them that we were 0/0 IMC at 6500 MSL with light icing and asked for a weather update at Qalat and Ghazni. Again I was given VMC conditions at both

INITIAL

places. The AMC and I decided to continue to (b)(1) 1.4a rather than turn the flight around (b)(1) 1.4a in IMC conditions assuming that it was VMC (b)(1) 1.4a At about 2120 (b)(1)1.4a called and said that they had an engine failure on their #2 Engine. I acknowledged their transmition, but never heard from them again. I allowed them some time to deal with their emergency and then tried to call them back several times without any contact (b)(6) (AMC) called back to the TOC/JOC and informed them that (b)(1)1.4a had had an engine failure and that we hadn't heard from them since. After not hearing from them for about 10-15 minutes I decided to try to make an approach to the valley floor and hopefully break out at some point and work my way back to (b)(1)1.4a or sit on the ground and wait for the weather to break. I call (b)(1)1.4a to let them know what I was planning and asked them by pass me and continue to Ghazni. I dropped Navigation Reference Point in the valley on the main north/south road 5 mile in front of me and began an approach. I continually updated (b)(1)1.4a with my CAS and distances from known points. We terminated our approach at about 30 feet and had no visual reference with the ground at all. While we were at a hover (b)(1)1.4a was able to make out our IR lights below and to the left of him and he continued up the route towards Ghazni. Additionally while at a hover the AMC and I discussed TFing back down the route to where we thought (b)(1)1.4a had made their final radio call, but we were not sure if they were on the ground or still flying towards us. We decided the best thing would be to continue up the route toward Ghazni, which is what we did. When we arrived at Ghazni the weather was no where near VFR, in fact it was probably 100 foot ceiling and ¼ mile visibility.

A (b)(1) 1.4a the AMC and I went into the TOC to get a SITREP. While we were in the TOC we found out that (b)(1)1.4a was in fact on the ground and had crashed. The JOC had moved an EC130 over the site and had communications with one of the ground force on the helicopter who had managed to get a call off on his IMBTR. Once we knew the location of the helicopter we began coordinating a ground QRF to move to the site and began asking for permission to fly to the site. We were told to wait until the weather improved. Once we heard that an HH-60 had made it in from the south side of the route we asked to launch to support the recovery effort. We departed at 0100 and began to TF to the site. We broke out of the clouds about 3 miles from the site and landed at the HLZ (0145) that was set up by the ground QRF. We evacuated 14 KIA and injured to (b)(1) 1.4a and awaited further instructions.

SWORN STATEMENT of [redacted] derived from interview at 1430 7 MAR 2007 conducted with [redacted]

1. 472 conducted a short air movement of some ground troops then refueled at the FARP at [redacted] where chalks 1 and 2 were waiting.

2. The flight was delayed by one hour. I received an update from our units WX NCO which indicated no change from the previous two emails. We still expected good visibility, ceilings and were advised that West of our flight route there were some isolated thundershowers. It was 0% illumination for the night.

3. In vicinity of [redacted] we began to encounter some scattered clouds and I called our WX again to ask for an update. I received virtually the same WX as I was briefed before. About 5 minutes later we encountered some scattered layers on the ground. We climbed to about 3-400 ft Above ground level (AGL) to get over the obscuration then after a few minutes we could see the ground again. Soon I had my first indication that we were going into clouds when we began to lose sight of the stars. With it being 0 illum I didn't know we were in the clouds until chalk two called that he lost sight of us. I reported that we were experiencing icing and were totally obscured at 6500 feet to the WX NCO. And requested a WX update.

5. I'd it took about 5-10 minutes to go from scattered clouds to 0vis and 0 illumination. I think it was about 15 minutes past [redacted] at this time.

6. Once we were 0/0 I had the flight initiate Terrain Following (TF) separation procedures which increases the distance between aircraft to about two miles. We use TACAN to get the distance between aircraft. Lead has one TACAN setting and all other aircraft use another setting. As a result, lead only has situational awareness of the next closest aircraft. In this case chalk 2.

