1   JAMES W. HUSTON (BAR NO. 115596)
    jhuston@mofo.com
2   ERIN M. BOSMAN (BAR NO. 204987)
    ebosman@mofo.com
3   WILLIAM V. O'CONNOR (BAR NO. 216650)
    woconnor@mofo.com
4   JOANNA E. HERMAN (BAR NO. 227480)
    jeherman@mofo.com
5   MORRISON & FOERSTER LLP
    12531 High Bluff Drive, Suite 100
6   San Diego, California  92130-2040
    Telephone:  858.720 5100
7   Facsimile:   858.720.5188

8   Attorneys for Defendant
    HONEYWELL INTERNATIONAL INC.
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

13  DEBORAH GETZ, et al.,                 Case No.    CV 07-06396 CW

14           Plaintiffs,                  **DEFENDANT HONEYWELL
                                          INTERNATIONAL INC.'S REPLY
15      v.                                IN SUPPORT OF MOTION TO
                                          DISMISS PLAINTIFFS'
16  THE BOEING COMPANY, et al.,           COMPLAINT**

17           Defendants.                  Date:       June 19, 2008
                                          Time:       2:00 p.m.
18                                        Courtroom:  2
                                          Judge:  Hon. Claudia Wilken
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................. 1

II.  HONEYWELL'S MOTION TO DISMISS IS GOVERNED BY RULE 12(B)(1)
     STANDARDS ................................................................................................................. 2

III. THE GOVERNMENT IS IMMUNE FROM SUIT ...................................................... 3

IV.  PLAINTIFFS' COMPLAINT RAISES NONJUSTICIABLE ISSUES AND MUST BE
     DISMISSED UNDER THE POLITICAL QUESTION DOCTRINE ................................... 4

  A.  Plaintiffs' Claims Arise Out Of Military Operations, Which Are Constitutionally
      Committed To The Executive And Legislative Branches (the first *Baker* test) .................. 4

    1.  The Claims Against Honeywell Will Require Re-Examination of Decisions by the
        Military ..................................................................................................................... 4

    2.  The Type of Damages Sought By Plaintiffs Is Not Determinative of Whether the ..........
        Political Question Doctrine Is Implicated ............................................................. 9

  B.  A Lack Of Judicial Standards Requires Dismissal (the second *Baker* test) ...................... 10

  C.  It Is Impossible To Decide This Case Without An Initial Policy Determination of
      Non-Judicial Discretion (the third *Baker* test) ................................................................ 12

  D.  Plaintiffs' Complaint Should Also Be Dismissed Pursuant To The Remaining
      Independent Tests Under *Baker* ...................................................................................... 13

V.   HONEYWELL DOES NOT SEEK AN EXTENSION OF THE POLITICAL
     QUESTION DOCTRINE ............................................................................................. 13

VI.  CONCLUSION ............................................................................................................. 15

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Aktepe v. United States,*
    105 F.3d 1400 (11th Cir. 1997) ...................................................................................*passim*

4

*Baker v. Carr,*
    369 U.S. 186 (1962) .....................................................................................................*passim*

5

6

*Bentzlin v. Hughes Aircraft Co.,*
    833 F. Supp. 1486 (C.D. Cal. 1993) .............................................................................*passim*

7

*California v. GMC,*
    No. C06-05755 *MJJ*, 2007 U.S. Dist. LEXIS 68547 (N.D. Cal. Sept. 17, 2007) .................... 3

8

9

*Carmichael v. Kellogg, Brown & Root Services, Inc.,*
    450 F. Supp. 2d 1373 (N.D. Ga. 2006) ..................................................................................... 6

10

*Feres v. United States,*
    340 U.S. 135 (1950) ............................................................................................................. 2, 3

11

12

*Gilligan v. Morgan,*
    413 U.S. 1 (1973) .................................................................................................................... 10

13

*Ibrahim v. Titan Corp.,*
    391 F. Supp. 2d 10 (D.D.C. 2005) ............................................................................................ 6

14

15

*In re "Agent Orange" Prod. Liab. Litig.,*
    818 F.2d 204 (2d. Cir. 1987) .................................................................................................. 10

16

*Klinghoffer v. Achille Lauro Lines,*
    937 F.2d 44 (2d. Cir. 1991) ............................................................................................... 6, 11

17

18

*Koohi v. United States,*
    976 F.2d 1328 (9th Cir. 1992) ........................................................................................... 5, 11

19

*Lane v. Haliburton,*
    Nos. 06-20874 et al, 2008 WL 2191200 (5th Cir. May 28, 2008) ..................................... 5, 11

20

21

*Lessin v. Kellogg, Brown & Root Services, Inc.,*
    No. CIVA H-05-01853, 2006 WL 3940556 (June 12, 2006) ..................................................... 6

22

*Lovell v. Heng,*
    890 F.2d 63 (8th Cir. 1989) ...................................................................................................... 3

23

24

*McMahon v. Presidential Airways, Inc.,*
    460 F. Supp. 2d 1315 (M.D. Fla. 2006) .................................................................................. 12

25

*McMahon v. Presidential Airways, Inc.,*
    502 F.3d 1331 (11th Cir. 2007) .................................................................................... 5, 11, 14

26

27

*Nejad v. United States,*
    724 F. Supp. 753 (C.D. Cal. 1989) ........................................................................................... 9

28

ii

*Norwood v. Raytheon Co.*,
    455 F. Supp. 2d 597 (W.D. Tex. 2006) ...................................................................... 6

*Potts v. Dynacorp Int'l LLC*,
    465 F. Supp. 2d 1245 (M.D. Ala. 2006) .................................................................... 6

*Rappenecker v. United States*,
    509 F. Supp. 1024 (N.D. Cal. 1980) ........................................................................ 10