7. I had called back to verify the separation was going well and chalk 3 reported back that they were getting their separation. Shortly after chalk 3 reported an engine failure. We tried to call them back several times but had no response. I proceeded on course hoping that they were establishing single engine airspeed and would be either able to continue flight briefly or were landing. After about ten minutes and we hadn't heard from them I began to develop courses of action to go back and find out the status of chalk 3 because we should have heard from them by now.

8. We were still flying totally obscured but I tried to land by dropping a navigation reference point and landing to a road. We could see the ground once we descended below 30 feet but we instantly became whited out because of all the snow and aborted the landing. We never saw the road we should have been over. I determined it would be more of a risk for us to fly back down the route due to the risking flying into chalk 3 (who we still did not have any communication with) as it came up the route. So we went to the next possible landing area G________ Which was an FOB with a WX observation site and a FARP. We did not see the FARP until about ¼ mile away then broke out of the clouds at about 50 ft.

[redacted]

9. While we were in the clouds I continued to ask the crewchiefs to check for icing but they reported only a little light icing on the guns and avionics pods.

10. On the PPC we establish an MEA (minimum enroute altitude) which gives us the highest obstacle within 1 mile of course +500 ft.

11. We need to increase the number of weather reporting points in Afghanistan.

BLANK

INIT (b)(6)

# PRIVACY ACT STATEMENT

**Authority:** The general authority for soliciting this information is 10 USC § 3012. More specific authority(ies) may exist.

**Purpose:** The purpose(s) for soliciting this information is to obtain facts and make recommendations to assist the commander in determining what action to take with regard to:

MISHAP OF ███(b)(1)1.4a███   17 FEB 2007 AND THE RESULTING CASUALTIES

**Failure to disclose:**

*For soldiers and civilians not being advised of their Article 31, UCMJ rights and civilians not being advised of the 5th Amendment rights:* **Providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or Army regulations or applicable civilian personnel regulations.**

*For soldiers and civilians being advised of their Article 31, UCMJ rights and civilians being advised of the 5th Amendment rights:* **Providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than that certain information might not otherwise be available to the commander for his or her decision in this matter.**

**Routine Uses:** Any information you provide is disclosable to members of the Department of Defense who have a need for the information in the performance of their duties. In addition, the information may be disclosed to Governme[(b)(3)(10USC130b), (b)(6)] Defense.

███(b)(3)(10USC130b), (b)(6)███

SIGNATURE OF INVESTIGATING OFFICER

DATE  27 FEB 2007

# SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

**PRIVACY ACT STATEMENT**

| | |
|---|---|
| AUTHORITY: | Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 (SSN). |
| PRINCIPAL | To provide commanders and law enforcement officials with means by which information may be accurately identified. |
| ROUTINE USES: | Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval. |
| DISCLOSURE: | Disclosure of your social security number is voluntary. |

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| BAGRAM AB AF APO AE 09354 | 20070227 | 1000 HRS. | |

5. (b)(3)(10USC130b), (b)(6)

8. (b)(1)1.4a

9. FORT CAMPBELL, KY 42223

I, (b)(3)(10USC130b), (b)(6), WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

Background information.
1. Overall flt time APPROX 5000 HOURS
2. MH47D N/A MH47E 1100 HRS
3. Years in Avn
4. Years in 160th
5. Number of deployments and months in: Iraq 4/8 Afghan 5/16

PLANESIDE BRIEF DOES NOT EQUAL EXACT WX BUT NOTHING BRIEFED CAUSED ALARM! CONFIDENT WE WOULD NOT PREVENT MSN COMPLETION

Pre-mission. Summarize pre-mission planning to include what the mission was, length of time between warning order to execution, whether rehearsals were conducted, and what aspects of the mission were you most concerned about.