*Smith v. Haliburton*,
    No. H-06-0462, 2006 U.S. Dist. LEXIS 61980 (Aug. 30, 2006) ........................... 9, 15

*Thornhill Pub. Co. v. General Tel. & Elecs. Corp.*,
    594 F.2d 730 (9th Cir. 1979) .................................................................................... 2

*Tiffany v. United States*,
    931 F.2d 271 (4th Cir. 1991) ................................................................................ 4, 9

*Wenger v. Monroe*,
    282 F.3d 1068 (9th Cir. 2002) ............................................................................... 3, 9

*Whitaker v. Kellogg Brown & Root, Inc.*,
    444 F. Supp. 2d 1277 (M.D. Ga. 2006) ............................................................*passim*

*Woodson v. Halliburton*,
    No. H-06-2107, 2006 U.S. Dist. LEXIS 70311 (S.D. Tex. Sept. 28, 2006) ............. 9

*Zuckerbraun v. Gen. Dynamics Corp.*,
    755 F. Supp. 1134 (D. Conn. 1990), *aff'd*, 935 F.2d 544 (2nd Cir. 1991) ............... 5, 9, 10, 12

1    Defendant Honeywell International Inc. ("Honeywell") hereby files this reply brief in

2    support of its motion to dismiss plaintiffs' complaint[1] under the political question doctrine.

3    **I.    INTRODUCTION**

4    Plaintiffs do not dispute that the crash of the United States Army Special Operations

5    Aviation Regiment MH-47E Chinook helicopter, serial number 92-00472 (the "subject

6    helicopter"), that crashed on February 18, 2007 in Afghanistan occurred during a combat mission.

7    Nor do Plaintiffs provide any supporting declarations from their clients, who were present on that

8    day, that deny that the mission was a tactical mission.  Rather, plaintiffs argue that there is no

9    evidence of hostile or friendly fire.  That is not the test for the application of the political question

10    doctrine on which Honeywell's motion is based.  Plaintiffs' own evidence shows that this

11    Accident[2] occurred during combat operations.  The Army Investigation 15-6 report (Docket Entry

12    No. 80 Ex. A) ("Army Report")[3] attached to plaintiffs' opposition clearly states that the mission

13    was a "tactical mission" with the objectives for an "air land assault" and that the "mission was to

14    drop off personnel to capture/kill someone in the al-Qaeda network."  (Army Report at Part 4 p.

15    10; Part 5 p.7.)[4]

16    Plaintiffs also attempt to mischaracterize the inquiry before the Court as limited to a

17    product liability inquiry.  They then cite cases decided under the political question doctrine that

18    have nothing to do with combat activities nor are they in a military context.  By so defining the

19    issue, plaintiffs eliminate all other considerations of causation, knowing full well that inquiries

20    _____

21    [1] On June 2, 2008, plaintiffs and defendants Honeywell, the Boeing Company and
Goodrich Pump and Engine Control Systems, Inc. stipulated that Honeywell's pending motion to
dismiss the complaint (and the joinders thereto) would apply to the amended complaint filed by
plaintiffs on June 2, 2008 and would not affect the timing of the motion to dismiss in any way.
(*See* Docket Entry No. 91.)

23    [2] Accident is hereby defined as the crash of the subject helicopter during a Special
24    Operations Aviation Regiment ("SOAR") mission in Afghanistan.

25    [3] Counsel for Honeywell had not seen the Army report until it was attached to plaintiffs'
opposition to its motion to dismiss.

26

27    [4] In fact the investigating officer was appointed to investigate the aircraft mishap during
combat operations.  (Army Report at part 4 p. 64.)

28

DEFENDANT HONEYWELL'S REPLY IN SUPPORT OF MOTION TO DISMISS PLTFS' COMPLAINT
sd-425334

1   into other possible causes would take the Court into areas that are nonjusticiable, requiring that

2   the case be dismissed.  Plaintiffs also attempt to circumvent the applicability of the political

3   question doctrine by asserting that they are not suing the government; however the United States

4   is immune from any such claims under the long standing United States Supreme Court doctrine

5   established in *Feres v. United States*, 340 U.S. 135, 139 (1950).  Regardless of how plaintiffs try

6   to limit the Court's factual inquiry in this case, they are unable to defeat the fundamental

7   jurisdictional problem presented by this lawsuit against government contractors arising out of

8   active combat operations during a war.  Such claims involve nonjusticiable issues that cannot be

9   decided by this Court.  The Court is simply not in a place to review and evaluate the causative

10  factors that would flow from operational decisions in a mission to capture or kill someone in the

11  al-Qaeda network.  Honeywell's motion to dismiss should be granted under the political question

12  doctrine.

## II.    HONEYWELL'S MOTION TO DISMISS IS GOVERNED BY RULE 12(B)(1) STANDARDS

Honeywell's motion to dismiss raises a factual attack on subject matter jurisdiction,

separate from the merits of the underlying case.  In deciding this type of jurisdictional challenge,

a court is free to hear evidence regarding jurisdiction, resolve factual disputes where necessary,

and rule on the question of jurisdiction prior to trial.  *Thornhill Pub. Co. v. General Tel. & Elecs.

Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  The governing standard is that of Rule 12(b)(1); no

presumption of truthfulness attaches to plaintiffs' allegations and the existence of disputed

material facts does not preclude the court from evaluating for itself the merits of the parties'

jurisdictional arguments.  *Id*.

Plaintiffs take a contrary position, suggesting that Honeywell's motion should be

governed by Rule 56 summary judgment standards.  (*See* Plaintiffs' Opposition to Defendant

Honeywell's Motion to Dismiss Plaintiff's Complaint ("Pl. Opp.") at 4–5.)  In making this

argument, plaintiffs maintain that Honeywell's motion should be denied unless this Court finds

that the jurisdictional facts are not in dispute and Honeywell is entitled to judgment as a matter of

law.  (*See id*.)  This contention finds no support in relevant authority and should be rejected.