THE MISSION WAS REDEPLOYMENT OF (b)(1) 1.4a FROM (b)(1) 1.4a TO BAGRAM WHICH WAS PLANNED PRIOR TO LEAVING BAGRAM TO (b)(1) 1.4a UPON BEING RELEASED FROM MISSION SUPPORT AT A PLANESIDE BRIEFING WAS CONDUCTED FOR THE RETURN TRIP. I WAS NOT PARTICULARLY CONCERNED ABOUT ANY ONE ASPECT OF THE RETURN BRIEF.

During the briefing what aspect(s) were stressed more than others? FUEL PLANNING TO COMPENSATE FOR HEADWIND AND HIGHER GWTS AT TAKEOFF AT TAKEOFF. WEATHER WAS ALSO DISCUSSED APPROPRIATELY.

Pilots: According to your performance planning how would the loss of an engine affect your ability to maintain flight or perform certain maneuvers required by the mission? I WOULD NOT HAVE BEEN ABLE TO MAINTAIN LEVEL FLIGHT AT ANY POINT ALONG THE ROUTE IF I WERE TO HAVE LOST POWER FROM ONE ENGINE.

Mission Execution. Briefly summarize the mission from aircraft crank to when you first became aware of the problem with (b)(1)1.4a How did you first find out? Describe your aircrafts airspeed, altitude and the weather con (b)(1) 1.4a

AS THE FLIGHT OF 3 MH-47E'S APPROACHED (b)(1) 1.4a AT HEADING NE ALONG THE ROUTE, [200-300' AGL BEFORE WX] WE ENCOUNTERED RAPIDLY REDUCED FLIGHT VISIBILITY. THE REDUCED VISIBILITY WAS DUE TO SNOW AND MIST WITH A RAPIDLY DECREASING ENROUTE CEILING. [WORST WX FLOWN IN EVER] THIS WAS AT APPROXIMATELY 6200 ft MSL WITH HIGHER TERRAIN AHEAD / 300 ft AGL / -6°c AT (b)(1) 1.4a AT JUST OVER 46,000 LBS GWT. AT APPROXIMATELY 5 MILES NORTH OF (b)(1) 1.4a WHILE TERRAIN FOLLOWING VIA RADAR, ONE (AND ONLY ONE) DISTRESS CALL WAS HEARD ON OUR

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 9 PAGES |
|---|---|---|
| | (b)(6) | |

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT ____ TAKEN AT ____ DATED ____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.

9. STATEMENT *(Continued)* FM RADIO (?? ?? COMMAND) THAT HE HAD EXPERIENCED A #2 ENGINE FAILURE. THERE WERE NO OTHER CALLS THAT I HEARD FROM (b)(1)1.4a

When you became aware of the problem with SUMO43 what actions did your aircraft perform immediately after hearing of the situation and actions taken after you left the scene. What specific roles did you perform?

AS THE PILOT-IN-COMMAND OF CHALK 2, DIRECTLY AHEAD OF (b)(1)1.4a NOW IN IMC CONDITIONS AND TRYING TO STAY HIGH ENOUGH (TF CALT 300ft) SO AS NOT TO BE AN OBSTACLE WARNING FOR (b)(1)1.4a I DECIDED TO CONTINUE STRAIGHT FORWARD ALONG THE ROUTE SO AS NOT TO TURN INTO (b)(1)1.4a WHO I WAS CERTAIN NEEDED AS MUCH MANEUVER ROOM AS POSSIBLE GIVEN THE ZERO VISIBILITY CONDITIONS. I CONSIDERED THIS THE MOST SAFE COURSE OF ACTION AT THE TIME. AFTER A SAFE RECOVERY AT (b)(1) 1.4a I WAS TO BE RESPONSIBLE FOR SITE SECURITY AND SENSITIVE ITEMS RECOVERY.

* Are you aware of any issues with the reliability of the aircrafts engines?