2

1    The threshold jurisdictional question is whether this case raises nonjusticiable political

2    questions that are beyond the limits of this Court's jurisdiction.  To resolve this jurisdictional

3    issue, this Court need not make any factual findings going to the merits; the only factual inquiry

4    necessary for dismissing this case based on 12(b)(1) are those facts contained in the complaint

5    and the facts attached to the motion and the opposition.  The fact that the subject helicopter was

6    operating on a combat mission in the middle of the night in Afghanistan is irrefutable.  (Army

7    Report at part 1 p. 7.)  Because this inquiry does not implicate the merits, it need not be reserved

8    for the finder of fact.  This Court should therefore proceed with a factual examination of subject

9    matter jurisdiction under Rule 12(b)(1), rather than under Rule 56.  *See California v. GMC*, No.

10   C06-05755 MJJ, 2007 U.S. Dist. LEXIS 68547, *5 (N.D. Cal. Sept. 17, 2007).

11       **III.    THE GOVERNMENT IS IMMUNE FROM SUIT**

12    Plaintiffs assert the political question doctrine does not apply because they did not sue the

13   U.S. government and are not challenging any decisions of the U.S. military.  Such a position is

14   not surprising since the United States is immune from any such claims under the *Feres* doctrine.

15   340 U.S. at 139.  That case precludes liability by the U.S. government for lawsuits by active duty

16   military pertaining to military decision making.  Plaintiffs' failure to sue the U.S. government

17   says nothing about the self evident truth that military decision making and combat operations are

18   directly implicated in this inquiry into the cause of this helicopter crash in Afghanistan in the

19   middle of the night when the mission was, as is now clear from the Army Report, to "drop off

20   personnel to capture/kill someone in the al-Qaeda network."  (Army Report at part 5 page 7.)

21   Plaintiffs also assert that they are not requesting any injunctive relief.  Nor could they.  Injunctive

22   relief under these circumstances would be barred either by the *Feres* doctrine, *see Lovell v. Heng*,

23   890 F.2d 63, 64 (8th Cir. 1989), or because it "would require a court to scrutinize numerous

24   decisions made by various individuals, and would necessarily 'involve the court in a very

25   sensitive area of military expertise and discretion.'"  *Wenger v. Monroe*, 282 F.3d 1068, 1076

26   (9th Cir. 2002) (quoting *Gonzalez v. Dep't of Army*, 718 F.2d 926, 930 (9th Cir. 1983)).

27

28

3

1

2

**IV.    PLAINTIFFS' COMPLAINT RAISES NONJUSTICIABLE ISSUES AND MUST BE DISMISSED UNDER THE POLITICAL QUESTION DOCTRINE**

3

Plaintiffs admit, as they must, that the Army Report is the "most concise statement of facts

4

presently available" regarding the Accident.  (Pl. Opp. at 3 n.2.)  It is the Army Report that

5

provides this Court with sufficient jurisdictional evidence as to the nature of the mission plaintiffs

6

were participating in at the time of the Accident – an active combat mission.  (Army Report at

7

part 4 p. 10.)  Plaintiffs baldly conclude that the primary cause of the Accident was a failure of

8

the engine, and disingenuously claim that there were no indications that the Accident was caused

9

by misconduct of the aircrew, the chain of command, or any person involved in the mission.

10

However, the very Army Report plaintiffs rely upon lists the investigating officer's

11

contributing facts in Paragraph 4 of his investigation report including:  (a) engine failure due to

12

inability to sustain flight with one operational engine, (b) weather conditions, (c) failure of pilot

13

to follow emergency procedures (including to land as soon as possible), (d) pilot failure to

14

communicate, (e) pilot error in selection of display panels, and (f) problems with the Electronic

15

Standby Instrument System.  (Army Report at Part 1 pp. 9-11.)  The multiple potential causes of

16

the Accident, as outlined by the Army investigator, cannot be easily reviewed without forcing the

17

Army to disclose its training, policies, procedures, and related military decision-making.  These

18

issues are at the core of the purpose of the political question doctrine and require dismissal of

19

plaintiffs' complaint.

20

21

**A.    Plaintiffs' Claims Arise Out Of Military Operations, Which Are Constitutionally Committed To The Executive And Legislative Branches (the first *Baker* test)**

22

**1.    The Claims Against Honeywell Will Require Re-Examination of Decisions by the Military**

23

When a case would require a court to review a military decision, including decisions

24

involving military combat or military training, the first *Baker* test (a textually demonstrable

25

constitutional commitment of the issue to a coordinate political department) is implicated.  *See*

26

*Aktepe v. United States*, 105 F.3d 1400, 1403-04 (11th Cir. 1997); *Tiffany v. United States*, 931

27

F.2d 271, 277-78 (4th Cir. 1991); *Whitaker v. Kellogg Brown & Root, Inc.*, 444 F. Supp. 2d 1277,

28

4

1   1281 (M.D. Ga. 2006); *Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486, 1497 (C.D. Cal.

2   1993); *Zuckerbraun v. Gen. Dynamics Corp.*, 755 F. Supp. 1134, 1142 (D. Conn. 1990), *aff'd*,

3   935 F.2d 544 (2nd Cir. 1991). Plaintiffs' opposition attempts to refute these cases by relying on

4   other cases involving reparations from private companies, human rights violations claims, and

5   claims of abduction into sexual slavery that are simply not relevant in this context. (*See* Pl. Opp.