* I AM NOT AWARE OF ANY T-714 ENGINE RELIABILITY ISSUES AS INSTALLED ON THE MH-47E BUT I SET PERSONAL LIMITS UNDER CERTAIN CONDITIONS THAT ARE NOT PUBLISHED BASED SOLELY ON EXPERIENCE WITH THESE ENGINES IN ORDER TO MAINTAIN A SAFE ENGINE DYNAMIC OPERATING ENVIRONMENT. THE LIMITS I SET AND TECHNIQUES I EMPLOY IN MY COCKPIT NEVER INTERFERE WITH MISSION SUCCESS AND ARE USUALLY TRANSPARENT TO THE REST OF THE FLIGHT.

** Do you have anything further you would like to add?

** I HAVE NOTHING FURTHER TO ADD.

PLEASE ADD WHAT YOU FOUND ON ?? AT (b)(1) 1.4a ON REVERSE

**AFFIDAVIT**

I, (b)(3)(10USC130b), (b)(6), HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 9. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLU(b)(3)(10USC130b), (b)(6)

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 1 day of MAR 07 at 1050 Z.

ORGANIZATION OR ADDRESS

(b)(3)(10USC130b), (b)(6)

*(Signature of Person Administering Oath)*

*(Typed Name of Person Administering Oath)*

ORGANIZATION OR ADDRESS

*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT (b)(6)

PAGE 2 OF 9 PAGES

1. WHY 3PS/ [CRAFT]

2. [REDACTED (b)(1) 1.4a]

3. PRE MSN  TF PLANNING

AIR CRAFT COMPLIANCE w/ ROUTE COURSE
LINE.

4. ANTI-ICE REQUIREMENT CHECKS.

5. RADAR GHOSTING    T/ AROUND TIME

6. ICING DESCRIPTION

7. WX BECAME WORSE AT 6 HAZN.

AFTER ARRIVAL AT [REDACTED (b)(1) 1.4a] AS THE PILOT-IN-COMMAND
ASSIGNED TO RECOVER MH-47E FROM [REDACTED (b)(1) 1.4a] TO
BAGRAM, PREFLIGHT INSPECTION PRIOR TO FLIGHT
REVEALED SYMETRICAL SCORING ON THE FIRST STAGE
COMPRESSOR BLADES — DEGREE = EXTREME, AND
ONE THE COMPRESSOR BLADES ON THE #2 ENGINE
WAS VISIBLY BENT OUTWARD TOWARDS THE FRONT
OF THE AIRCRAFT. I REFUSED FLIGHT OF THE
AIRCRAFT BASED ON THE CONDITIONS OF BOTH
ENGINES (EACH ENGINE IN AND OF ITSELF WAS A
HAZARD TO FLIGHT) AND REFERRED TO MAINTENANCE.

PAGE 9

[REDACTED (b)(3)(10USC130b), (b)(6)]

(b)(1)1.4a,g

Norton

(b)(1)1.4a, (b)(1)1.4g

(b)(1)1.4a, (b)(1)1.4g

Blank

Q. WHAT ANTI-ICE CHECKS ARE REQUIRED PRIOR TO FLIGHT IN ICING?

A. DURING THE RUN-UP, PARAGRAPH 8-2-18 STEP 29 OF THE MH-47E OPERATOR'S MANUAL STATES "ANTI-ICE SYSTEM - CHECK AS REQUIRED." THE PITOT AND YAW PORT HEAT SYSTEM, ALONG WITH THE LEFT AND RIGHT PILOTS WINDSHIELD ANTI-ICE WERE CHECKED ON THE GROUND AT ██████████ PRIOR TO FLIGHT.

Q. DESCRIBE THE ICING CONDITIONS ON THE FLIGHT ON 17 FEB 07.

A. HEAVY / SEVERE ICING TO THE POINT OF "GHOST" TERRAIN PAINTED ON RADAR DISPLAY. ZERO VISIBILITY, ZERO LUNAR ILLUMINATION IN A SNOW STORM FROM ██████████. THE WORST WEATHER CONDITION I HAVE ENCOUNTERED IN 20 YEARS OF FLYING.