6   at 8.) Honeywell never claimed that any case that touches upon the military automatically

7   implicates the political question doctrine, as implied by plaintiffs. Rather Honeywell does

8   recognize that in a suit against a private contractor, as in this case, the first *Baker* test is

9   implicated if the contractor shows: (1) that the claims against it will require reexamination of a

10  decision by the military and (2) the military decision at issue is insulated from judicial review.

11  *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1359-69.

12      The outcome here is clear: this case involves innumerable issues related to military

13  combat and strategy decisions (areas specifically designated exclusively to the Executive and

14  Legislative branches). (Mot. to Dismiss at 7-10.) *McMahon* is completely consistent with

15  Honeywell's position. "It is undoubtedly true that military activities often give rise to political

16  questions." *McMahon*, 502 F.3d at 1358. In that case, the court was not being asked or required

17  to review any military combat decision-making at all; Presidential Airways merely provided

18  airline transportation services to the military. All decisions related to the flight were controlled

19  by the private contractor. The case did not involve combat activity. *Id.* at 1360. *McMahon* is

20  completely inapposite to the facts of this case.

21      The other cases relied on by plaintiffs are also distinguishable. In *Koohi*, the plaintiffs

22  injured were civilians, not military personnel involved in a "tactical mission" in an active war

23  zone. *See Koohi v. United States* 976 F.2d 1328, 1329-1330 (9th Cir. 1992). Furthermore, in

24  *Lane v. Halliburton*, the Fifth Circuit held that certain claims regarding a breach of an employer's

25  duties to its employees (including fraud and misrepresentation) did not implicate military decision

26  making. Nos. 06-20874 et al, 2008 WL 2191200 (5th Cir. May 28, 2008). Because the *Lane* case

27  had nothing to do with military decision making, and in fact dealt with claims that Kellogg Brown

28  & Root, Inc. misrepresented the nature of the work that its employees would undertake in Iraq, it

1    is wholly distinguishable from the facts of the case at hand, where military decision making was

2    implicated in every part of the mission undertaken on February 18, 2007. *Klinghoffer* is equally

3    distinguishable. That case involved a hijacking of a ship by the PLO, with a number of civilians

4    who later claimed injuries. *Klinghoffer v. Achille Lauro Lines*, 937 F.2d 44, 49 (2d. Cir. 1991). It

5    has nothing to do with military decision making, or combat activities and is simply a foreign

6    policy case involving tort claims.

7        Plaintiffs also point to *Norwood v. Raytheon Co.*, 455 F. Supp. 2d 597 (W.D. Tex. 2006),

8    for support. (Pl. Opp. at 12.) However, *Norwood* is also a non-combat, product liability tort case

9    involving the manufacture of radars. *See* 455 F. Supp. 2d at 598. Contrary to Plaintiffs' claims,

10   *Norwood* involved no combat decision making by the military, nor a lack of judicially

11   manageable standards as are present in this action. *See id.* at 604-606. Plaintiffs further rely on

12   *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 450 F. Supp. 2d 1373, 1376 (N.D. Ga.

13   2006) and *Lessin v. Kellogg, Brown & Root Services, Inc.*, No. CIVA H-05-01853, 2006 WL

14   3940556 (June 12, 2006), which involve injuries related to traffic accidents in Iraq. The political

15   question doctrine was found to be *premature* due to a lack of information on the nature of the

16   military decision making involved. This is not the situation in this case. The Army Report

17   establishes that this Accident occurred during a combat mission and implicates multiple potential

18   causes, including pilot training. *Potts v. Dyncorp Int'l LLC*, is also distinguishable from the

19   present case. 465 F. Supp. 2d 1245, 1251 (M.D. Ala. 2006). There the Court stated that this case

20   involved "no direct link to the United States military" and thus there was no military decision

21   making involved. *Id.* Finally, the *Ibrahim v. Titan Corp.* case dealt with reparations and is

22   simply not relevant to a case involving military combat missions. 391 F. Supp. 2d 10, 16 (D.D.C.

23   2005).

24       As shown above, the cases relied upon by plaintiffs are not applicable to the facts of this

25   case. Plaintiffs' assertions, that no strategic military decisions will have to be reviewed in this

26   case because they have not challenged any such decisions, is little more than a feint. The broad

27   implications of plaintiffs' complaint, given that the Accident occurred during an active military

28   operation, clearly require the Court to engage in a review of what happened during the mission,

1    thereby requiring the Court's review of each of the relevant military decisions surrounding the

2    mission, as well as the causes of the Accident.[5]  Plaintiffs' reliance on the conclusions of the

3    Army Report does not alter the need for this Court to intensively examine the inner workings of

4    the military and military decision making relating to active combat activities in a war zone in

5    order to determine the cause of this Accident.[6]  This is the exact endeavor that the political

6    question doctrine is designed to avoid.  *See Aktepe*, 105 F.3d at 1404 (being required to review

7    actual, sensitive judgments made by the military implicated the political question doctrine); *see*

8    *also*, *Bentzlin*, 833 F. Supp. at 1497 (precedent establishes that orders received by pilots and

9    ground troops during active combat are considered political questions, and are thus

10   nonjusticiable).

11        If this case proceeds, plaintiffs' allegation that the Accident occurred only because of an

12   engine failure will not magically prevent the need to determine the actual cause or causes of the

13   crash and comparative fault.  The Court will need to investigate the following issues, among

14   others:

15   • Whether military training for emergency procedures were adequate given the fact that the pilot

16     in command failed to follow the required emergency procedure to land as soon as possible, and

17     failed to follow proper communication procedures;

18   • Why this aircraft was not able to sustain flight as designed with a single engine;

19   • What modifications were made to the subject helicopter by the Army that may have

20     contributed to the inability to sustain flight in a single engine emergency;

21   • What was the loading and gross weight of the subject helicopter that made single engine flight

22     impossible;

─────────────

23        [5] Determining the true cause of this incident is hindered by the fact that the subject
     helicopter was destroyed on the ground by friendly forces after the Accident.  (Army Report at
24   part 1 p.9 ¶1(h); ¶3(e).)  Even though the aircraft and the engines have not been totally destroyed,
     understanding the nature of this Accident will be significantly more difficult based on the damage
25   done to the aircraft and the engines pursuant to military orders.