Q. AFTER ARRIVAL AT ██████████, DID THE WX CONDITIONS CHANGE?

A. YES - APPROXIMATELY 30 MINUTES FOLLOWING A SAFE APPROACH TO ██████████ IN LESS THAN ¼ MILE FLIGHT VISIBILITY, THE WX CONDITIONS WORSENED TO THE POINT WHERE I MOMENTARILY LOST SIGHT OF THE AIRCRAFT PARKED JUST IN FRONT OF ME IN THE FARP (██████████). HEAVY SNOW AND ICE WERE PREVALENT AND A CLEARING TREND STARTED WITH A REDUCTION IN FALLING SNOW AFTER ABOUT 3 HOURS AFTER ARRIVAL AT ██████████.

PAGE 6 OF 9

(b)(3)(10USC130b); (b)(6) ██████████

Blank

(b)(1)1.4a, (b)(1)1.4g





Case 4:07-cv-06396-CW Document 80-6 Filed 05/29/2008 Page 58 of 63

*Figure 9-2-2. Height Velocity Diagram for Safe Landing After Single-Engine Failure (Sheet 3 of 3)*

# HEIGHT VELOCITY DIAGRAM FOR SAFE LANDING AFTER SINGLE-ENGINE FAILURE

NOTE: USE THE FOLLOWING DIAGRAMS WITH THOSE SHOWN ON SHEET 3.

A19665

*Figure 9-2-2. Height Velocity Diagram for Safe Landing After Single-Engine Failure (Sheet 1 of 3)*

of flight, areas available for landing, and S/E capability of the helicopter. Immediately after engine malfunction, the flight engineer should check the engine for the possibility of fire. If required, external cargo should be jettisoned as soon as possible after engine failure. This will help to prevent damage to the helicopter during touchdown and will reduce weight and drag, thereby improving S/E performance.

THRUST CONT lever adjustments will depend on altitude at the time of the engine failure. In cruise flight, fuel may be jettisoned as necessary to maintain altitude. At a hover **below 20** feet, maintain THRUST CONT lever position. At a hover **above 20** feet, THRUST CONT lever should be lowered slightly to maintain at least **96** percent NR. If altitude permits, THRUST CONT lever may be lowered sufficiently to maintain normal NR.

Cyclic inputs will depend on altitude and airspeed. At HIGE, the helicopter should be maintained in a hovering attitude. In forward flight, at low altitude (below 50 feet), when S/E flight is not possible a decelerating attitude should be assumed to dissipate airspeed and aid in cushioning the helicopter. If airspeed is slow and altitude permits, the helicopter should be placed in an accelerating attitude of up to **30°** nose-low to accelerate to the best S/E climb speed. This nose-low attitude should not be used at an extremely low altitude because of reduced reaction time, R/D, and the response of the helicopter. Any time the helicopter assumes a decelerating attitude in close proximity to the ground, avoid rotating the aft gear into the ground at touchdown.

**9-2-7. Single Engine Failure — Low Altitude/Low Airspeed and Cruise.** If an engine fails under conditions that will permit S/E flight, THRUST CONT lever must be adjusted as required to maintain safe NR. Initial THRUST CONT lever reduction will vary from no reduction at zero airspeed **below 20** feet to a significant reduction at higher altitudes and airspeeds. Attempt to maintain at least **96** percent NR. If the helicopter is below the best S/E climb airspeed, forward cyclic must be applied to attain that speed. When at HOGE, forward cyclic pressure must be applied to attain a nose-low attitude of up to **30°** in order to gain airspeed. As airspeed increases to **30** knots, adjust the pitch attitude of the aircraft to accelerate to the best S/E climb speed.