26        [6] Plaintiffs seek to transform the Army Report from a factually relevant document to a
     binding determination of the cause of the crash.  If this litigation were to continue, however, the
27   Army's conclusions as to causation would not be binding upon the Court.

28

7

DEFENDANT HONEYWELL'S REPLY IN SUPPORT OF MOTION TO DISMISS PLTFS' COMPLAINT
sd-425334

1    • Did the Army knowingly increase the gross weight of the MH-47E to increase its combat

2       capabilities knowing that it would put its single engine performance capabilities at risk;

3    • Did the subject helicopter end up in the situation due to a violation of standard operating

4       procedures or violation of the Aircraft Operating Manual;

5    • Whether a deviation from standard operating procedures was called for and justified based on

6       the combat operation in which the servicemen found themselves;

7    • What combat demands required the subject helicopter to continue operating in dangerous

8       weather conditions;[7] and

9    • Why did the subject helicopter remain low, close to the ground, with zero visibility rather than

10      climb to clear air at a higher altitude.

11   These issues, as well as others, will require review of strategic and tactical military decisions

12   relating to the combat mission and its circumstances.

13           Moreover, plaintiffs' claim that the helicopter "was simply ferrying troops from one base

14   to another" is disingenuous and simply incorrect when compared with the Army Report submitted

15   by plaintiffs in support of their opposition.[8] (Pl. Opp. at 1.) The Army Report clearly states that

16   the mission was a "tactical mission" with the objectives for an "air land assault" and that the

17   "mission was to drop off personnel to capture and kill someone in the al-Qaeda network." (Army

18   Report at Part 4 p. 10; part 5 p. 7.) Thus, plaintiffs' attempt to convert this combat mission into a

19   transportation of troops for a product liability suit is simply incorrect.

20           The role of this Court will be to determine the cause of the Accident *and* whether a

21   product failure contributed to the cause. To define away all other possible causes is to ask the

22   _____

23           [7] The investigating officer comments that, "It is my opinion that the unforecast weather
     requirements were a significant contributing factor and had a profound impact on how the PIC
24   [pilot in command] reacted to the situation." (Army Report at part 1 p. 11.)

25           [8] Plaintiffs state that Honeywell relies on speculation and news articles rather than the
     Army Report. Plaintiffs were informed that neither Honeywell nor any of the defendants had a
26   copy of the Army Report, and thus were unable to rely on it as the basis of the motion to dismiss.
     However, Honeywell does not necessarily agree with nor adopt all the opinions or findings
27   reflected in the Army Report, but it does provide key facts regarding the chronology of events
     leading up to and following the crash of the subject MH-47E helicopter.

28

DEFENDANT HONEYWELL'S REPLY IN SUPPORT OF MOTION TO DISMISS PLTFS' COMPLAINT
sd-425334

1  court to do injustice. If justice is called for, a fair and factual determination of *all* causes of the

2  Accident (to allocate liability appropriate to fault) must be explored. Military decision making is

3  absolutely implicated, and such decision making in a combat arena on a combat operation in

4  pursuit of al-Qaeda is within the heart of the authority allocated by the Constitution to the

5  administrative branch, and walled off from scrutiny by the judiciary.

6            **2.**          **The Type of Damages Sought By Plaintiffs Is Not Determinative of Whether the Political Question Doctrine Is**

7                          **Implicated**

8         Plaintiffs' argument, that because they seek monetary damages and not injunctive relief is

9  determinative of whether the political question doctrine is implicated, is simply incorrect.

10  Plaintiffs' position would lead to an absurd result: any case where the government was not asked

11  to enjoin activity would be excluded from the political question doctrine. As previously

12  discussed, plaintiffs are precluded from seeking injunctive relief from the U.S. government. *See*

13  *Wenger v. Monroe*, 282 F.3d at 1076. Plaintiffs point to no authority holding that the application

14  of the political question doctrine is limited to cases seeking injunctive relief.

15         Any claim against a non-government party, such as Honeywell, relating to combat

16  activities will, by its very nature, be a damages case. Although many courts may recognize that

17  damages may be an easier remedy for courts to grant to injured parties, the mere fact that

18  damages alone are sought does not mean the case is justiciable. Many courts have held that cases

19  should be dismissed as nonjusticiable political questions even if they only seek damages. *See*

20  *Aktepe*, 105 F.3d at 1402 (seeking damages for wrongful death and personal injury); *Tiffany*, 931

21  F.2d at 275 (seeking wrongful death damages); *Smith v. Haliburton*, No. H-06-0462, 2006 U.S.

22  Dist. LEXIS 61980, at *1 (Aug. 30, 2006) (seeking negligence damages); *Woodson v.*

23  *Halliburton*, No. H-06-2107, 2006 U.S. Dist. LEXIS 70311, at *3 (S.D. Tex. Sept. 28, 2006)

24  (seeking exemplary damages); *Whitaker*, 444 F. Supp. 2d at 1278 (seeking damages); *Bentzlin*,

25  833 F. Supp. at 1487 (seeking damages); *Zuckerbraun*, 755 F. Supp. at 1135 (seeking damages);

26  *Nejad v. United States*, 724 F. Supp. 753, 754 (C.D. Cal. 1989) (seeking compensatory and

27

28

1  wrongful death damages); *Rappenecker v. United States*, 509 F. Supp. 1024, 1025 (N.D. Cal.