If an engine fails under conditions that **will not** permit S/E flight, the procedures will be essentially the same as for continued flight, except that cyclic pressures are applied to decelerate the helicopter for touchdown, rather than continued acceleration. During deceleration, just before touchdown, avoid rotating the aft landing gear into the ground.

to restart the inoperative engine may be made if there is no evidence of fire or obvious mechanical damage (para. 9-2-8).

*Continued flight is possible:*

1. THRUST CONT lever — Adjust as necessary to maintain NR.
2. External cargo — Jettison (if required).
3. FLT DIR CPLR — Decouple.
4. Fuel — Jettison as necessary.
5. Land as soon as practicable.
6. EMER ENG SHUTDOWN (when conditions permit).

*Continued flight is not possible:*

Land as soon as possible.

**9-2-8. Engine Restart During Flight.**

**WARNING**

**Fire detector and extinguishing systems are not provided for the APU. Crewman must monitor APU area for fire.**

**CAUTION**

**If abnormal indications are present during the restart, shut down the engine immediately.**

1. APU — Start.
2. Access engine instruments control layer by pressing MFD key T4 INST to display INST*.
3. ENG COND lever (inoperative engine) — STOP.
4. FIRE PULL handle — In.
5. All FUEL PUMPS switches — ON.
6. X FEED switch — As required.
7. Starting engine — Perform (affected side).
8. APU — OFF.

**9-2-9. Engine Transmission Clutch Failure to Engage.** An engine transmission clutch failing to engage is most likely to occur when the ENG COND lever is advanced from GND to FLT or during engine start. The indications of an engine transmission clutch failing to engage are: a loss of TQ indication for an engine, or erratic TQ indications for an engine, or failure of the NG of an engine to respond to FADEC control. A sudden high torque clutch engagement may cause severe engine and/or drive train damage. A

Case 4:07-cv-06396-CW Document 80-6 Filed 05/29/2008 Page 61 of 63

## 2-15-13. Standby Attitude Indicator (VGI) Switch.

A VGI (vertical gyro indicator) switch is on the MISC panel located on the upper center portion of the canted console (fig. 2-1-7). VGI switch positions are labeled EMERG and NORM. When the switch is in NORM, the standby attitude indicator operates from the No. 1 vertical gyro. When in EMERG, the standby attitude indicator is operated by the No. 2 vertical gyro. Switching the gyros from NORM to EMERG operation is accomplished by a gyro transfer relay. Failure of the gyro may also result in failure of the associated AFCS. Power to operate the VGI is supplied by the No. 2 DC bus through the NAV CONT VGI circuit breaker on the No. 2 PDP. Aircraft vertical gyro failures are indicated by illumination of the respective VGI. Press-to-test light on the center instrument panel.

## 2-15-14. Standby Turn and Slip Indicator (4-Minute Type).

The standby turn and slip indicator is located on the center instrument panel for use by the pilot and copilot. The indicator is controlled by an electrically actuated gyro. The instrument has a pointer (turn indicator) and a ball (slip indicator). Power to operate the gyros is supplied by the No. 1 DC bus through the NAV TURN & SLIP circuit breaker on the No. 1 PDP.

## 2-15-15. Deleted.

*Figure 2-15-4. Deleted*

## 2-15-15.1. Electronic Standby Instrument System. (GH-3001)

A electronic standby intstrument system (fig. 2-15-4.1) is on the center instrument panel for use by the pilot and copilot. The ESIS (Electronic Standby Instrument System) provides backup Attitude, Air Data and Heading information displays in a manner similar to the primary displays which the unit is designed to backup. The system includes the GH-3001 display unit, MAG-3000 Magnetometer, and the ADC-3000 Air Data Computer. The magnetometer and the air data computer are external sources for the backup display information of heading and air data. Attitude information originates from the display unit's internal sensors. The indicator has an aumtomatic self diagnostics test that starts when power is applied. There are two controls on the indicator to adjust and initiate various display elements; a Menu button and a BARO Knob.