2  1980) (seeking damages for personal injury).[9]

3         **B.    A Lack Of Judicial Standards Requires Dismissal (the second *Baker*
              test)**

4
5      Plaintiffs submit that the second independent *Baker* test – whether these are judicially

6  manageable standards for resolving the issue – is inapplicable because this is simply a "product

7  liability suit."[10]  Such a continuing attempt at definitional avoidance of *Baker* is understandable.

8  No court is equipped to craft judicially manageable standards to determine the wisdom in

9  pursuing al-Qaeda in Afghanistan in the middle of the night while flying the subject helicopter in

10 zero visibility.  It is impossible to imagine what judicially manageable standards would be created

11 to evaluate the wisdom of the mission, the nature of the planning, the execution of the mission as

12 far as it went, the abandonment of the mission because of intelligence, and returning to a base

13 with armed soldiers in the middle of the night in terrible weather.

14     Plaintiffs' reliance on cases involving the Guaranty Clause, the Naturalization Clause and

15 foreign policy cases are as unhelpful and irrelevant in determining the applicability of the second

16 *Baker* test as they were the first.  If a court must examine Army decisions, it is not an area

17 "subject to judicial second-guessing."  *See In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d

18 204, 206 (2d. Cir. 1987); *see also Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) ("it is difficult to

19 conceive of an area of governmental activity in which the courts have less competence.").

20 Plaintiffs' failure to discuss the bulk of cases cited by Honeywell in their moving paper as to the

21 applicability of the second *Baker* test, is telling.

22

23     [9] While the U.S. intervened in some of these cases, that does not modify the examination
24 conducted by these courts under the *Baker* case as to whether the cases presented nonjusticiable
    questions, nor does it change the fact that the parties to these cases were seeking damages.  *See*
25 *Bentzlin*, 833 F. Supp at 1486; *Zuckerbraun*, 755 F. Supp. at 1134.

26     [10] Plaintiffs assert that the subject helicopter and its component parts, including the
    FADEC have widespread civilian use.  Absent from plaintiffs' assertion is any support for such a
27 statement.  Honeywell is unaware of widespread civilian use of the Special Operations MH-47E
    Chinook helicopter.

28

DEFENDANT HONEYWELL'S REPLY IN SUPPORT OF MOTION TO DISMISS PLTFS' COMPLAINT
sd-425334

1    Plaintiffs' attempt to pigeon hole this case into the "tort law" context is simplistic and the

2  case law they rely on does not make their case.  In *McMahon*, the court found that the second

3  *Baker* test (lack of judicially discoverable and manageable standards) was not implicated because

4  the allegations in *McMahon* <u>did not</u> "involve combat, training activities or any peculiarly *military*

5  activity at all."  502 F.3d at 1363 (emphasis in original).  The court continued "the case does not

6  involve a *sui generis* situation such as military combat or training, where courts are incapable of

7  developing judicially manageable standards." *Id*. at 1364.  The only reasonable inference is that

8  if the case did involve military combat or training, it would have to be dismissed.  Here, unlike in

9  *McMahon*, plaintiffs' case does involve a military combat mission, where the court, as *McMahon*

10  predicted, is unable to develop judicially manageable standards to evaluate decisions related to

11  this combat operation.  The *Koohi* case only discusses the second *Baker* test in relation to claims

12  made by civilians, which is inapplicable here.  *Koohi*, 976 F.2d at 1331.  Additionally, in *Lane*,

13  the court distinguished cases that dealt with military matters from ordinary tort cases.  2008 WL

14  2191200 ("Contrary to the situations regarding matters of war, there is no textual commitment to

15  the coordinate branches of the authority to adjudicate the merits of the plaintiffs' claims against

16  KBR for breach of its duties.").  *Klinghoffer* is also distinguishable, as it does not deal with

17  military matters.  937 F.2d at 49.  The other cases plaintiffs cite do not deal with military matters

18  and are thus not relevant to the second *Baker* test.

19    Plaintiffs' reliance on these cases is a clear attempt to steer this Court away from

20  conducting a true examination of whether this case, involving combat activity as it does, is one in

21  which it should be said that there is a lack of judicially discoverable and manageable standards

22  for resolving the case.  *Whitaker* is informative in determining that the second *Baker* test is

23  implicated here.  The court held that there were no judicially discoverable and manageable

24  standards for resolving plaintiff's lawsuit due to the fact that the accident that caused Whitaker's

25  death occurred in a combat zone.  *Whitaker*, 444 F. Supp. 2d at 1282 (the question of what a

26  driver would do, subject to military regulations and orders, "necessarily implicates the wisdom of

27  the military's strategic and tactical decisions, a classic political question over which this Court

28  has no jurisdiction.")

11

1    The Court in this case would need to examine military decision making, and is simply not

2    in a position to decide the "correct" procedures for an infiltration/exfiltration mission to capture

3    and kill potential enemies, or the exigencies that required the subject helicopter to return to base

4    during dangerous weather conditions, in the middle of the night.  Courts cannot and should not be

5    asked to apply the reasonable standard of care to actions taken by military personnel in combat

6    zones, as they are without guidelines to evaluate military strategy and cannot apply traditional

7    standards of care to war.  *McMahon v. Presidential Airways, Inc.*, 460 F. Supp. 2d 1315, 1322

8    (M.D. Fla. 2006); *Zuckerbraun*, 755 F. Supp. at 1142.  Courts are unable to balance several

9    possible causes of the crash of a combat helicopter and therefore cannot possibly do justice to a

10   defendant before them.