1. M button. Push to access the Menu listing along the bottom portion of the Display Screen. Four line items are visible at a time. Pushing a second time will terminate the menu.
2. BARO knob. The adjustment knob rotates left or right, to scroll and highlight menu options and to adjust values. To select, adjust and finalize the adjustment knob is push in.

Power to operate the electronic standby instrument is supplied by the DC essential bus through the circuit breaker labeled BAI on the No. 2 PDP.

## 2-15-15.2. START-UP AND SELF TEST - Electronic Standby Intrument System

Power application to the ESIS starts an automatic process of self-diagnostics prior to preceding to normal operation. After power applications, the Display Screen will be blank approximately 15 seconds while the tests are performed. If

AIR SPEED DISPLAY AREA
SKY (BLUE)
ATTITUDE AND HEADING DISPLAY AREA
ALTITUDE DISPLAY AREA
SLIP/SKID INDICATOR
ROLL POINTER
ALTITUDE DIGITAL READOUT
AIR SPEED TAPE
VERTICAL SPEED INDICATOR
1,000FT/MIN MARKS
ROLL SCALE (10°,20°,30°,45° AND 60° INDICATORS)
200FT/MIN MARKS
VERTICAL SPEED POINTER
AIR SPEED DIGITAL READOUT
PITCH REFERENCE MARKS STATIONARY
PITCH LADDER
AIRCRAFT SYMBOL ADJUSTABLE TO ± 7° FROM HORIZON
BAROMETRIC SETTING
ADJUSTMENT KNOB
EARTH (BROWN)
DG INDICATOR
HEADING INDEX LINE
MENU ACCESS BUTTON
HEADING TAPE
A72326

*Figure 2-15-4.1. Electronic Standby Instrument System (GH-3001)*

no failures were detected during the Power ON Self Test Mode, the Identification Screen will appear. Should the GH-3001 detect a failure, the Identification Screen will appear with either a clearly stated error message or an error code. Failures that are detected and identified in the Self Test Mode are either System Failures that render the system inoperable or Function Failures that allows the system to operate despite the loss of the affected function.

If no System Failures are detected, the unit will then display the ATT FAIL indication with the message ALIGNMENT IN PROGRESS and a completion timer/counter below the Aircraft Symbol.

Sensor Alignment Mode will reach Normal Operation Mode within three minutes of applying power. During abnormal conditions, such as motion during the Sensor Alignment Mode, the indicator will reset and attempt to reach the Normal Operation Mode within six minutes of applying power. If an in-flight situation warrants the recycle of power to the GH-3001, the aircraft MUST be in a straight and level, non-accelerated flight for the three minute duration to the insure proper Sensor Alignment and to reach Normal Operation Mode.

If sensor alignment is unsuccessful, the message will change to ALIGNMENT FAILURE and the system will not enter the operational mode.

### 2-15-15.3. NORMAL OPERATIONS — Electronic Standby Instrument System

### 2-15-15.4. PREFLIGHT OPERATIONS

All adjustments and various display elements are made via a Menu before takeoff:

1. To access the Menu, press the Menu Access Button located below the Display screen. A menu listing will appear along the bottom portion of the Display Screen. Four line items are visible at a time. Rotate the Adjustment Knob located below and the the right of the Display Screen to scroll and highlight the Menu items. Menu Items that are followed by "..." on the menu listing indicate that an associated Sub-Menu will appear when selected. To select a highlighted Menu item, press the Adjustment Knob located below and to the right of the Display Screen. A Sub-Menu provides for additional adjustments and selections. To select or adjust a value in the Sub-Menu, rotate the Adjustment Knob. To initiate a highlighted Menu item or to finalize an adjusted value press the Adjustment Knob. Menu access will terminate when a setting is initiated or by pressing the Menu Access Button. Menu access termination will occur automatically after 15-20 seconds of inactivity.