**C.    It Is Impossible To Decide This Case Without An Initial Policy Determination of Non-Judicial Discretion (the third *Baker* test)**

12    The third *Baker* test is whether it is impossible to decide the case without an initial policy

13   determination of a kind reserved for non-judicial discretion.  Plaintiffs argue in two sentences

14   (without any legal authority) that the type of damages sought in their lawsuit can affect the third

15   *Baker* test; this is wrong.  It is just as wrong here as it was in their argument related to the first

16   *Baker* test.  (*See* Section IV.A.2, *supra*.)  The issue is whether a court's involvement in a case

17   would require the court to make policy decisions generally reserved for military discretion.  *See*

18   *Aktepe*, 105 F.3d at 1404.

19

20    Trained professionals … necessarily must make comparative
      judgments on the merits as to evolving methods of training,
      equipping, and controlling military forces with respect to their
      duties under the Constitution.  It would be inappropriate for a
21    district court to undertake this responsibility in the unlikely event
      that it possessed the requisite technical competence to do so.

23   *Id*. (internal quotations and citations omitted).  The third test recognizes that there are certain

24   responsibilities of the military that cannot be transferred to the judiciary including the merits of

25   methods of training, equipping, and controlling military forces with respect to their duties under

26   the Constitution.  *Id*.  Here, the Court would need to determine whether the pilots were

27   sufficiently trained, were adequately equipped, and were sufficiently briefed on weather

28   conditions prior to flight, among other factors.  These all involve policy determinations made by

12

1  the military during a time of war.  This is an area clearly not appropriate for judicial

2  determination, when the military is clearly capable of making its own policy determinations.

3       **D.    Plaintiffs' Complaint Should Also Be Dismissed Pursuant To The
            Remaining Independent Tests Under *Baker***

4

5       The fourth *Baker* test (impossibility of a court undertaking independent resolution without

6  expressing lack of respect to a coordinate branch) is implicated here as the judiciary cannot

7  become enmeshed in second guessing military decisions made in a combat mission.  *Baker v.*

8  *Carr*, 369 U.S. 186, 217 (1962).  Plaintiffs claim that they "do not ask this Court to second-guess

9  the military."  (Pl. Opp. at 17.)  In fact, the only potential implication of plaintiffs' complaint is to

10 second guess the military – including the decision to deploy the subject helicopter in suspect

11 weather conditions, to determine whether the pilot made the appropriate decision to not land the

12 helicopter as soon as possible (as called for in the pilot's manual), and whether the mission should

13 have been conducted in the middle of the night with the use of night vision aids.  The Court

14 cannot avoid reviewing these factors and challenging the military decision making to undertake

15 the operation.

16      The fifth test (an unusual need for unquestioning adherence to a political decision) is also

17 evident as the judiciary should not question combat decisions made by the military.  *Baker*, 369

18 U.S. at 217.  Again, as discussed above, the very nature of this lawsuit implicates a challenge to

19 military decision making and whether this Court can become enmeshed in such decisions.

20 Finally, the sixth test (the potentiality of political embarrassment) may be implicated if the

21 judiciary begins to question the decisions of military strategists and decision makers and opens

22 each combat death and injury to the scrutiny of a federal court in a lawsuit by survivors based on

23 alleged defects of equipment in combat.  *Id.*  Thus, these additional tests support a finding that

24 this action is nonjusticiable under the political question doctrine.

25      **V.    HONEYWELL DOES NOT SEEK AN EXTENSION OF THE POLITICAL
            QUESTION DOCTRINE**

26

27      Plaintiffs argue that Honeywell has asked to extend the political question doctrine.  The

28 political question doctrine has been clearly defined by the Supreme Court and is implicated by the

13

1    facts of this case.  The question is whether this Court will need to review and evaluate decisions

2    made by the military during an active combat mission to properly adjudicate this case.  If so, the

3    case is nonjusticiable.

4         Plaintiffs claim that no court of appeals has yet endorsed the political question doctrine in

5    a case relating to private parties.  *McMahon* does exactly that in a suit only between private

6    parties.[11]  The Eleventh Circuit specifically endorsed the application of the political question

7    doctrine in private party litigation.

8              We expressly do not (and could not) hold that *this litigation* will not
                at some point present a political question … *Presidential remains*
9               *free* to assert the argument at any time, and the district court has an
                independent obligation to make sure that the disposition of this case
10              will not require it to decide a political question.

11   *McMahon*, 502 F.3d at 1365 (emphasis added).  The court simply did not see the political

12   question doctrine being ripe in a case involving a charter airline transportation of troops to a war

13   theater based on the facts before it.  *McMahon*, 502 F.3d at 1365.

14        Plaintiffs' opposition illustrates why the political question doctrine is implicated in this

15   case.  Plaintiffs admit that the *Aktepe* court held that "no judicially manageable standards existed

16   to 'determine how a reasonable military force would have conducted the [missile firing] drill' and

17   accordingly dismissed on political question grounds."  (Pl. Opp. at 19 (citing *Aktepe*, 105 F.3d at

18   1404).)  These are the very same issues which will come into play in this case.  To understand the

19   underlying cause of the Accident will require a review of whether the military decision making

20   taken in response to the mission on February 18, 2007 was appropriate and whether judicially

21   manageable standards exist to review those decisions.

22        Plaintiffs' attempt to distinguish other cases are equally disingenuous.  Like the plaintiffs

23   in *Bentzlin*, plaintiffs' injuries and deaths occurred during the war.  The *Bentzlin* court recognized

24   that "soldiers injured at the hands of the military raise political questions.  The relationship

25   between soldiers and the military is indubitably within the province of the Executive."  833 F.

26   _____

27   [11] The defendants are Presidential Airways, Inc., Aviation Worldwide Services, LLC, STI
     Aviation, Inc., and Black Water Lodge and Training Center, Inc.

28

                                    14

1    Supp at 1498.  The *Bentzlin* court found that a political question existed under the facts of the

2    case.  In *Smith*, the court looked at whether the military or a private contractor had responsibility

3    for security at an air base in Iraq, after an explosive was detonated at the base killing twenty-two

4    people.  *Smith,* 2006 U.S. Dist. LEXIS 61980, at *9.  Because decisions surrounding the security

5    of the base were made by the military and would implicate military decision making including the

6    gathering of intelligence, the planning for terrorist attacks and the implementation of those issues,

7    the court granted the motion to dismiss the complaint as nonjusticiable.  *Id.* at **22-23.  Plaintiffs

8    acknowledge that under the facts of the *Smith* case a court would be required to "evaluate the

9    reasonableness of the military's security."  (Pl. Opp. at 21.)  The very same reasoning would

10   apply to the facts in this case.

11         Likewise, *Whitaker* involving a U.S. soldier who was killed while escorting a military

12   supply convoy operated by Kellogg Brown & Root, was determined to be a nonjusticiable case

13   because the court would need to re-examine a decision made by the military, namely the decision

14   involving the planning and execution of a wartime convoy operation where the military was

15   working in conjunction with a government contractor.  *Whitaker,* 444 F. Supp. 2d at 1279, 1281.

16   Because the activities of the convoy involved decisions made by the military, the court held that

17   "a soldier injured at the hands of a contractor which is performing military functions subject to

18   the military's orders and regulations also raises the same political questions."  *Id.* at 1281.  Thus,

19   the case law relied on by Honeywell illustrates that this case does not seek an extension of the

20   political question doctrine.  Rather, the issues faced in this case lie at the very heart of the

21   political question doctrine.

22         **VI.    CONCLUSION**

23         For the foregoing reasons, Honeywell asks that its Motion to Dismiss pursuant to Rule

24   12(b)(1) be granted.

25   Dated: June 5, 2008                              MORRISON & FOERSTER LLP
                                                     By:  /s/ James W. Huston
26                                                   _____
                                                          James W. Huston
27                                                   Attorneys for Defendant
                                                     HONEYWELL INTERNATIONAL INC.
28

# CERTIFICATE OF SERVICE

I, James W. Huston, hereby certify that on June 5, 2008, I caused to be electronically filed a true and correct copy of the attached **DEFENDANT HONEYWELL INTERNATIONAL INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record for Plaintiffs:

| | |
|---|---|
| Ronald A. McIntire, Esq.<br>Chung H. Han, Esq.<br>PERKINS COIE LLP<br>1620 26th Street, Sixth Floor, South Tower<br>Santa Monica, CA  90404-4013 | Telephone:  310.788.9900<br>Facsimile:  310.788.3399<br><br>***Attorneys for Defendant The Boeing Company*** |
| Thomas J. Brandi, Esq.<br>Daniel Del'Osso, Esq.<br>Brian J. Malloy, Esq.<br>THE BRANDI LAW FIRM<br>354 Pine Street, Third Floor<br>San Francisco, CA  94104 | Telephone:  415.989.1800<br>Facsimile:  415.989.1801<br><br>***Attorneys for Plaintiffs*** |
| James R. Donahue, Esq.<br>CAULFIELD DAVIES & DONAHUE<br>1 Natoma Street<br>Folsom, CA  95630-2637 | Telephone:  916.817.2900<br>Facsimile:  916.817.2644<br><br>***Attorneys for Plaintiffs*** |
| Garth Aubert, Esq.<br>Mark Irvine, Esq.<br>MENDES & MOUNT, LLP<br>445 South Figueroa Street, 38th Floor<br>Los Angeles, CA  90071 | Telephone:  213.955.7780<br>Facsimile:  213.955.7725<br><br>***Attorneys for Defendant Goodrich Corporation*** |
| Steve Bell, Esq.<br>Beth M. Strosky, Esq.<br>Katherine L. Hilst, Esq.<br>PERKINS COIE LLP<br>1201 Third Avenue, Suite 4800<br>Seattle, WA 98101 | Telephone:  206.359.8000<br>Facsimile:  206.359.9000<br><br>***Attorneys for Defendant The Boeing Company*** |

I also served the following party by overnight mail [Fed. Rule Civ. Proc. rule 5(b)] by placing a true copy thereof enclosed in a sealed envelope with delivery fees provided for, addressed as follows, for collection by UPS, at 12531 High Bluff Drive, Suite 100, San Diego, California, 92130-2040 in accordance with Morrison & Foerster LLP's ordinary business practices.

I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for overnight delivery and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be deposited in a box or other facility regularly maintained by UPS or delivered to an authorized courier or driver

authorized by UPS to receive documents on the same date that it (they) is are placed at Morrison & Foerster LLP for collection.

| Richard Chon, Esq.<br>PERKINS COIE LLP<br>1620 26th Street, Sixth Floor<br>South Tower<br>Santa Monica, CA  90404-4013 | Telephone:  310.788.9900<br>Facsimile:  310.788.3399<br><br>***Attorneys for Defendant The Boeing Company*** |
|---|---|
| Casey A. Kaufman, Esq.<br>THE BRANDI LAW FIRM<br>354 Pine Street, 3rd Floor<br>San Francisco, CA  94104 | Telephone:  415.989.1800<br>Facsimile:  415.989.1801<br><br>***Attorneys for Plaintiffs*** |

Executed at San Diego, California, on June 5, 2008.

MORRISON & FOERSTER LLP

By:    /s/  James W. Huston
       James W. Huston
       jhuston@mofo.com
       Morrison & Foerster LLP
       12531 High Bluff Drive, Suite 100
       San Diego, California  92130-2040
       Telephone:    858.720 5100
       Facsimile:      858.720.5188
       Attorneys for Defendant

       Attorneys for Defendant
       HONEYWELL INTERNATIONAL INC.